**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL ALONSO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-07373 |
| | ) | |
| LESLIE J. WEISS, et al., | ) | Honorable Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**

Stephen Novack
Timothy J. Miller
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Doc# 542409

# TABLE OF CONTENTS

*Page*

SUMMARY OF ARGUMENT ................................................................. 1

BACKGROUND OF RECEIVERSHIP ................................................... 2

The SEC Complaint ............................................................................... 2

Order Appointing Receiver .................................................................... 2

Status Of Receivership .......................................................................... 3

ARGUMENT .......................................................................................... 4

I.  LEGAL STANDARD ON MOTION TO DISMISS ......................... 4

II.  THE COMPLAINT SHOULD BE DISMISSED WITH
    PREJUDICE BECAUSE DEFENDANTS ARE IMMUNE FROM SUIT ...................... 5

    A.  The Complaint Is Barred By The Appointment Order ........................ 5

    B.  Weiss And Barnes Are Entitled To Personal Immunity ........................ 6

        1.  Receivers Are Personally Liable Only For "Willful And Deliberate,"
            *i.e.,* Intentional, Breaches Of Fiduciary Duty Or *Ultra Vires* Conduct ...... 6

        2.  Defendants' Conduct Was Not
            "Willful And Deliberate" (*i.e*. Intentional) ................................ 7

    C.  Counts II, III, IV, IX, XVIII And XX Are
        Barred By Common Law Absolute Immunity ................................... 8

        1.  Counts II And XVIII (Limited Partnership Acts) ....................... 8

        2.  Count III (Appointment Of Investment Adviser) ....................... 9

        3.  Count IV (Crowe Horwath Payments) ....................................... 9

        4.  Count IX (INverso Transaction) .............................................. 10

        5.  Count XX (Gold Coast) .......................................................... 11

III.  VARIOUS COUNTS OF THE COMPLAINT
     FAIL TO STATE A CLAIM FOR ADDITIONAL REASONS ..................... 12

    A.  Count I -- Alleged Violation Of IAA ....................................... 12

B.      Counts II & XXI -- Alleged Failure To Notify Limited
        Partners Of Alleged Right To Replace General Partner ....................................... 13

C.      Count XV -- Alleged Failure To Negotiate With SEC ......................................... 15

D.      Count XX -- Allegedly Converting Gold Coast Note
        Held By Nutmeg Rather Than Note Held By The Funds .................................... 16

E.      Plaintiffs' Legal Malpractice Claims Against Barnes Fail ................................... 16

        1.      Barnes Cannot Be Liable For Following Weiss's Instructions................. 17

        2.      Plaintiffs Fail To Adequately Allege Causation ....................................... 17

F.      Barnes Cannot Be Liable Under Respondeat
        Superior Or Aiding And Abetting Theories (Count XXI) .................................... 17

        1.      No Respondeat Superior ........................................................................... 18

        2.      No Aiding And Abetting Liability ............................................................ 18

IV.     PLAINTIFFS' REQUESTS FOR
        PUNITIVE DAMAGES SHOULD BE STRICKEN ...................................................... 22

CONCLUSION.................................................................................................................... 22

**TABLE OF AUTHORITIES**

*Cases*                                                                                                                            *Page*

Ashcroft v. Iqbal,
     556 U.S. 662 (2009) ................................................................................................. 4, 7, 16, 17

Barton v. Barbour,
     104 U.S. 126 (1881) ............................................................................................................ 5

Bell Atl. Corp. v. Twombly,
     550 U.S. 544 (2007) ....................................................................................................... 4, 7, 16

Bosak v. McDonough,
     192 Ill. App. 3d 799, 549 N.E.2d 643 (1st Dist. 1989) ............................................... 21

Buckner v. Atl. Plant Maint., Inc.,
     182 Ill.2d 12, 694 N.E.2d 565 (1998) ....................................................................... 19, 20, 21

Coglianese v. Feiwell,
     No. 4:06-CV-19, 2008 WL 474213 (N.D. Ind. Feb. 19, 2008) ...................................... 8, 10, 11

Cuyler v. United States,
     362 F.3d 949 (7th Cir. 2004) ...................................................................................... 14

Derby v. Perschke,
     No. 88C3835, 1990 WL 179868  (N.D. Ill. Nov. 8, 1990) ........................................... 13

Doyle v. Shlensky,
     120 Ill. App. 3d 807, 458 N.E.2d 1120 (1st Dist. 1983) ............................................. 18

Edelman, Combs and Latturner v. Hinshaw and Culbertson,
     338 Ill. App. 3d 156, 788 N.E.2d 740 (1st Dist. 2003) ............................................... 19, 20, 21

Fisher v. Lexington Health Care, Inc.,
     188 Ill. 2d 455, 722 N.E.2d 1115 (1999) ................................................................... 14

Forest Partners II Ltd. P'shp v. Katten Muchin & Zavis,
     No. 08 L 12800 (Cir. Ct. of Cook Cty, Law Div. Aug. 12, 2010) .................................. 19, 20

Gen. Elec. Capital Corp. v. Lease Resolution Corp.,
     128 F.3d 1074 (7th Cir.1997) ..................................................................................... 12

Grimes v. Saikley,
     388 Ill. App. 3d 802, 904 N.E.2d 183 (4th Dist. 2009) ............................................. 21

Guerriero v. Thorek Mem'l Hosp.,
     No. 10 L 6256 (Cir. Ct. Cook Cty Law Div. Dec. 28, 2010) ....................................... 20

Hefferman v. Bass,
    467 F.3d 596 (7th Cir. 2006) ............................................................................... 22

Illinois Dept of Revenue v. Schechter,
    195 B.R. 380 (N.D. Ill. 1996) ................................................................................. 6

In re Berry Publ'g Servs.,
    231 B.R. 676 (Bankr. N.D. Ill. 1999) ................................................................. 8, 9

In re Chicago Pac. Corp.,
    773 F.2d 909 (7th Cir. 1985) ................................................................................. 6

In re Kids Creek Partners, L.P.,
    248 B.R. 554 (Bankr. N.D. Ill. 2000)
    aff'd, 00 C 4076, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000) ........................ 6, 7, 8

In re Linton,
    136 F.3d 544 (7th Cir. 1998) ................................................................................. 6

In re Markos Gurnee P'ship,
    182 B.R. 211 (Bankr. N.D. Ill. 1995) .................................................................... 6

In re NWFX Inc.,
    267 B.R. 118 (Bankr. W.D. Ark. 2001) .............................................................. 18

In re Smyth,
    207 F.3d 758 (5th Cir. 2000) ................................................................................. 7

In re Weisser Eyecare, Inc.,
    245 B.R. 844 (Bankr. N.D. Ill. 2000) ................................................................. 6, 8

Kahn v. Kohlberg, Kravis, Roberts & Co.,
    970 F.2d 1030 (2d Cir. 1992) .............................................................................. 13

King v. First Cap. Fin. Servs. Corp.,
    215 Ill. 2d 1, 828 N.E.2d 1155 (2005) ................................................................ 14

Maxwell v. KPMG, LLP,
    No. 07-2819, 2008 WL 6140730 ........................................................................... 6

McReynolds v. Merrill Lynch & Co., Inc.,
    694 F.3d 873 (7th Cir. 2012) ................................................................................. 4

Metzger v. DaRosa,
    209 Ill. 2d 30, 805 N.E.2d 1165 (2004) .............................................................. 14

Premier Capital Mgmt., LLC v. Cohen,
    No. 02 C 5368, 2008 WL 4378313 (N.D. Ill. Mar. 24, 2008) ............................. 22

Salaymeh v. InterQual, Inc.,
    155 Ill. App. 3d 1040, 508 N.E.2d 1155 (5th Dist. 1987) .................................. 19, 21

Satterfield v. Malloy,
    No. 10-CV-03, 2011 WL 2293940 (Bankr. N.D. Okla. June 8, 2011) ...................................... 5

Scanlan v. Eisenberg,
    No. 09 C 5026, 2011 WL 862748 (N.D. Ill. March 9, 2011) .................................. 20

Serafin v. Seith,
    284 Ill. App. 3d 577, 672 N.E.2d 302 (1st Dist. 1996)............................................ 17

Small v. Sussman,
    306 Ill. App. 3d 639, N.E.2d 1213 (1st Dist. 1999)........................................... 18, 20

Stephan v. Rocky Mountain Chocolate Factory, Inc.,
    129 F.3d 414 (7th Cir.1997) ..................................................... 19

T & W Inv. Co. v. Kurtz,
    588 F.2d 801 (10th Cir.1978) ....................................................... 10, 12

Teton Millwork Sales v. Schlossberg,
    311 Fed. App'x 145 (10th Cir. 2009) ...................................................... 5

Thornwood Inc. v. Jenner & Block,
    344 Ill. App. 3d 15, 799 N.E.2d 756 (1st Dist. 2003).................................. 20, 21, 22

Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,
    444 U.S. 11 (1979)........................................................ 12

Virnich v. Vorwald,
    664 F.3d 206 (7th Cir. 2011), as amended (Jan. 3, 2012)...................................... 2

Wells v. IFR Eng'g Co.,
    247 Ill. App. 3d 43, 617 N.E.2d 204 (1st Dist. 1993)....................................... 7

Wrobel v. Illinois Dept. of Emp't Sec.,
    344 Ill. App. 3d 533, 801 N.E.2d 29 (1st Dist. 2003)...................................... 7

## *Statutes*

15 U.S.C. § 80b-15(b)......................................................... 13

735 ILCS 5/2-1115 ......................................................... 22

805 ILCS 215/603(6)(D)......................................................... 14, 15

Investment Advisers Act of 1940 § 206(a)(4) .............................................. 12

M.S.A. § 321.0603(6)(D)..................................................................................................... 14, 15

### *<u>Rules</u>*

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 4

SEC Rule 206(4)-2................................................................................................................. 12

Leslie Weiss ("Weiss"), on her own behalf and on behalf of the Nutmeg Group LLC ("Nutmeg"), and Barnes & Thornburg LLP ("Barnes") (all three collectively, "Defendants"), by and through their attorneys, submit this Memorandum in support of their Motion to Dismiss the Complaint ("Complaint" or "Compl. ___") filed by Plaintiffs, who are limited partners in one or more investment funds (the "Funds").[1]

## SUMMARY OF ARGUMENT

Weiss is the court-appointed Receiver for Nutmeg, and Barnes is her court-approved counsel. The Complaint essentially accuses Weiss of failing to follow the instructions of Randall Goulding ("Goulding") -- the former owner and managing member of Nutmeg whom the SEC has accused of misappropriating client assets and misleading investors. The Complaint's attempt to fault Weiss for not blindly following the lead of Goulding, a convicted felon who had been removed from Nutmeg for allegedly breaking the law and misleading his investors, is clearly a search for a deep pocket to recoup the investors' losses as a result of investing with Goulding. Defendants understand that Nutmeg's investors are disappointed that Nutmeg will not be the pot of gold that Goulding may have promised them; Defendants are not, however, responsible for that fact, and the Complaint's attempt to impose liability on them should be rejected.

The Complaint also fails for an even more fundamental reason: Weiss, as Receiver for Nutmeg, and Barnes, as her court-approved counsel, are entitled to various immunities. In this circuit, receivers and their counsel are immune from liability (1) for following court orders; and (2) in their personal capacities, unless they acted outside their authority or engaged in a *willful and deliberate* breach of fiduciary duty. Further, the court order appointing Weiss protects her and her counsel from liability with respect to the performance of their duties and responsibilities.

---

[1] While Weiss files this motion to dismiss on behalf of Nutmeg, she and her counsel do not otherwise represent Nutmeg with respect to this case.

It also protects Nutmeg from liability outside the claims' process, and the bar date has long passed. In light of these various immunities, discussed in argument section II below, the entire Complaint fails as a matter of law.

Even if Defendants were not immune, however, several counts of the Complaint fail to state a claim. For instance, Count II alleges that the very order appointing Weiss as Receiver somehow caused her to become disassociated from Nutmeg -- a nonsensical allegation for which there exists no private right of action for damages in any event. This and other fatal infirmities are discussed in argument section III below. Finally, argument section IV demonstrates why Plaintiffs' requests for punitive damages on their malpractice claims are barred by statute.

## BACKGROUND OF RECEIVERSHIP

### The SEC Complaint

On March 23, 2009, the SEC filed a complaint against Goulding arising out of his conduct as owner and managing member of Nutmeg, which acted as investment adviser to the Funds. (Dkt. 1 ¶ 1.) [2] It alleges that Goulding misappropriated client assets, failed to maintain books and records, and violated the Investment Advisers Act of 1940 ("IAA"). (Id. ¶ 4.)

### Order Appointing Receiver

On August 6, 2009, the Court granted the SEC's motion for the appointment of a receiver for Nutmeg (the "Appointment Order"). (Dkt. 66, attached hereto as Exhibit A.) The Appointment Order appoints Weiss as receiver for Nutmeg to "be the agent of this Court and solely the agent of this Court . . . ." (Id. ¶ A.) It sets forth the receiver's powers and duties, including, *inter alia*, overseeing all aspects of Nutmeg's operation and business. (Id. ¶ B.)

---

[2] Cites to "Dkt. ___" are to the docket in case no. 1:09-cv-01775. The Court may take judicial notice of those proceedings. See Virnich v. Vorwald, 664 F.3d 206, 209 (7th Cir. 2011), as amended (Jan. 3, 2012).

Those powers included the power to "[e]ngage and employ the law firm of Barnes . . . to assist in carrying out her duties." (Id. ¶ B.9.)

To facilitate the Court's oversight of the Receiver, the Appointment Order required Weiss to file "reports of her acts and transactions in her capacity as Receiver." (Id. ¶ D.) Pursuant thereto, Weiss: (a) filed at least eleven reports providing the Court and others with a great deal of information about her activities (e.g., Dkts. 70, 120, 179, 270, 282, 400); (b) caused to be filed reports of forensic accountants hired by the Court prior to her appointment (e.g., Dkts. 239; 252; 261); and (c) sought permission to take a variety of actions, including, e.g., employ investment advisers (Dkt. 165), discharge the court-hired forensic accountants (Dkt. 264) and distribute funds to investors and bar untimely claims (Dkt. 316). Weiss also filed at least twenty-three fee petitions that detailed her and Barnes' activities. (E.g., Dkts. 117, 216, 487.)

Paragraph G of the Appointment Order limits the liability of Weiss and Barnes:

> The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or Retained Personnel, or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

The Appointment Order also provides that, except by leave of the appointing court, all investors are stayed from "[a]sserting any claim against Nutmeg's or the Funds' property other than in the manner for making claims established by the Receiver." (Ex. A, ¶ M.4.)

## Status Of Receivership

The Receiver set March 9, 2011, as the bar date to submit a claim against Nutmeg or the Funds. She sent official notice of the bar date to all known investors in the Funds on or about January 10, 2011, and also published notice in the Wall Street Journal. (Dkt. No. 316, ¶ 13.)

On July 1, 2011, Weiss filed a motion to distribute Nutmeg's remaining assets. (Dkt. 316.) At that time, the total claims by investors in Nutmeg's funds was approximately $8.5 million and Nutmeg had approximately $225,000 on hand. (Id. ¶¶ 29-30.) On August 4, 2011, Weiss withdrew her motion to distribute Nutmeg's assets because Goulding filed suit against her, which potentially created a further claim against Nutmeg's estate. (Dkt. 337.)

## ARGUMENT

## I.      LEGAL STANDARD ON MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Iqbal announced a "two-pronged approach" for analyzing the sufficiency of a claim in response to a Rule 12(b)(6) motion: (a) the court must identify -- and disregard -- conclusory allegations; and (b) accepting as true the remaining allegations, the court must determine the claim's plausibility as a matter of "common sense." Id. at 678-79; accord McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 886-87 (7th Cir. 2012) (affirming dismissal of a complaint where plaintiff made conclusory assertions as to defendant's intent that were "unsupported by the necessary *factual* allegations" (emphasis in original)).

## II.  THE COMPLAINT SHOULD BE DISMISSED WITH <u>PREJUDICE BECAUSE DEFENDANTS ARE IMMUNE FROM SUIT</u>

### A.  <u>The Complaint Is Barred By The Appointment Order</u>

The Court's Appointment Order provides that Weiss and Barnes cannot be "liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or Retained Personnel . . . ." (Ex. A, ¶ G.)[3]  This language bars all counts of the Complaint against Weiss and Barnes because each count concerns their performance of their "duties and responsibilities" as "Receiver or Retained Personnel."

Notably, the Complaint does not accuse Weiss or Barnes of acting outside the scope of their duties or responsibilities, or *ultra vires*.  In the receivership context, *ultra vires* means "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires."  <u>Barton v. Barbour</u>, 104 U.S. 126, 134 (1881).  Following <u>Barton</u>, the common law *ultra vires* exception to receiver immunity is typically applied only when a trustee or receiver wrongfully seizes assets from a third party.  <u>E.g.</u>, <u>Teton Millwork Sales v. Schlossberg</u>, 311 Fed. App'x 145, 148 (10th Cir. 2009).  When seizure of property is *not* involved, *ultra vires* conduct is not typically found.  <u>See</u> <u>Satterfield v. Malloy</u>, No. 10-CV-03, 2011 WL 2293940 at *4 (Bankr. N.D. Okla. June 8, 2011) (finding that suit did not involve *ultra vires* conduct because it did not involve seizure of property and essence of complaint related to defendant's duties as trustee).  Even a violation of state law, such as that alleged by Count II, does not mean that alleged conduct was *ultra vires*:  "Just as a trustee's conduct does not become *ultra vires* because it is negligent, so it does not become *ultra vires* because it violates an

---

[3] The Appointment Order goes on to limit Weiss and Barnes' liability for other actions to malfeasance.  ((Ex. A, ¶ G) ". . . or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance . . . .").)

obligation imposed by state law." In re Markos Gurnee P'ship, 182 B.R. 211, 224 (Bankr. N.D. Ill. 1995), aff'd Illinois Dept of Revenue v. Schechter, 195 B.R. 380 (N.D. Ill. 1996); accord In re Weisser Eyecare, Inc., 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000).

The Appointment Order also bars the Complaint as to Nutmeg. (See Ex. A, ¶ M.4 (barring claims against Nutmeg, other than through the claims process, without prior approval of appointing court).) Plaintiffs did not go through the claims process, which closed May 9, 2011, and they failed to obtain the approval of the court overseeing the Receivership before filing their Complaint. Therefore, Plaintiffs' claims against Nutmeg fail.

### B. Weiss And Barnes Are Entitled To Personal Immunity

Even if the Appointment Order does not bar the Complaint, the Complaint still fails as to Weiss and Barnes because neither can be held *personally* liable.

#### 1. Receivers Are Personally Liable Only For "Willful And Deliberate," *i.e.*, Intentional, Breaches Of Fiduciary Duty Or *Ultra Vires* Conduct

The Seventh Circuit has made it crystal clear, "in this circuit [a receiver] is personally liable only if he *willfully* and *deliberately* violated his fiduciary duties." Maxwell v. KPMG, LLP, No. 07-2819, 2008 WL 6140730, at *4 (7th Cir. Aug. 19, 2008) (emphasis added); accord In re Linton, 136 F.3d 544, 545 (7th Cir. 1998) ("[i]f [a trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded"); In re Chicago Pac. Corp., 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee "may be held personally liable only for a willful and deliberate violation of his fiduciary duties").

A "willful and deliberate" violation of fiduciary duties requires a *knowing* or *intentional* violation. In In re Kids Creek Partners, L.P., Judge Schmetterer of the Bankruptcy Court, affirmed by Judge Kocoras of the District Court, made exactly that point:

> Plaintiffs have certainly failed to allege facts demonstrating that, if Defendants crossed some line where poor judgment turns into breach of fiduciary duties, such actions were *willful and deliberate*. Plaintiffs allege that Trustee made unsupported factual assertions and depended on unreliable witnesses, but do not allege that Trustee *knew* that particular statements were unreliable or false, or that Defendants *intentionally* failed to conduct adequate investigation. 248 B.R. 554, 561 (Bankr. N.D. Ill. 2000) aff'd, 00 C 4076, 2000 WL 1761020 (N.D. Ill. Nov. 30, 2000) (emphasis added).

Accord In re Smyth, 207 F.3d 758, 761 (5th Cir. 2000) (interpreting Seventh Circuit's willful and deliberate standard as "intentional"); Wrobel v. Illinois Dept. of Emp't Sec., 344 Ill. App. 3d 533, 536-37, 801 N.E.2d 29, 33 (1st Dist. 2003) ("willful and deliberate" breach of Unemployment Insurance Act required intentional violation).

### 2. Defendants' Conduct Was Not "Willful And Deliberate" (*i.e.* Intentional)

"For conduct to be intentional, a person must commit the act and he must also intend to produce the harm. But if a person commits an act and only realizes there is a strong probability that harm might result, his conduct is merely reckless." Wells v. IFR Eng'g Co., 247 Ill. App. 3d 43, 46, 617 N.E.2d 204, 205 (1st Dist. 1993).

The Complaint fails to *factually* allege intentional breach of fiduciary duty with respect to any count. Indeed, Counts I and II do not allege that Weiss breached her fiduciary duties, and Counts V, VII, X, XII, XIII, XIV, and XVI do not even invoke the "willful and deliberate" standard as to Barnes. Counts V, VI, XIII, and XVII plead the conclusion that Weiss willfully and deliberately breached her fiduciary duties and was grossly negligent and reckless. But these conclusions must be disregarded pursuant to Twombly and Iqbal and, in all events, gross negligence and recklessness are not "willful and deliberate." Only Counts II, IV, V, XIX, and XXI even mention "intentional," but they do so in an entirely conclusory fashion, devoid of facts -- as required by Twombly and Iqbal -- that even suggest intent to harm. Further, Counts XIX

and XXI allege, in the alternative, that Defendants acted intentionally, recklessly *or* with gross negligence, but Defendants cannot be held personally liable for acting with gross negligence or recklessness.  Thus, all counts must be dismissed.

### C.    Counts II, III, IV, IX, XVIII And XX Are Barred By Common Law Absolute Immunity

Defendants also are entitled to absolute immunity with respect to those counts of the Complaint that are based on acts performed by Defendants pursuant to Court order or with Court approval.  This is because "it is well established that a trustee is *absolutely immune* from [ ] claims when acting pursuant to court order."  In re Berry Publ'g Servs., 231 B.R. 676, 681 (Bankr. N.D. Ill. 1999) (emphasis added); accord Kids Creek, 248 B.R. at 559; Weisser Eyecare, 245 B.R. at 848.  In addition, a trustee or receiver is entitled to immunity "for performing acts under the supervision of judges that are in furtherance of their official duties."  Coglianese v. Feiwell, No. 4:06-CV-19, 2008 WL 474213, at *8-9 (N.D. Ind. Feb. 19, 2008).  The particular counts to which this type of immunity applies are discussed below.

### 1.    Counts II And XVIII (Limited Partnership Acts)

Count II alleges that Weiss and Nutmeg breached their fiduciary duties and violated the Illinois and Minnesota Limited Partnership Statutes (the "Limited Partnership Acts") by not notifying the Funds' investors of their alleged right to select a new general partner.  Count XVIII repackages these same allegations into a legal malpractice claim against Barnes.[4]

The Appointment Order expressly appointed Weiss to "serve[ ] as general partner" to the Funds.  (Ex. A, ¶ B.1.)  Thus, she is absolutely immune from liability for doing so.  Recognizing this, the Complaint alleges that Weiss violated the Appointment Order by serving as General Partner because the Appointment Order "authorized the retention of a 'substitute general partner'

---

[4] These counts also fail for the reasons discussed in section III.A, *infra.*

as 'required.'" (Compl. ¶ 135.) But, this provision of the Appointment Order -- which actually states that "Retained Personnel may include as needed, but are not limited to, possible substitute advisers or general partners for the Funds" (Ex. A, ¶ B.9) -- plainly served to *extend*, not limit, Weiss's authority and power. It gave Weiss the *additional* power to retain professionals to "assist" her in carrying out her duties, but it did not require her to replace herself. Because Weiss was following the Court's order to serve as general partner, Defendants are entitled to absolute immunity. <u>See</u>, <u>e.g.</u>, <u>Berry</u>, 231 B.R. at 681-82 (trustee and attorney "absolutely immune for any liability" for sale of assets pursuant to court order).

### 2.    **Count III (Appointment Of Investment Adviser)**

Count III alleges that Weiss and Nutmeg breached their fiduciary duties by failing to hire a registered investment adviser or manager to operate the Funds. It also alleges that Weiss herself is not qualified for this role. But, this Court appointed Weiss "general partner and investment adviser" to the Funds. (Ex. A, ¶ B.1.) Moreover, Weiss' qualifications were explained to the Court before it appointed her (Dkt. 48, ¶ 7, attached hereto as Exhibit B), so the Court necessarily found that she was qualified when it appointed her. And, as described above with respect to Count II, the Appointment Order did not require that she hire substitute investment advisers. Therefore, even assuming *arguendo* that Weiss acted as "investment adviser" to the Funds, she is entitled to absolute immunity. <u>See</u>, <u>e.g.</u>, <u>Berry</u>, 231 B.R. at 681-82.

### 3.    **Count IV (Crowe Horwath Payments)**

Count IV alleges that Weiss and Nutmeg breached their fiduciary duties and violated court orders by paying Crowe Horwath ("Crowe") fees in excess of a purported $150,000 fee cap. (Compl. ¶ 318.) Prior to Weiss' appointment, *the Court appointed* Crowe to serve as Nutmeg's accountant. (Dkt. 38, attached hereto as Exhibit C.) The Appointment Order (Ex. A, ¶ B.7) ordered Weiss to "*continue* the employment of [Crowe] as the court appointed accountant to

Nutmeg and the Funds." (Emphasis added.) In her periodic reports to the Court and fee applications, Weiss fully disclosed payments to Crowe.[5] No one objected, and the Court granted all fee applications. And, when Weiss moved for an order discharging Crowe, she explained that, notwithstanding the initial fee cap, "[f]uture payments to Crowe were authorized without need for Court Approval and have been noted in each Receiver's Report filed with this Court." (Dkt. 264, attached hereto at Exhibit D at ¶ 12.) Neither the Court nor anybody else disputed Weiss' statement that she did not need Court approval to pay Crowe in excess of the initial fee cap. To the contrary, the Court implicitly approved this statement by granting the motion without comment. (Dkt. 269, attached hereto as Exhibit E.)

Because Weiss' payments to Crowe were fully disclosed and court-approved, she is absolutely immune from liability. See, e.g., T & W Inv. Co. v. Kurtz, 588 F.2d 801, 803 (10th Cir. 1978) (receiver immune where "every action by [the receiver] objected to in this suit was known to and approved by the state court judge supervising the receiver"); Coglianese, 2008 WL 474213, at *8-9 (trustee entitled to immunity for entering into and enforcing settlement agreement approved by district court).

### 4.    Count IX (INverso Transaction)

Count IX alleges that Defendants breached their duties by terminating a transaction that allegedly would have enabled INverso Corp. ("INverso"), a shell owned by several of the Funds, to be acquired and used as a vehicle for an initial public offering. Defendants are absolutely

---

[5] E.g., Dkt. 190 p. 8 ¶ 14 (received invoice for $35,744.35); Dkt. 241 p. 5 ¶ 11, p. 9 ¶ 14 ($230,660.79 is due to Crowe and approved by the Court; Receiver paid invoices of $35,744.35; $25,022 and $43,035.78); Dkt. 266 p. 5 ¶ 11, p. 10 ¶ 14 ($280,992.48 due Crowe and approved by Court; discloses amounts paid for work performed through August 2010, plus $21,574.06 for August 2010); Dkt. 267 p. 9 ¶ 15 (paid invoices in amount of $36,670.15); Dkt. 274 p. 5 ¶ 11, p. 10 ¶ 15 (paid $317,662.63 to Crowe; owes additional $4,079.52); Dkt. 288 p. 5 ¶ 11 (discloses payment to Crowe of $321,742.15). Relevant excerpts are attached hereto as Group Exhibit F.

immune from liability because the Court approved Weiss's decision that the transaction not take place.  In fact, Goulding was held in contempt for trying to circumvent the Court's approval of Weiss's decision.  (Dkt. 185, attached hereto as Exhibit G at p. 5:3-12.)  The Court explained:

> Goulding, with intent to make an end run around the receiver's objection and the Court's acquiescence in the receiver's decision, he conducted this process by which -- or I should say engaged in these shenanigans . . . with the spaded [sic] intent to do an end run around that ruling and to complete this transaction which the Court had quite specifically indicated should not take place based upon the receiver's suggestion.  This was not the first and only time that there was action by Mr. Goulding which the Court found were designed to in some manner get around the ruling of this Court.  (Ex. G, p. 3:12-4:2.)

Because the Court "approved the receiver's decision [that the INverso transaction] not to take place" (Id. p. 3:10-11), Count IV is barred.  See, e.g., Coglianese, 2008 WL 474213, at *8-9.

### 5.    Count XX (Gold Coast)

Count XX alleges that Weiss breached her duty to the Funds by attempting to convert the portion of debt that Gold Coast Mining Corp. ("Gold Coast") owed to Nutmeg to the exclusion of the conversion of debt it owed to the Funds.[6]  In March 2012, Weiss filed a motion to employ contingent counsel to pursue collection against Gold Coast on behalf of Nutmeg and also seeking the "Court's guidance with respect to Gold Coast" in light of the estate's limited assets and the investors' demands.  (Dkt. 476, attached hereto as Exhibit H at ¶ 21.)  Goulding opposed the motion.  He argued, among other things, that Weiss should have pursued the investors' interests in Gold Coast and not just Nutmeg's.  (Dkt. 483, attached hereto as Exhibit I at ¶¶ 1, 5, 14-16.) The Court granted Weiss's motion.  (Dkt. 506, attached hereto as Exhibit J.)  Because Weiss sought the Court's guidance as to Gold Coast, disclosed that she sought to pursue the note on

---

[6] This count also fails for the reasons discussed in section III.D, *infra.*

behalf of Nutmeg, and received the Court's approval to do so over Goulding's objections, her actions are entitled to absolute immunity.  See, e.g., Kurtz, 588 F.2d at 803

## III.    VARIOUS COUNTS OF THE COMPLAINT
##         FAIL TO STATE A CLAIM FOR ADDITIONAL REASONS

Even if Defendants were not immune, Counts I, II, XV, XX and XXI fail to state a claim for the reasons identified below.

### A.    Count I -- Alleged Violation Of IAA

Count I alleges that Weiss and Nutmeg violated Section 206(a)(4) of the IAA and SEC Rule 206(4)-2 by failing to distribute, or cause a qualified custodian to distribute, quarterly account statements to Plaintiffs.  It should be dismissed for any one of the following reasons.

*First*, Count I fails because the IAA does not apply.  Count I is premised on the notion that Nutmeg is, or was required to be, a *registered* investment adviser.  (See Compl. ¶¶ 288-89 (quoting Rule 206(4)-2, which applies only to "an investment adviser registered or required to be registered").)  But Weiss caused Nutmeg to de-register on November 18, 2009, approximately three months after she was appointed Receiver.[7]  Because Nutmeg was de-registered, it was not required to comply with the IAA, and Count I fails.

*Second*, Weiss is not a proper party to Count I.  The *sole remedy* for any violation of Rule 206(a)(4) is rescission of the advisory agreements and restitution of any consideration paid in connection therewith.  See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19-22 (1979).  Plaintiffs can only obtain that remedy from the party with whom they contracted or a non-party to the contract who "acquired any right thereunder with actual knowledge of the

---

[7] The Court may take judicial notice of this fact, which is publicly available through the SEC's website, www.adviserinfo.sec.gov. Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir.1997) (court may take judicial notice "of matters of public record" on a motion to dismiss).  A copy of the website containing the relevant information, which was filed in Case No. 1:09-cv-01775, is attached hereto as Exhibit K.

facts by reason of which the making or performance of such contract was in violation of any such provision." 15 U.S.C. § 80b-15(b). Count I conclusorily asserts that that Weiss "acquired . . . right[s] thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision." (Compl. ¶ 294.) This conclusion is insufficient under Iqbal and defies common sense in light of the fact that Weiss caused Nutmeg to de-register.

Moreover, even rescission is available only for contracts "the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter . . . ." 15 U.S.C. § 80b-15(b). Because Nutmeg was deregistered, the performance of the advisory agreements involves no violation of the IAA, and, therefore, rescission is not appropriate.

*Third*, Count I is untimely. A claim for rescission under the IAA must be brought within the *earlier* of: (a) one year of notice of facts that, with reasonable diligence, would lead to knowledge of the violation; or (b) three years after the date of injury. Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030, 1038 (2d Cir. 1992); Derby v. Perschke, No. 88C3835, 1990 WL 179868, at *5 (N.D. Ill. Nov. 8, 1990). Count I alleges (at ¶ 290) that the limited partners have not received account statements since Weiss' appointment in August *2009*. Plaintiffs knew or should have known about the alleged violation soon thereafter. Yet, Plaintiffs did not request leave to sue Weiss until August 2011 -well after the one-year limitations period expired.

### B. Counts II & XXI -- Alleged Failure To Notify Limited Partners Of Alleged Right To Replace General Partner

Counts II and XXI (discussed *supra* section II.C.1) should be dismissed for at least two reasons. *First*, the Limited Partnership Acts do not create a private cause of action for damages for the alleged violation. The relevant provisions deem a general partner "disassociated from a

limited partnership" upon the general partner's "failure, within 90 days after the appointment [of a trustee, receiver or liquidator] to have [such appointment] vacated or stayed . . . ." 805 ILCS 215/603(6)(D); M.S.A. § 321.0603(6)(D). Yet, the statutes say nothing about a private cause of action for damages for breach of those provisions. See King v. First Cap. Fin. Servs. Corp., 215 Ill. 2d 1, 26, 828 N.E.2d 1155, 1169-70 (2005) (court should examine language of statute to determine if it creates private right of action).

The Supreme Court of Illinois has shown "increasing reluctance to imply private rights of action . . . ." Cuyler v. United States, 362 F.3d 949, 955-56 (7th Cir. 2004) (reversing district court and finding no private right of action; citing Metzger v. DaRosa, 209 Ill. 2d 30, 36-44, 805 N.E.2d 1165, 1168-72 (2004).) In Metzger, the Seventh Circuit certified the question of whether an Illinois whistleblower statute created a private right of action for damages. The Illinois Supreme Court held that where "the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute." 209 Ill. 2d at 44; 805 N.E.2d at 1172; see also Fisher v. Lexington Health Care, Inc., 188 Ill. 2d 455, 465, 722 N.E.2d 1115, 1120 (1999) (statute's express grant of private action for damages for certain plaintiffs suggests legislature did not intend to give a private action for damages to any others).

Like Metzger, provisions of the Limited Partnership Acts -- other than those relied upon by Plaintiffs -- *expressly* provide a private right of action for damages. See, e.g., 805 ILCS 215/805, M.S.A. § 321.0805 (liability of general partner who, with knowledge of dissolution, causes a limited partnership to incur an obligation by act not appropriate for winding up partnership); 805 ILCS 215/1112, M.S.A. § 321.1112 (liability of person having knowledge of conversion or merger who causes converted or surviving organization to incur an obligation);

14

805 ILCS 215/208(a), M.S.A. § 321.0208(a) (liability for false information in filed record with Secretary of State); 805 ILCS 215/604, M.S.A. 321.0604 (liability for wrongfully disassociating as a general partner). Because the legislature expressly provided private rights of action in certain sections of the Limited Partnership Acts, it follows that the legislature did not intend to imply a private right of action for damages to enforce the provisions that Plaintiffs challenge.

*Second*, even if a private right of action for damages existed, Plaintiffs still could not sue under the Limited Partnership Acts. The plain intent of 805 ILCS 215/603(6)(D) and M.S.A. § 321.0603(6)(D) is to provide for those situations in which a general partner is, at the same time: (a) acting as general partner; and (b) in receivership (or the like). Here, the situation is different because, although Nutmeg was placed in receivership, the Appointment Order (¶ B.1) at the same time replaced Nutmeg as general partner of the Funds with Weiss, *expressly* appointing Weiss the general partner of, and adviser to, the Funds.

Count II essentially argues that the Court's very act of appointing Weiss as Receiver for Nutmeg made the Court's contemporaneous appointment of Weiss as general partner of the Funds meaningless. This makes a mockery of the Appointment Order. Surely, the Limited Partnership Acts do not apply in such a situation since -- as a result of the Appointment Order's replacement of Nutmeg with Weiss (who was not in receivership) -- the Funds were *not* saddled with a general partner in receivership and, thus, there was no need to elect a new general partner. As a result, Weiss was not "disassociated" from Nutmeg.

## C.    Count XV -- Alleged Failure To Negotiate With SEC

Count XV (¶ 425) alleges that Weiss and Nutmeg breached their fiduciary duties to Mercury Fund because Weiss allegedly failed to respond to an objection by the SEC to the reorganization plan proposed by Nutmeg and other creditors of Tropical Beverage, Inc (renamed "Vivicells"). Count XV further alleges (¶ 255) that a reorganization plan proposed by Vivicells'

management was approved by the bankruptcy court but was ultimately not implemented because of a subsequent conflict between Vivicells and a funding source over a small amount of stock. Plaintiffs allege that, had Nutmeg remained involved in the negotiation of the plan of reorganization, "it is *likely* that a plan of reorganization that benefitted Mercury and Tropical would have been achieved." (Id. ¶ 256 (emphasis added).)

Plaintiffs' allegation that action by Weiss "likely" would have benefited Mercury is not adequate to allege causation and damages under Twombly and Iqbal. It merely raises the possibility that Weiss harmed the investors, but it does not cross the "line between possibility and plausibility of 'entitlement to relief.'"

### D. Count XX -- Allegedly Converting Gold Coast Note Held By Nutmeg Rather Than Note Held By The Funds

Like Count XIX, Count XX (summarized *supra* section II.C.1) fails to adequately allege causation and damages. Plaintiffs do not allege that Nutmeg realized any benefit from its attempt to convert the Gold Coast stock. In fact, Plaintiffs allege that "*[i]f* Nutmeg realizes any benefit from its attempt to convert Gold Coast stock. . . . " (¶ 285 (emphasis added).) Iqbal requires "more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. at 678. Plaintiffs' speculative, hypothetical allegation of harm does not suffice.

### E. Plaintiffs' Legal Malpractice Claims Against Barnes Fail

Counts V, VII, IX, X, XII, XIII, XIV, XVI, XVIII, XIX, and XXI allege that Barnes committed legal malpractice by failing -- or electing -- to pursue certain actions or judgments.[8]

---

[8] These counts also allege that Weiss committed legal malpractice, but Weiss was acting as Receiver to Nutmeg, not legal counsel to the Funds. Therefore, she cannot be held liable for malpractice. In any event, Plaintiffs' legal malpractice claims against Weiss fail for the additional reasons described below.

### 1. Barnes Cannot Be Liable For Following Weiss's Instructions

The Complaint defeats its own legal malpractice claims by alleging that *Weiss* decided to dismiss claims. (Compl. ¶ 392) The Complaint further admits that "[a] lawyer is required to abide by a client's decisions concerning the objectives of representation, and consult with the client regarding the means by which they are to be pursued." (Compl. ¶ 338.) Because Barnes was required to abide by Weiss' decisions, Barnes cannot be liable for carrying them out.

### 2. Plaintiffs Fail To Adequately Allege Causation

Plaintiffs have not alleged another necessary element of a legal malpractice claim: proximate causation. Plaintiffs must plead "but for" Barnes' purported breach of duty, the outcome of the underlying actions would have differed. Serafin v. Seith, 284 Ill. App. 3d 577, 586-87, 672 N.E.2d 302, 309 (1st Dist. 1996). The Complaint merely concludes, with respect to Counts V, VII, IX, X, XIII, XIV, XVI, that "but for [Barnes and Weiss'] malpractice," certain Plaintiffs "would not have suffered the losses described herein." This is the very type of conclusion that Iqbal instructs should be ignored. The Complaint does not allege *facts* from which it can be inferred that Weiss would have prevailed in the underlying actions that Barnes, at the instruction of Weiss, dismissed or did not pursue. See, e.g., Compl. ¶¶ 240 (Count XIII), 258 (Count XVI) (alleging "[o]n information and belief, had [Weiss] pursued collection efforts" she would have likely obtained a recovery); ¶ 241 (Count XIV) (alleging that claim was "valuable and should have been prosecuted").

### F. Barnes Cannot Be Liable Under Respondeat Superior Or Aiding And Abetting Theories (Count XXI)

Count XXI attempts to hold Barnes secondarily liable for Plaintiffs' claims against Weiss either under a *respondeat superior* or aiding and abetting theory. Even assuming *arguendo* that the Complaint adequately stated a claim against Weiss (it does not), each theory fails.

### 1.    <u>No Respondeat Superior</u>

Weiss' role as Receiver means she was *not* acting as Barnes' employee or agent.  The

Appointment Order provides that "[t]he Receiver shall be the agent of this Court and *solely the*

*agent of this Court* in acting as Receiver under this Order."  (Ex. A, ¶ A (emphasis added).)  In

turn, as Receiver, Weiss retained Barnes -- with the Court's approval -- to assist her in carrying

out her duties as an officer of the Court.  Thus, when acting as Receiver, Weiss is an agent of the

*Court* -- she is *not* an agent of *Barnes*.  As a result, Barnes is not liable for Weiss' conduct.  <u>See</u>

<u>In re NWFX Inc.</u>, 267 B.R. 118, 252-53 (Bankr. W.D. Ark. 2001) (rejecting *respondent superior*

theory attempting to impose vicarious liability on a trustee's law firm).

### 2.    <u>No Aiding And Abetting Liability</u>

Barnes cannot be liable for aiding and abetting Weiss.  That is because -- as will now be

shown -- a lawyer cannot be liable for aiding and abetting his or her client.

The starting point of the analysis is the well-established general principle that an attorney

is the client's *agent*.  <u>E.g.</u>, <u>Doyle v. Shlensky</u>, 120 Ill. App. 3d 807, 820, 458 N.E.2d 1120, 1131

(1st Dist. 1983) ("The attorney-client relationship is one of agent-principal").  And the critical

point is that -- as a matter of Illinois law -- agents and principals cannot aid and abet each other.

<u>Small v. Sussman</u>, 306 Ill. App. 3d 639, N.E.2d 1213 (1st Dist. 1999).  In <u>Small</u>, the court

applied this rule to a claim based on a corporation assisting its agent (and vice versa):

> Although [plaintiff] uses the term 'participating and assisting' in
> place of 'conspiracy' the identical principle disposes of the claim.
> As a matter of law, a corporation can no more 'assist' itself than it
> can conspire with itself.  <u>Id.</u> at 646, 713 N.E.2d at 1221.

In support, the court relied upon analogous Illinois law that a corporation cannot conspire with

its agent.  <u>Id.</u> at 645-46, 713 N.E.2d at 1221.

18

Indeed, Illinois law is well-established that -- as a matter of law -- an attorney cannot conspire with her client. The starting point here is the Illinois Supreme Court's ruling in Buckner v. Atl. Plant Maint., Inc., 182 Ill.2d 12, 24, 694 N.E.2d 565, 571 (1998) that "because the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent." 182 Ill. 2d at 24, 694 N.E.2d at 571. Although the agent in Buckner was not an attorney, Buckner relied on Salaymeh v. InterQual, Inc., 155 Ill. App. 3d 1040, 1043-44, 508 N.E.2d 1155, 1158 (5th Dist. 1987), which rejected conspiracy claims against a corporation and its outside counsel for that same reason. Indeed, after Buckner, the First District Appellate Court made it clear that Buckner's holding meant that -- as a matter of Illinois law -- lawyers are incapable of conspiring with their clients:

> Because the acts of an agent are considered in law the acts of the principal, there can be no conspiracy between a principal and an agent. . . . Therefore, this count also fails because [the law firm, individual attorneys, clients, and the clients' insurer] were legally incapable of conspiring together.

Edelman, Combs and Latturner v. Hinshaw and Culbertson, 338 Ill. App. 3d 156, 170-71, 788 N.E.2d 740, 752 (1st Dist. 2003).

We recognize that the Illinois Supreme Court has not yet directly addressed the question of whether -- like conspiracy -- lawyers are also incapable of aiding and abetting their clients. It is thus incumbent upon this Court to predict how the Supreme Court would rule on this issue. Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 416-17 (7th Cir.1997). Two Illinois trial courts have already effectively done so. First, in Forest Partners II Ltd. P'shp v. Katten Muchin & Zavis, No. 08 L 12800 (Cir. Ct. of Cook Cty, Law Div. Aug. 12, 2010), the Chief Judge of the Law Division held that lawyers cannot aid and abet their clients. (See excerpts from transcript of June 23, 2010 hearing, attached hereto as Exhibit L at 46:11-14, 47:2-6, and August 12, 2010 Order, attached hereto as Exhibit M.) Then, in Guerriero v. Thorek

Mem'l Hosp., No. 10 L 6256 (Cir. Ct. Cook Cty Law Div. Dec. 28, 2010), the court reached the same conclusion. (See December 28, 2010 Order, attached hereto as Exhibit N.)

Those courts were correct. After all, the Illinois Supreme Court has already held that agents are incapable of conspiring with their principals, Buckner, 182 Ill. 2d at 24, 694 N.E.2d at 571, and the Appellate Court in Edelman applied that ruling to lawyers, 338 Ill. App. 3d at 170-71, 788 N.E.2d at 752. Further, Small applied the conspiracy rule to aiding and abetting. 306 Ill. App. 3d at 646, 713 N.E.2d at 1221. Thus, it is extremely likely that the Illinois Supreme Court would apply the conspiracy rule to aiding and abetting and hold that lawyers are incapable of aiding and abetting their clients.

Despite all of this, Judge Grady came out differently, predicting that the Illinois Supreme Court would allow claims against lawyers for aiding and abetting their clients. Scanlan v. Eisenberg, No. 09 C 5026, 2011 WL 862748 (N.D. Ill. March 9, 2011) (reversed on other grounds by 669 F.3d 838 (7th Cir. 2012)). With all respect, we believe that Judge Grady's decision was wrong. *First*, it did not give sufficient credit to the Buckner-Edelman-Small trilogy of cases and the argument based thereon set forth above. *Second*, it ignored the two state court trial decisions cited above (Forest Partners and Guerriero). *Third* -- and perhaps most significant -- Scanlan relied primarily on another Illinois appellate case -- Thornwood Inc. v. Jenner & Block, 344 Ill. App. 3d 15, 799 N.E.2d 756 (1st Dist. 2003). Yet, for several reasons, Thornwood is questionable authority for this point.

*First*, Thornwood did not even address -- let alone decide -- the legal issue of whether under agency law lawyers (agents) are legally capable of conspiring with or aiding and abetting their clients (the principals). Instead, Thornwood addressed a different question (irrelevant here)

-- *i.e.*, whether there is a "*per se*" rule that allows a lawyer to "use his license to practice law as a shield" from liability. Id. at 28, 799 N.E.2d at 768.

*Second*, although Thornwood correctly looked to conspiracy jurisprudence as analogous guidance with respect to aiding and abetting, it ignored the most relevant Illinois conspiracy case law, including binding Illinois Supreme Court precedent.  In particular, Thornwood is silent on the three conspiracy cases discussed above -- Buckner (the Supreme Court case holding that principals and agents are legally incapable of conspiring), Salaymeh (the lawyer-client case on which Buckner relied); and Edelman (the appellate case following Buckner and expressly applying it in the lawyer/client context).  Indeed, Thornwood inexplicably ignored Edelman -- even though that case was decided by the same appellate district (the First District) as the Thornwood court.  Despite the precedent rejecting principal/agent conspiracies (including lawyer/client conspiracies), Thornwood said that Illinois recognized such a claim. Id. at 28, 799 N.E.2d at 768.

In doing so, Thornwood relied on Bosak v. McDonough, 192 Ill. App. 3d 799, 549 N.E.2d 643 (1st Dist. 1989).  Bosak, however, was decided years before Buckner (1998) and Edelman (2003).  Moreover, Bosak did not decide whether an attorney-agent is legally capable of conspiring with her client, because it found that there was no evidence there that the lawyer participated in a conspiracy.  192 Ill. App. 3d at 804-05, 549 N.E.2d at 646-47.

In the eight years since Thornwood was decided, only one other reported Illinois state court case has applied Thornwood in the context of an aiding and abetting claim against an attorney.  Yet, in that case, the court had no reason to address the principal/agent issue -- because the plaintiff failed to state an aiding and abetting claim on other grounds.  Grimes v. Saikley, 388 Ill. App. 3d 802, 819-20, 904 N.E.2d 183, 196-97 (4th Dist. 2009).  Further, although the

Seventh Circuit cited <u>Thornwood</u> in <u>Hefferman v. Bass</u>, 467 F.3d 596, 601 (7th Cir. 2006), <u>Hefferman</u> focused *not* on whether a lawyer was legally capable of aiding and abetting her client, but on the *separate* issues of whether aiding and abetting liability exists at all in Illinois and whether it is a separate cause of action -- issues not relevant here.

In all events, even assuming *arguendo* that an attorney can aid and abet her clients, the Complaint fails to adequately allege aiding and abetting liability against Barnes. Among other things, aiding and abetting liability requires that Barnes "knowingly and substantially assist the principal violation." <u>Premier Capital Mgmt., LLC v. Cohen</u>, No. 02 C 5368, 2008 WL 4378313, at *2 (N.D. Ill. Mar. 24, 2008) (applying Illinois law). Even assuming Weiss breached her fiduciary duties (she did not), Plaintiffs fail to allege any facts that give rise to the inference that Barnes "knowingly and substantially" assisted that breach of duty.

## IV. PLAINTIFFS' REQUESTS FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

Plaintiffs seek punitive damages against Barnes for legal malpractice with respect to Counts V, VII, IX, X, XII, XIII, XIV, XVI, XVIII, XIX, XXI. By statute, "[p]unitive damages [are] not recoverable in . . . legal malpractice cases." 735 ILCS 5/2-1115. Therefore, Plaintiffs request must be stricken as to these counts.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and grant such other relief as is appropriate.

Respectfully submitted,

LESLIE WEISS and BARNES & THORNBURG LLP

By: /s/      Rebekah H. Parker
                         One of Their Attorneys

## <u>CERTIFICATE OF SERVICE</u>

Rebekah H. Parker, an attorney, certifies that she caused copies of the foregoing **Defendants' Memorandum in Support of Their Motion to Dismiss the Complaint**, to be served by electronically filing the document with the Clerk of Court using the ECF system this 5th day of December, 2012.

      /s/ Rebekah H. Parker      
