**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL ALONSO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-07373 |
| | ) | |
| LESLIE J. WEISS, et al., | ) | Honorable Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Stephen Novack
Timothy J. Miller
Rebekah H. Parker
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Doc# 556587

# TABLE OF CONTENTS

*Page*

ARGUMENT ..................................................................................................................1

I.  THE RESPONSE APPLIES THE WRONG LEGAL
STANDARDS WITH RESPECT TO DEFENDANTS' IMMUNITY ............................ 2

    A.  A Receiver is Absolutely Immune From Liability For Acting
Pursuant To Court Order Or Approval (Counts II-IV, IX, XVIII, and XX)........... 2

    B.  Defendants Can Be Personally Liable Only
For "Willful And Deliberate" Breaches Of Duty ................................................... 3

II.  EACH COUNT IS BARRED BY ONE OR MORE SOURCES OF IMMUNITY,
AND COUNTS I-IV, IX, XV, XX AND XXI FAIL FOR ADDITIONAL REASONS.... 5

    A.  Count I -- Alleged Violation Of IAA.................................................................... 5

    B.  Count II -- Failure To Notify Limited Partners
Of Alleged Right To Replace General Partner ...................................................... 7

    C.  Count III -- Alleged Failure To Appoint Investment Adviser ............................... 9

    D.  Count IV -- Alleged Overpayment To Crowe ...................................................... 9

    E.  Count IX -- INverso Transaction ....................................................................... 10

    F.  Count XX -- Gold Coast ..................................................................................... 11

    G.  Count XV -- Alleged Failure To Negotiate With SEC ........................................ 11

    H.  Counts V, VII, VIII, X, XI, XII, XIII, XIV, XVI,
XVII, XVIII and XIX Do Not Allege Willful And Deliberate
Misconduct; Instead They Challenge Weiss' Exercise Of Business Judgment.... 11

        1.  Counts V, VII, X, XI, XII, XIII, XIV, XVI And XVIII --
Decisions To Pursue Or Not Pursue Suits, Debts Or Judgments.............. 12

            a.  Counts V (RMD), VII (Sanswire) And XI (North Bay) ............... 12

            b.  Count XIII (Solar Night)............................................................. 14

            c.  Count XVI (Talbot)..................................................................... 14

            d.  Counts X (Nanobac) And XII (Freedman Settlement) ................. 14

            e.  Count XIV (Asia America)........................................................... 15

i

                f.       Count XVIII (Pursuing Claim Against Altholtz) .......................... 15

          2.       Count XIX -- Alleged Waste Of Fund Assets ........................................ 16

          3.       Counts VI, VIII And XVII -- Failure To Convert Debentures ................ 17

   I.      Count XXI (Legal Malpractice) .............................................................. 17

III.    THE COMPLAINT SHOULD BE DISMISSED AS TO
       BARNES FOR THE ABOVE -- AND ADDITIONAL -- REASONS ........................... 18

   A.    Plaintiffs' Legal Malpractice Claims Against Barnes Fail ................................... 18

   B.    Count XXI -- Barnes Cannot Be Held Vicariously Liable .................................. 18

   C.    Count XXI -- No Aiding And Abetting Liability ................................................. 19

IV.    THE COMPLAINT SHOULD BE DISMISSED AS TO NUTMEG ............................ 19

V.    PLAINTIFFS' REQUESTS FOR PUNITIVE
      DAMAGES AGAINST BARNES SHOULD BE STRICKEN ....................................... 19

CONCLUSION ........................................................................................................................19

## **TABLE OF AUTHORITIES**

**_Cases_**                                                                                                      **_Page_**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) .......................................................................................................... 11, 14

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) .......................................................................................................... 11, 14

Blakely v. Brach & Brock Confections, Inc.,
   181 F. Supp. 2d 943 (N.D. Ill. 2002) .................................................................................. passim

Canada Life Ins. Co. v. Stoner,
   No. 95 C 3370, 1995 WL 733458 (N.D. Ill. Dec. 8, 1995) ........................................................ 4

Coleman v. Dunlop,
   695 F.3d 650 (7th Cir. 2012) ............................................................................................. passim

Hsu v. UBS Fin. Servs., Inc.,
   No. C 11-02076 WHA, 2011 WL 3443942 (N.D. Cal. Aug. 5, 2011) ....................................... 7

In re Am. Bridge Prods., Inc.,
   328 B.R. 274 (Bankr. D. Mass. 2005) ...................................................................................... 18

In re Chicago Pacific Corp.,
   773 F.2d 909 (7th Cir. 1985) ..................................................................................................... 3

In re Consupak, Inc.,
   87 B.R. 529 (Bankr. N.D. Ill. 1988) ............................................................................. 13, 15, 17

In re Cont'l Coin Corp.,
   380 B.R. 1 (Bankr. C.D. Cal. 2007) ........................................................................................... 4

In re Fruehauf Trailer,
   No. CV 10-02312 DDP 2011 WL 2014672 (C.D. Cal. May 23, 2011) ...................................... 4

In re Global Crossing, Ltd. Sec. Litig.,
   313 F. Supp. 2d 189 (S.D.N.Y.2003) ........................................................................................ 6

In re Kids Creek Partners L.P.,
   248 B.R. 554 (Bankr. N.D. Ill. 2000) ......................................................................... 3, 12, 17

In re NWFX Inc.,
   267 B.R. 118 (Bankr. W.D. Ark. 2001) ................................................................................... 19

In re San Juan Hotel Corp.,
   71 B.R. 413 (Bankr. D.P.R. 1987) ........................................................................................... 13

In re San Vicente Med. Partners Ltd.,
    962 F.2d 1402 (9th Cir. 1992) ................................................ 7

In re Smith,
    426 B.R. 435 (E.D. N.Y. 2010) ............................................ 12

In re Smyth,
    207 F.3d 758 (5th Cir. 2000) ................................................. 3

Jendusa-Nicolai v. Larsen,
    677 F.3d 320 (7th Cir. 2012) ................................................ 4

Kleinman v. Oak Assocs., Ltd.,
    No. 5:07CV0698, 2007 WL 2071968 (N.D. Ohio July 16, 2007) ........... 7

Maxwell v. KPMG LLP,
    No. 07-2819, 2008 WL 6140730 (7th Cir. Aug. 19, 2008) ................ 3

Mosser v. Darrow,
    341 U.S. 267 (1951) ............................................................ 12

Richman v. Sheahan,
    270 F.3d 430 (7th Cir. 2001) ................................................ 2

Roe-Midgett v. CC Servs., Inc.,
    512 F.3d 865 (7th Cir. 2008) ................................. 6, 7, 11, 18

S.E.C. v. Am. Capital Invs., Inc.,
    98 F.3d 1133 (9th Cir. 1996) ............................................... 7

S.E.C. v. Blavin,
    760 F.2d 706 (6th Cir. 1985) ............................................... 6

S.E.C. v. Gruss,
    859 F. Supp. 2d 653 (S.D.N.Y. 2012) .................................... 6

S.E.C. v. Nutmeg Group LLC,
    No. 09 C 1775, 2011 WL 5042092 (N.D. Ill. Oct. 19, 2011) ........... 5

Sanders v. John Nuveen & Co., Inc.,
    554 F.2d 790 (7th Cir. 1977) ............................................... 5

Sec. & Exch. Comm'n v. Blavin,
    557 F. Supp. 1304 (E.D. Mich. 1983) ................................... 6

State of Ill., Dep't of Revenue v. Schechter,
    195 B.R. 380 (Bankr. N.D. Ill. 1996) ................................... 12

Steel Co. v. Citizens for a Better Env't,
  523 U.S. 83 (1998)............................................................................................... 7

Thompson v. Ill. Dept. of Prof'l Regulation,
  300 F.3d 750 (7th Cir. 2002) ............................................................................ 9

Virnich v. Vorwald,
  664 F.3d 206 (7th Cir. 2011) ............................................................................ 4

Wrobel v. Ill. App. of Emp't Sec.,
  344 Ill. App. 3d 533, 801 N.E.2d 29 (1st Dist. 2003)................................... 3

**_Statutes_**

Sarbanes-Oxley Act, 28 U.S.C. § 1658 ........................................................... 6

**_Other Authorities_**

Black's Law Dictionary (9th ed. 2009)....................................................... 3, 4

Defendants and Nutmeg, by and through their attorneys, submit this Reply in further support of their Memorandum In Support Of Their Motion to Dismiss the Complaint (the "Memorandum" or "Mem at _") and in response to the brief filed by Plaintiffs (the "Response" or "Resp at __").[1]

## **ARGUMENT**

The Memorandum showed (1) that all Counts of the Complaint fail because Defendants are immune from personal liability unless they acted "willfully and deliberately;" and (2) that certain Counts fail for the additional reason that Defendants are absolutely immune from liability because they acted pursuant to court order or with court approval. The Response argues (at 13) that Defendants can be personally liable for merely reckless conduct. It also claims (at 4) that Coleman v. Dunlop, 695 F.3d 650 (7th Cir. 2012) ("Coleman") bars Defendants' absolute immunity arguments. Section I below explains why the Response is wrong.

The Memorandum further established that Counts I-IV, IX, XX, XV and XXI failed to state claims for various additional reasons. Section II below addresses each Count, applies the proper immunity standards developed in Section I and demonstrates that each count of the Complaint fails to state a claim as a result of Defendants' immunity and otherwise.

The Memorandum also established, among other things, that all counts are barred against Nutmeg (Mem. at 5); that Barnes cannot be held directly or secondarily liable (id. at 6-8, 16-22); and that the request for punitive damages from Barnes should be stricken. (Id. at 22.) The Response largely ignores these arguments. For instance, it fails to even address the reasons why Nutmeg should be dismissed and the punitive damages prayer against Barnes stricken. Plaintiffs also abandon most of their claims and theories of liability against Barnes. Thus, sections III

---

[1]     Undefined capitalized terms shall have the same meanings as in the Memorandum. As used herein, "Defendants" refers to Weiss and Barnes.

through V explain the additional reasons why certain counts fail to state a claim.

## I.  THE RESPONSE APPLIES THE WRONG LEGAL STANDARDS WITH RESPECT TO DEFENDANTS' IMMUNITY

### A.  A Receiver is Absolutely Immune From Liability For Acting Pursuant To Court Order Or Approval (Counts II-IV, IX, XVIII, and XX)

The Memorandum (at 8-12) showed that Defendants were absolutely immune from liability for Counts II-IV, IX, XVIII and XX because they acted pursuant to Court order or with Court approval.[2]  The Response argues (at 5-13) that <u>Coleman</u> forecloses these arguments. Plaintiffs' reliance on <u>Coleman</u> is misplaced.

For one thing, <u>Coleman</u> did not address -- and left unchanged -- the rule that receivers are immune for conduct that was approved by the Court.  The Response does not dispute this.

With respect to immunity for actions taken pursuant to court order, <u>Coleman</u> did not change the applicable legal standard. As Plaintiffs acknowledge, <u>Coleman</u> approved the holding in <u>Richman v. Sheahan</u>, 270 F.3d 430, 437 (7th Cir. 2001), that "immunity is available to the extent necessary to protect compliance with a judicial order, and [an] order not specifying the means of implementation does not protect a person who uses means that violate some other rule of law." <u>Coleman</u>, 695 F.3d at 654 (citing <u>Richman</u>).

Consistent with <u>Coleman</u>'s holding, Weiss is <u>not</u> seeking absolute immunity for all her actions as Receiver.  Rather, as set forth below and in the Memorandum, the acts challenged in Counts II, III, IV, IX, XX and XXI were either <u>specifically</u> <u>approved</u> by the Court or were necessary to effectuating the "<u>ends</u>" of the Court's orders.  Therefore, Defendants' immunity arguments are consistent with <u>Coleman</u>.

---

[2]  Unless indicated otherwise, the "Court" refers to the court presiding over the receivership action, <u>SEC v. The Nutmeg Group, LLC, et al.</u>, case no. 1:09-cv-0177, and, unless indicated otherwise, citations to "Dkt" refer to the docket in that case.

**B.    Defendants Can Be Personally Liable Only
For "Willful And Deliberate" Breaches Of Duty**

The Memorandum showed (at 6-8) that, in the Seventh Circuit, receivers and their court-approved counsel are personally liable only for "willful and deliberate" violations of fiduciary duty.  E.g., Maxwell v. KPMG LLP, No. 07-2819, 2008 WL 6140730 at *4 (7th Cir. Aug. 19, 2008); In re Chicago Pacific Corp., 773 F.2d 909, 915 (7th Cir. 1985).  Coleman does not alter this rule.  Indeed, it cites Chicago Pacific with approval.  695 F.3d at 654-55.

The Memorandum further demonstrated (at 7-8) that "willful and deliberate" means more than recklessness.  The Response argues (at 13) that the Memorandum did not cite Seventh Circuit authority, but the Memorandum cited In re Kids Creek Partners L.P., 248 B.R. 554, 561 (Bankr. N.D. Ill. 2000), aff'd 00 C 4076, 2000 WL 1761020 (N.D. Ill. Nov. 30 2000), which interpreted the Seventh Circuit's "willful and deliberate" standard as requiring intentional and knowing misconduct.  See also In re Smyth, 207 F.3d 758, 761 (5th Cir. 2000) (interpreting 7th Circuit standard as requiring intentional breach of duty).  Moreover, the Memorandum cited Illinois authority likewise interpreting "willful and deliberate" as meaning intentional misconduct.  See Wrobel v. Ill. Dept. of Emp't Sec., 344 Ill. App. 3d 533, 536-37, 801 N.E.2d 29, 33 (1st Dist. 2003).  The Response ignores these authorities.

Although the Response cites cases saying that "willful" means "reckless," there are two answers to that.  First, as just explained, the applicable standard is "willful and deliberate."  There is no doubt that "deliberate" means something more than "reckless."  Black's Law Dictionary (9th ed. 2009) defines deliberate as "1. intentional, premeditated, fully considered.  2. unimpulsive; slow in deciding."  Id.  Thus, even if willful can be deemed to mean "reckless" in this context (as shown below it cannot), that is irrelevant.

Second, although in some cases with respect to other statutes, willful may have been

3

interpreted to mean reckless, in other circumstances, willful means more than "reckless." Indeed, the Response's own case, <u>Virnich v. Vorwald</u>, 664 F.3d 206 (7th Cir. 2011) (Resp. at 15), equated willful with malicious. In <u>Virnich</u>, the statute at issue provided for liability for one who willfully or maliciously injured another. <u>Id.</u> at 212. The Seventh Circuit relied on Wisconsin cases to hold that liability depended on allegations of "doing a harm malevolently for the sake of the harm as an end in itself . . ." <u>Id.</u> at 213; <u>accord</u> <u>Jendusa-Nicolai v. Larsen</u>, 677 F.3d 320, 322 (7th Cir. 2012) (discussing bankruptcy code § 523(a)(6) and equating willful with intentional misconduct). Similarly, in <u>Canada Life Ins. Co. v. Stoner</u>, No. 95 C 3370, 1995 WL 733458 at *3 (N.D. Ill. Dec. 8, 1995) (quoting Black's), the court adopted the following definition of willful: "Proceeding from a conscious motion of the will; voluntary; knowing; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary."

In the context here, by pairing "willful" with "deliberate" and requiring both, the Seventh Circuit plainly established a standard well beyond recklessness in order to find a receiver liable. Thus, because they do not discuss the relevant "willful and deliberate" standard, most of the cases cited in the Response are entirely inapposite. For example, in <u>In re Fruehauf Trailer</u>, No. CV 10-02312 DDP 2011 WL 2014672 (C.D. Cal. May 23, 2011) (cited at 14), the court discussed a "gross negligence" <u>or</u> "willful misconduct" standard, not a "willful <u>and</u> deliberate" standard. In turn, the <u>Fruehauf</u> court cited <u>In re Cont'l Coin Corp.</u>, 380 B.R. 1, 4 (Bankr. C.D. Cal. 2007), in which the court held that a bankruptcy trustee could be liable for <u>gross negligence</u> -- not the standard used in the Seventh Circuit. Similarly, none of the cases cited in the Response at 14, note 6, address the correct "willful and deliberate" standard.

The <u>only</u> case the Response cites that involves the applicable "willful and deliberate" standard is <u>S.E.C. v. Nutmeg Group LLC</u>, No. 09 C 1775, 2011 WL 5042092 (N.D. Ill. Oct. 19, 2011) (cited at 14). In <u>Nutmeg</u>, the Court required a showing of bad faith or recklessness before Weiss could be sued, and the court found that the pleading at issue did not meet that standard and did not allow a claim against Weiss to proceed. <u>Id.</u> at 4-5. Because no party argued the meaning of "willful and deliberate," and because the pleading at issue did not even meet the recklessness standard, there was no need for the Court to address whether "willful and deliberate" requires conduct more culpable than recklessness. Thus, any inference from <u>Nutmeg</u> that the proper standard is less culpable than intentional ("willful and deliberate") misconduct is <u>dicta</u>. In all events, if <u>Nutmeg</u> is read as adopting a recklessness standard, it runs contrary to the authorities cited above and ignores the word "deliberate" in the applicable standard.

<u>Finally</u>, even if the Court concludes that "willful and deliberate" means reckless, Plaintiff's Complaint fails. That is because the Seventh Circuit has defined recklessness as "com[ing] closer to being a lesser form of intent than merely a greater degree of ordinary negligence." <u>Sanders v. John Nuveen & Co., Inc.</u>, 554 F.2d 790, 793 (7th Cir. 1977). [3]

As will now be discussed in section II, no count of the Complaint plausibly pleads that Weiss or Barnes willfully and deliberately breached their fiduciary duties.

## II. EACH COUNT IS BARRED BY ONE OR MORE SOURCES OF IMMUNITY, AND COUNTS I-IV, IX, XV, XX AND XXI FAIL FOR ADDITIONAL REASONS

### A. Count I -- Alleged Violation Of IAA

<u>First</u>, as demonstrated in the Memorandum (at 12-13), the IAA does not apply because

---

[3] The Memorandum also argued (at 5-6) that all counts were barred by the Appointment Order. Defendants submit that their interpretation of the Appointment Order is better than the interpretation advanced by the Response (at 6-7), and Defendants stand on the arguments advanced in the Memorandum.

Weiss caused Nutmeg to de-register.  Nonetheless, the Response argues (at 23) that Weiss was required to send out the Funds' third-quarter statements during the brief time in the fourth quarter before she caused Nutmeg to deregister.  Yet, Plaintiffs do not allege that the third-quarter statements were due prior to deregistration, which eliminated any reporting obligations.

Second, in the absence of any rule or law making Weiss' alleged failure clearly improper, not submitting a third-quarter statement cannot be deemed willful and deliberate.

Third and Fourth, as shown in the Memorandum (at 12-13), Weiss is not a proper party to Count I and rescission is not a proper remedy in light of Nutmeg's deregistration.  The Response does not dispute either point; in fact, it ignores -- and therefore waives -- both arguments.  See, e.g., Roe-Midgett v. CC Servs., Inc., 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver); Blakely v. Brach & Brock Confections, Inc., 181 F. Supp. 2d 943, 951 (N.D. Ill. 2002) ("[plaintiff] does not respond, so he has waived any argument in opposition.").

Finally, as the Memorandum showed (at 13), Count I is time-barred.  The Response does not deny that Count I is untimely under a one-year statute, but argues (at 23-24) for the application of the two-year limitations established by the Sarbanes-Oxley Act, 28 U.S.C. § 1658. Yet, the two-year statute of limitations has no application here.  That is because it applies only to offenses that involve fraudulent intent.  See In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 196-98 (S.D.N.Y.2003) (two-year statute does not apply to claims that do not require fraudulent intent, such as negligent misrepresentation).  Regardless of its label, Section 206(4) (the section of the IAA at issue in Count I) has no scienter requirement.  S.E.C. v. Gruss, 859 F. Supp. 2d 653, 668-69 (S.D.N.Y. 2012); Sec. & Exch. Comm'n v. Blavin, 557 F. Supp. 1304, 1315 (E.D. Mich. 1983) aff'd sub nom. S.E.C. v. Blavin, 760 F.2d 706 (6th Cir. 1985). Consistent therewith, Count I does not allege that Weiss acted with intent to defraud.  Thus, the

fraud-based two-year statute does not apply.  See, e.g., Hsu v. UBS Fin. Servs., Inc., No. C 11-02076 WHA, 2011 WL 3443942, at *5 (N.D. Cal. Aug. 5, 2011) (applying one-year statute of limitations to IAA claim); Kleinman v. Oak Assocs., Ltd., No. 5:07CV0698, 2007 WL 2071968, at *2-3 (N.D. Ohio July 16, 2007) (same).

### B.       Count II -- Failure To Notify Limited Partners Of Alleged Right To Replace General Partner

The Memorandum (at 13-15) demonstrated that the Limited Partnership Acts do not apply and that, even if they did, Count II still fails to state a claim for several reasons.

First, the Memorandum showed (at id.) that the Limited Partnership Acts do not create a private cause of action for damages for failure to appoint a substitute general partner.  The Response fails to address this argument, so it is established.  See Roe-Midgett; Blakely, supra.

Second, the Response does not dispute that the Limited Partnership Acts have no application where a receiver is appointed general partner.  Indeed, the Response cites cases (at 9) that hold that a receiver is not bound by limited partnership law.  See In re San Vicente Med. Partners Ltd., 962 F.2d 1402, 1408-09 (9th Cir. 1992) ("we hold that section 959(b) does not burden the receiver for limited partnership property with all of the constraints imposed on a general partner . . . ."); S.E.C. v. Am. Capital Invs., Inc., 98 F.3d 1133, 1143-1144 (9th Cir. 1996) (receiver was not limited by partnership agreement, California Limited Partnership law, or 28 U.S.C. 959(b)), abrogated by Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998).

Instead, the Response argues (at 8) that the Appointment Order charged Weiss with overseeing Nutmeg's operations as general partner of the funds, rather than replacing Nutmeg and making Weiss general partner thereof.  Plaintiffs' interpretation of the Appointment Order is wrong.  The SEC, which drafted the relevant provision of the Appointment Order, made clear in its Motion to Appoint A Receiver Over Nutmeg that, pursuant to the Appointment Order, Weiss

"would step into the shoes of Nutmeg[,]" and "she would serve as general partner and investment adviser to the Funds[.]"  (Dkt. No. 48, relevant excerpts attached hereto as Exhibit A; emphasis added.)  The Court granted the SEC's motion and adopted its proposed language with respect to Weiss' service as general partner.  Therefore, the Appointment Order clearly intended to -- and did -- appoint Weiss as general partner of the Funds.

Third, even assuming *arguendo* Weiss was disassociated from the partnerships (she was not), she retained all rights to manage their property.  Thus, there were no consequences from Weiss' alleged failure to advise Plaintiffs to appoint a new general partner.  The Response (at 7) claims that the Funds' limited partners lost their ability to petition the Court, but the Funds and their limited partners always had that power.  Indeed, the Court instructed one of the Plaintiffs that she should file a motion to intervene to voice her concerns regarding the receivership.  (See Dkt. No. 159 (December 9, 2009 Transcript) at 6:11-7:2; relevant excerpts attached hereto as Exhibit B.)  Thus, because no rights were ever taken from Plaintiffs, Count II fails.

Fourth, even assuming *arguendo* that the Limited Partnership Acts apply and create a private right of action (they do neither), Weiss is entitled to absolute immunity.  It was the Appointment Order that made her general partner of the Funds, and continuing to act as such was the performance of her court-appointed duties.  The Response (at 8) relies on Coleman to argue that absolute immunity does not apply.  But it is precisely the "ends of the order" -- not the means -- that Count II challenges.  In other words, rather than challenge her decisions as general partner, Count II alleges the very fact that Weiss served as general partner was itself unlawful.

Finally, at the very least, Weiss is entitled to personal immunity.  Weiss' compliance with the Court's order appointing her general partner cannot amount to a willful and deliberate breach

of her duties.[4]

### C.    Count III -- Alleged Failure To Appoint Investment Adviser

The Response argues (at 10) that Weiss did not have the credentials required of an investment advisor and that retaining an adviser with such credentials was required.  The Complaint, however, does not allege why Weiss was required to engage a professional investment adviser with respect to funds that were <u>deregistered</u> and <u>no</u> <u>longer</u> <u>actively</u> <u>trading</u>.

In any event, Weiss is entitled to personal and absolute immunity.  The Appointment Order appointed Weiss as investment adviser to the Funds, thereby finding her qualified for the role.  (Mem. at 9.)  Because Count III challenges the fact that Weiss did not appoint a substitute investment adviser rather than any specific decisions she purportedly made as investment advisor, it challenges the "ends" of the order and not the "means."  <u>See</u> <u>Coleman</u>, 695 F.3d at 653-54.  Weiss is also entitled to personal immunity because Count III does not allege that she willfully and deliberately breached her fiduciary duties.

### D.    Count IV -- Alleged Overpayment To Crowe

The transcript that the Response attaches (Exhibit 2 to the Berry Declaration) defeats Count IV's allegation that Weiss was required to seek Court approval before paying Crowe for its work.  <u>See</u> <u>Thompson v. Ill. Dept. of Prof'l Regulation</u>, 300 F.3d 750, 754 (7th Cir. 2002) (if plaintiff relies on document that "negates the claim," dismissal is appropriate).

Judge Hibbler ordered Weiss to provide:

> an updated estimate as to the time needed to complete the functions of Crowe and as to any additional cost associated with the completion of those funds, so that we do have some ballpark to

---

[4]    Because Count II fails, the Court also should strike the following paragraphs of the Complaint, which allege that Weiss and/or Barnes violated the Limited Partnership Acts: 110, 112, 130-135, 155 (last sentence), 309, 312, 334, 338, 345, 351, 355, 362, 368, 377, 381, 388, 394, 398, 405, 409, 416, 420, 427, 434, 438, 445, 451, 455, 463, 467, and 478.

> know how long it's going to take and how much it's going to cost.
> (Berry Decl. Ex. 2, 12:23-13:2.)

Judge Hibbler never ordered that Weiss seek approval of that estimate; rather, the estimate was to inform the Court and parties "how long it's going to take and how much it's going to cost." (Id.)  The Response (at 11) acknowledges that Weiss filed the required estimate on the Court's ECF system.  Thus, by informing the Court and parties of the estimate, Weiss complied with the Court's order; the Court and parties could have -- but did not -- object to that estimate. Moreover, as explained in the Memorandum (at 10), Weiss disclosed each and every payment to Crowe, and no one objected.  Therefore, because Weiss was ordered to use Crowe as Nutmeg's accountant, she is entitled to absolute immunity.

Even assuming, *arguendo*, that Weiss was mistaken in her belief that she did not need prior court approval to pay Crowe, she is immune from personal liability.  The Complaint does not allege that Weiss' payments to Crowe amounted to a willful and deliberate breach of duty, and any such contention would be implausible in light of Weiss' disclosure of all payments to Crowe and her belief that she did not need Court approval.  (Mem. at 10 & Ex. D ¶ 12.)

E.    **Count IX -- INverso Transaction**

Count IX should be dismissed because the Court approved Weiss' conduct with respect to INverso.  The Response (at 11-12) argues that Judge Hibbler did not approve Weiss' decision to oppose the INverso Transaction <u>before</u> she allegedly did so, and that the Court's order finding Goulding in contempt for his efforts in furtherance of the Transaction is irrelevant.  But the reason Goulding was found to be in contempt is very relevant:  the Court expressly held that it "<u>approved</u> the receiver's decision [that the INverso transaction] not [ ] take place[,]" and that Goulding's actions were intended "to make an end run around the receiver's objection and the Court's acquiescence in the receiver's decision" in order to "complete this transaction <u>which the</u>

Court had quite specifically indicated should not take place based upon the receiver's suggestion." (Mem., Ex. G at 3:10-4:2 (emphasis added).) The Court's ruling makes clear that the Court "specifically" directed that the Inverso Transaction not take place before Goulding took action to further it. Thus, Weiss' decision was approved by the Court before she acted on it.

In all events, Weiss is immune from personal liability. While the Complaint (at ¶ 366) concludes that she "willfully and deliberately breached her fiduciary duties," it fails to allege any support for that conclusion, as required by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ("Twombly") and Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("Iqbal"). Indeed, the Court's approval of Weiss' decision makes it implausible that she willfully and deliberately breached her duties.

**F.      Count XX -- Gold Coast**

As explained in the Memorandum (at 16), Count XX fails because Plaintiffs do not allege that Nutmeg realized any benefit from its attempt to convert Gold Coast stock. The Response ignores this argument. Count XX fails for this reason alone. See Roe-Midgett; Blakely, supra.

Moreover, Weiss is immune from personal liability. Although Count XX concludes that Weiss "willfully and deliberately breached her fiduciary duties," the Complaint does not support this conclusion. See Twombly; Iqbal, supra. It is simply implausible that by sending a conversion notice to Gold Coast and then hiring contingent counsel to pursue that claim -- with the Court's consent -- Weiss willfully and deliberately breached her duties.

**G.      Count XV -- Alleged Failure To Negotiate With SEC**

The Response does not respond to Defendants' arguments (Mem. at 15) as to Count XV . Therefore, Count XV should be dismissed. See Roe-Midgett; Blakely, supra.

**H.      Counts V, VII, VIII, X, XI, XII, XIII, XIV, XVI,
          XVII, XVIII and XIX Do Not Allege Willful And Deliberate
          Misconduct; Instead They Challenge Weiss' Exercise Of Business Judgment**

The remaining counts challenge Weiss' business judgment to pursue or abandon certain

11

conversions, claims and judgments. Yet, a receiver's exercise of business judgment cannot amount to a "willful and deliberate" breach; indeed, it is entitled to protection:

> Trustees are often obliged to make difficult business judgments, and the best that disinterested judgment can accomplish with foresight may be open to serious criticism by obstreperous creditors aided by hindsight. Court are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment.

Mosser v. Darrow, 341 U.S. 267, 273-74 (1951). Thus, a receiver has the same discretion to exercise her business judgment as given to a corporate officer, and she cannot be held personally liable for "mistakes in judgment." Kids Creek, 248 B.R. at 559; see also State of Ill., Dep't of Revenue v. Schechter, 195 B.R. 380, 385 (Bankr. N.D. Ill. 1996) (trustee "did not incur personal liability for the exercise of his business judgment in not paying the taxes").

### 1. Counts V, VII, X, XI, XII, XIII, XIV, XVI And XVIII -- Decisions To Pursue Or Not Pursue Suits, Debts Or Judgments

A receiver's decision to pursue (or not pursue) litigation is especially protected against claims by creditors. "[A] bankruptcy trustee is not required to litigate every cause of action the estate may hold. Instead, the trustee need only press claims that, in its business judgment, are in the estate's best interest to pursue." In re Smith, 426 B.R. 435, 441 (E.D. N.Y. 2010). Likewise, a trustee or receiver's decision to prosecute a claim, even if the claim proves to be a losing "gamble," does not give rise to liability. See Kids Creek, 248 B.R. at 562 ("To hold a trustee personally liable for making an unwise litigation decision, especially when based on pre-bankruptcy events which gave rise to the litigation issue, would make trusteeship an onerous, risky, and costly task which few would voluntarily undertake.").

### a. Counts V (RMD), VII (Sanswire) And XI (North Bay)

Counts V, VII and XI do not plausibly allege that Weiss willfully and deliberately breached her duties when she decided not to pursue certain claims. The Response (at 16) relies

on In re Consupak, Inc., 87 B.R. 529 (Bankr. N.D. Ill. 1988) ("Consupak"), to argue that a receiver can be liable for making "unreasonable" business decisions. Significantly, Consupak did not employ the "willful and deliberate" standard used in the Seventh Circuit and instead adopted a "negligence standard." 87 B.R. at 546. Therefore, Consupak is of no relevance.

The Response also argues (at 17) that Goulding's recommendation to pursue these claims triggered a duty to investigate them. Yet, the Response acknowledges (at 16-17) that Weiss did investigate them by contacting officers at each company. It merely disagrees with her decision to credit the companies' officers' statements over Goulding's.

The Response (at 17) relies on In re San Juan Hotel Corp., 71 B.R. 413 (Bankr. D.P.R. 1987), aff'd in part, rev'd in part, 847 F.2d 931 (1st Cir. 1988), to suggest that Weiss should have believed Goulding. In that case, the trustee -- who literally looted the estate and used it "as if it was his own private business" -- ignored the recommendations of the debtor's comptroller, who wrote "abundant memoranda" to the trustee over a three-year period, "disclosing the contemporaneous assessments of a qualified Certified Public Accountant and comptroller with vast experience in the hotel business." San Juan Hotel, 71 B.R. at 420, 424. The trustee also failed to file the reports and summaries of operations as required under the Bankruptcy Code and, in fact, intentionally concealed information about that from creditors. Id. at 421.

San Juan Hotel is easily distinguishable. There is no allegation here that Weiss breached her duty of loyalty or stole from the estate. Moreover, the Response acknowledges that Weiss contacted the relevant companies about these claims; she did not ignore them. Further, the recommendations of the disinterested comptroller of the debtor in San Juan Hotel carries far more weight than those of Goulding, a convicted felon who was removed from Nutmeg, enjoined from conducting business on its behalf and prosecuted by the SEC. Finally, here, Weiss

disclosed in her reports to the Court that she determined that the judgments were worthless and that she instructed her counsel to abandon them. (E.g. Dkt. Nos. 75 at 7-8; 120 at 13-15; 179 at 12; 197 at 12; 241 at 7; relevant excerpts are attached hereto as Group Exhibit C.)

### b. Count XIII (Solar Night)

Count XIII fails to plausibly allege willful and deliberate breach of fiduciary duty. The Response (at 18) attempts to shore up that count by claiming that Weiss "consciously conceal[ed]" her decision to abandon this judgment. But that allegation is not found anywhere in the Complaint. Furthermore, it is wrong. Weiss' reports disclosed that she investigated whether the judgment was collectible; that she and her counsel tried to find a collection agency or third party to assist in collecting the judgment; and that they were informed that the judgment was not collectible. (E.g. Ex. C, Dkt. Nos. 75 at 8; 120 at 13, 15; 179 at 12).

### c. Count XVI (Talbot)

Count XVI fails to plausibly allege willful and deliberate breach of duty. It merely alleges that Weiss took no steps to enforce a $900,000 judgment and that, if she had pursued collection, "on information and belief," she would have obtained a settlement of at least $10,000. (Compl. ¶ 258.) The Response does not even attempt to demonstrate that the allegations of Count XVI suffice under Twombly and Iqbal. Moreover, Weiss cannot be liable for exercising her business judgment that a $10,000 settlement was not worth pursuing.

### d. Counts X (Nanobac) And XII (Freedman Settlement)

Counts X and XII fail to plausibly allege willful and deliberate breach of fiduciary duty. The Response (at 18-19) points to allegations that Barnes failed to appear at certain court dates. Even if true, these allegations do not demonstrate a willful and deliberate breach of duty. If, in the exercise of her business judgment, Weiss determined that these claims were not worth pursuing, then she would have instructed her counsel not to incur any fees.

14

Moreover, as to Count X, the Response mischaracterizes a declaration that Weiss submitted to the Court ("Weiss Declaration").[5] Specifically, the Response claims (at 19) that the Nanobac action was dismissed because Barnes failed to attend two court dates, and it cites the Complaint. But the Complaint (¶ 225) actually alleges that the Nanobac action was dismissed without prejudice, and it does not blame Barnes' lack of attendance therefor. In fact, Barnes affirmatively dismissed the suit, and the order of dismissal -- of which the court may take judicial notice -- is attached hereto as Exhibit D. Thus, the Response's accusation (at 19) that Weiss "attempted to mislead" the Court is a fabrication.

### e.    Count XIV (Asia America)

Count XIV fails to plausibly allege willful and deliberate breach of fiduciary duty. The Response argues (at 19) that Barnes' time records do not reference any effort to settle this case and that the absence of time records demonstrates that Weiss "did not conduct a reasonable investigation," citing Consupak. This is wrong. For starters, the time records are outside the four corners of the Complaint and must be ignored. In all events, Consupak applied the wrong legal standard; the failure to conduct a "reasonable" (i.e., negligent) investigation does not amount to a "willful and deliberate" breach of fiduciary duty.

### f.    Count XVIII (Pursuing Claim Against Altholtz)

Counts XVIII fails to plausibly allege willful and deliberate breach of fiduciary duty. It merely alleges that Weiss caused Nutmeg to pursue frivolous litigation, resulting in a waste of $7,500 in attorney's fees. As explained above, Weiss' business judgment to pursue a claim --

---

[5]    The Response does not explain why the Weiss Declaration should be considered in connection with this Rule 12(b)(6) motion to dismiss. If the Court decides to consider it, it should consider the Weiss Declaration as a whole.

even if wrong -- is protected.  Merely losing a lawsuit is not enough to state any claim -- let alone a claim for willful and deliberate breach of fiduciary duty.

### 2.      Count XIX -- Alleged Waste Of Fund Assets

Count XIX alleges (at ¶¶ 460-61) that Defendants wasted fund assets by filing a rule to show cause against Goulding that sought to compel him to turnover certain documents that Weiss already had in her possession.  Count XIX fails because, at best, its allegations state a claim for negligence -- not willful and deliberate breach of duty.

Indeed, this is confirmed by Magistrate Judge Gilbert's February 6, 2013 order (the "February Order") and related comments.  On February 12, 2013, Defendants asked this Court to take notice of the February Order.  (Dkt. No. 28.)  Defendants join in that request.  The February Order, a copy of which is attached hereto as Exhibit E, confirms that Defendants are immune from personal liability, and further supports dismissal of Count XIX.  See Thompson, 300 F.3d at 754 (claim fails if plaintiff relies on document that negates it).

The February Order rejected Goulding's motion for sanctions, which alleged that Defendants filed a rule to show cause that included a request for documents that were in Weiss' possession -- the exact same allegations Count XIX makes here.  Although Magistrate Gilbert found that Weiss' argument as to one of the eleven subject matters of the rule to show cause was "not well founded," he denied the motion because he found "no evidence of an intentional fraud, concealment or conspiracy."  (February Order at 1-2.)  Magistrate Gilbert explained that it was not unusual "in a case with lots of documents for somebody who's at the point they were in back in 2010, fencing with the Gouldings . . . to be wrong about this[.]"  (February 4, 2013 Transcript at 21:24-22:4; relevant excerpts are attached hereto as Exhibit F.)  Although Goulding (who is one of the Plaintiffs in the instant case) had argued that Weiss intentionally misled the Court, Magistrate Gilbert disagreed:

> I can't imagine that this was an intentional misstatement because at
> base the receiver was asking for the information. If they had the
> information, they didn't have to ask for the information. Other issues
> that you had in the [rule to show cause motion] were resolved. So is
> the fact that the receiver was wrong -- does that justify monetary
> sanctions or other sanctions here? No. . . . [T]here is no evidence in
> front of me that they knew it before [Goulding] found those
> documents . . . I don't see any evidence here of an intentional effort to
> mislead the Court on that. (Ex. D at 22:5-11; 24: 11-15)

Magistrate Gilbert's order and statements confirm that Defendants did <u>not</u> willfully and deliberately breach any duties, and the Complaint does not plausibly plead otherwise.

### 3. Counts VI, VIII And XVII -- Failure To Convert Debentures

Counts VI, VIII, and XVII allege that Weiss breached her fiduciary duties by failing to exercise the Funds' conversion rights under debentures received from GoIP, Secured Financial and Mike the Pike. The Response (at 21-22) relies on matter outside the complaint to argue that such conversions could have been accomplished in a "nearly risk free manner." As the Weiss Declaration explained, however, Weiss believed it was risky to sell stock in these questionable companies -- particularly without holding physical stock certificates -- and decided it was more prudent to sell the notes. (Resp., Ex. 3 ¶¶ 31-41.) Moreover, contrary to the Response's argument (at 22), Weiss had express authority to liquidate the Funds' assets. (Mem. Ex. A, ¶ B.3.) At bottom, the Response merely disagrees with Weiss' business decision not to convert. Indeed, the only case on which the Response relies is <u>Consupak</u>, *supra*, which, as described above, wrongly applies a negligence standard. Even assuming *arguendo* that Weiss exercised poor judgment, this does not amount to a willful and deliberate breach of duty. <u>See</u> <u>Kids Creek</u>, 248 B.R. at 561 ("exercise of poor judgment is not akin to a breach of fiduciary duties").

### I. Count XXI (Legal Malpractice)

Count XXI alleges (at ¶ 481) that Weiss committed legal malpractice when she "overlooked or misinterpreted" the Limited Partnership Acts by not replacing herself as general

partner.  In addition to failing for the reasons articulated with respect to Count II (section II.B, *supra*), Count XXI fails for two additional reasons:  <u>First</u>, it does not allege that Weiss acted willfully and deliberately.  <u>Second</u>, Weiss was appointed to be "the agent of this Court and <u>solely the agent of this Court</u> in acting as Receiver . . . ."  (Mem., Ex. A, ¶ A (emphasis added).)  She was <u>not</u> appointed as counsel to the Funds or even tasked with performing legal work on their behalf; to the contrary, the Court approved her retaining Barnes for that purpose.  (Mem. at 18.)

The Response argues (at 24) that a receiver can be subject to a malpractice claim and cites <u>In re Am. Bridge Prods., Inc.</u>, 328 B.R. 274, 346 (Bankr. D. Mass. 2005) <u>aff'd in part, rev'd in part</u>, 398 B.R. 724 (D. Mass. 2009), <u>vacated</u>, 599 F.3d 1 (1st Cir. 2010).  Yet, there, the receiver <u>admitted</u> that he performed legal services as receiver.  Here, not only does Weiss deny that she performed any legal work, the Complaint does not allege any facts to suggest otherwise.

## III.  THE COMPLAINT SHOULD BE DISMISSED AS TO BARNES FOR THE ABOVE -- AND ADDITIONAL -- REASONS

### A.  Plaintiffs' Legal Malpractice Claims Against Barnes Fail

Counts V, VII, IX, X, XII, XIII, XIV, XVI, XVIII, XIX, and XXI allege that Barnes committed malpractice.  Those counts fail against Barnes for the immunity and other reasons set forth above.  In addition, as the Memorandum (at 17) explained, these counts fail against Barnes because the Complaint does not allege causation.  The Response ignores this argument, and these counts should be dismissed for this reason alone.  <u>See</u> <u>Roe-Midgett</u>; <u>Blakely</u>, *supra*.

With respect to Counts V and XIV, the Response claims (at 26) that "Barnes attorneys gave incorrect advice" to Weiss, but the Complaint makes no such allegations.  To the contrary, it alleges (at ¶ 338) that attorneys are responsible for carrying out the *client's* decisions.

### B.  Count XXI -- Barnes Cannot Be Held Vicariously Liable

The Memorandum demonstrated (at 18) that Barnes cannot be held liable for Weiss'

alleged breaches of duty, citing In re NWFX Inc., 267 B.R. 118 (Bankr. W.D. Ark. 2001). The Response fails to address that case, which held that a law firm could not be held liable for a partner's alleged breaches of fiduciary duty when serving as trustee -- despite allegations that the law firm benefited from the wrongdoing through fees it collected. In a presumed attempt to get around this ruling, the Response claims that Weiss acted as counsel for the Funds, rather than as Receiver. As explained above, the Appointment Order clearly appointed Weiss to be Receiver and agent of the Court, and it approved Barnes to act as her counsel.

>     **C.** **Count XXI -- No Aiding And Abetting Liability**

The Memorandum (at 18-22) demonstrated that a lawyer cannot be liable for aiding and abetting his or her client. The Response ignores this argument and waives any response.

**IV.** **THE COMPLAINT SHOULD BE DISMISSED AS TO NUTMEG**

The Memorandum argued (at 6) that the Appointment Order bars all claims against Nutmeg. The Response ignored this point; the Complaint against Nutmeg should be dismissed.

**V.** **PLAINTIFFS' REQUESTS FOR PUNITIVE**
**DAMAGES AGAINST BARNES SHOULD BE STRICKEN**

The Memorandum explained (at 22) that Barnes cannot be liable for punitive damages. The Response ignores this argument, and the punitive damages prayer should be stricken.

>     **CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

>     Respectfully submitted,

>     LESLIE WEISS and BARNES & THORNBURG LLP


>     By:_____/s/_____Rebekah H. Parker_____
>                     One of Their Attorneys

## <u>CERTIFICATE OF SERVICE</u>

Rebekah H. Parker, an attorney, certifies that she caused copies of the foregoing **Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the Complaint**, to be served by electronically filing the document with the Clerk of Court using the ECF system this 13th day of February, 2013.

      /s/ Rebekah H. Parker      
