UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ALONSO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 12 C 7373 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| LESLIE J. WEISS, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs, limited partners in one or more investment funds (collectively, the "Funds") managed by The Nutmeg Group, LLC ("Nutmeg"), filed suit on their own behalf and derivatively on behalf of the Funds against Leslie J. Weiss, the court-appointed receiver for Nutmeg and the funds; Barnes & Thornburg, LLP ("Barnes & Thornburg"), the law firm retained by the receiver to perform legal services; Nutmeg; and the Funds. In a twenty-one count complaint, plaintiffs allege, among other things, that Weiss, Barnes & Thornburg, and Nutmeg violated § 206(a)(4) of the Investment Advisors Act and SEC Rule 206(4)-2, breached their fiduciary duties, and committed legal malpractice.[1] Before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, their motion [#11] is granted.

---

[1] The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391(a)(1).

## BACKGROUND[2]

Nutmeg, a registered investment adviser established in 2003, was owned and managed by Randall Goulding. Nutmeg formed the Funds, which are limited partnerships under either Illinois or Minnesota law in which plaintiffs are investors. Nutmeg was the sole general partner of each of the Funds and had written advisory agreements with each Fund. Plaintiffs are investors in the Funds. Among other things, the Funds entered into private investments in public equity ("PIPE") transactions, providing funding to a public company in exchange for convertible debentures that could be converted to stock in that company according to an agreed formula.

On March 23, 2009, the Securities & Exchange Commission ("SEC") sued Nutmeg, Goulding, and others in this court. *See SEC* v. *Nutmeg Grp., LLC*, No. 09-CV-1775. The SEC obtained a temporary restraining order that prohibited Nutmeg and Goulding from managing the Funds and froze Nutmeg's accounts. The SEC then sought appointment of a receiver. With the SEC's and Nutmeg's approval, Weiss, a partner at Barnes & Thornburg, was appointed receiver on August 6, 2009.

Pursuant to the appointment order, Weiss, as receiver, was to "oversee all aspects of Nutmeg's operations and business," including "serving as general partner and investment adviser" to the Funds. Ex. A to Defs.' Mem. ("Appointment Order") § II.B.1. She was given

---

[2] The following facts are taken from the complaint and are presumed true for the purpose of resolving the present motion. *See Barnes* v. *Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The court takes judicial notice of the filings in the SEC action. *Ennenga* v. *Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

"the authority to sell or liquidate any assets, property, holdings, or positions of Nutmeg and the Funds, and . . . full power to monitor and approve transactions, disbursements or receipt of funds, or any other disposition relating to such funds, assets or property, and with full power to take such steps as she deems necessary to secure such premises, funds and property." *Id.* § II.B.3. She further had authority to continue Nutmeg's business "in such manner, to such extent, and for such duration as [she] may in the exercise of her business judgment and in good faith deem to be necessary or appropriate." *Id.* § II.B.4. A decision to liquidate and close Nutmeg or the Funds or petition for bankruptcy required the court's approval. *Id.* Weiss was given authority to engage Barnes & Thornburg and other professionals ("Retained Personnel") to assist her in her duties as receiver, including "as needed . . . possible substitute advisers or general partners for the Funds." *Id.* § II.B.9. Crowe Horwath LLP ("Crowe") was to continue as the court-appointed accountant for Nutmeg and the Funds. *Id.* § II.B.7.

The appointment order provided that Weiss "shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order." *Id.* § II.A. Weiss and any Retained Personnel received the following protection:

> The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Receiver or Retained Personnel be liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or Retained Personnel, or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

*Id.* § II.G. All investors and limited partners, among others, were prohibited from "[a]sserting any claim against Nutmeg's or the Funds' property other than in the manner for making claims established by the Receiver." *Id.* § II.M.4.

After her appointment as receiver, Weiss took various actions as general partner and investment advisor of Nutmeg. She pursued certain opportunities, while declining to pursue others. Goulding provided her with his advice as to items of business that needed to be addressed, but Weiss did not follow all of Goulding's suggestions. No quarterly account statements were disseminated to the limited partners in the Funds after Weiss became receiver. At some point, Weiss deregistered Nutmeg as an investment adviser.[3] A claims process was established in early January 2011, with all claims required to be submitted to Weiss by March 9, 2011. Notice of this process was sent to all known investors in the Funds and also published in the WALL STREET JOURNAL. Weiss filed reports with the court providing information regarding the actions she was taking as receiver and sought the court's approval of certain actions, including, for example, employing an investment banker to advise her with regard to the Funds and distributing funds to certain investors. The motion for distribution of funds was withdrawn, however, and no distribution has yet been made to the investors. Weiss, Barnes & Thornburg,

---

[3] Defendants assert that Nutmeg was deregistered as an investment adviser on November 18, 2009 and that the court may take judicial notice of this fact. Although the court agrees that it can take judicial notice of the fact of deregistration, as it is a matter of public record, the date of deregistration is not judicially noticeable or properly before the court at this stage. The document submitted by defendants to establish this fact does not contain any date of deregistration.

and other Retained Personnel have received payment for their fees.[4]

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010). Rather, it is the facts that count.

---

[4] Although counsel for Weiss and Barnes & Thornburg in this case received payment in March 2012 for $98,452.82, Weiss's motion for payment of counsel's fees in this action out of the receivership estate was denied without prejudice.

## ANALYSIS

**I.     Investment Advisers Act Claim (Count I)**

In Count I, the only count supporting federal question jurisdiction, plaintiffs assert that since Weiss's appointment as receiver in August 2009, Weiss and Nutmeg have failed to disseminate quarterly account statements to the limited partners of the Funds in violation of § 206(4) of the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. § 80b-6, and SEC Rule 206(4)-2. Plaintiffs seek rescission of the advisory agreements between Nutmeg and the Funds pursuant to § 215(b) of the IAA, 15 U.S.C. § 80b-15(b).[5]

Section 206(4) makes it unlawful for an investment adviser "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4). Prior to April 1, 2010, SEC Rule 206(4)-2 made it a "fraudulent, deceptive, or manipulative act, practice or course of business" for a registered investment adviser (or an adviser who is required to be registered) to have custody of client funds or securities if quarterly account statements were not sent to each limited partner or the adviser did not have a reasonable basis to believe that the qualified custodian sent an account statement to the limited partners. As of April 1, 2010, the rule requires an investment adviser to determine, after due inquiry, that there is a reasonable basis to believe that the qualified custodian was providing quarterly account statements to the limited partners. Although speaking of "fraudulent, deceptive, or

---

[5] Although the SEC can enforce the provisions of the IAA through an action for injunctive relief, an implied right of action has been recognized for rescission of a contract the formation or performance of which would violate the IAA. *See Transamerica Mortg. Advisors, Inc.* v. *Lewis*, 444 U.S. 11, 18–19, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979).

manipulative" practices, Section 206(4), the only section of the IAA at issue here, does not require a finding of fraudulent intent. *See SEC* v. *Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992); *SEC* v. *Householder*, No. 02 C 4128, 2002 WL 1466812, at *7 (N.D. Ill. July 8, 2002).

Among other proffered reasons for dismissal of the IAA claim, defendants argue that it is barred by the statute of limitations. They contend that the statute of limitations for rescission pursuant to the IAA is the earlier of one year from discovery or three years from the violation, a period borrowed from the 1933 and 1934 Securities Acts. *See, e.g.*, *Kahn* v. *Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1033–39 (2d Cir. 1992) (applying one year/three year period to IAA actions for rescission); *Derby* v. *Perschke*, No. 88C3835, 1990 WL 179868, at *5 (N.D. Ill. Nov. 8, 1990) (same). Plaintiffs allege that they did not receive quarterly statements after Weiss was appointed receiver in August 2009, and the parties agree that the injury should have been discovered once plaintiffs did not receive a quarterly statement after the third quarter of 2009 closed. Plaintiffs only sought leave to sue defendants in August 2011, after the one-year limitations period would have expired.[6]

Plaintiffs, on the other hand, argue that Sarbanes-Oxley's limitations period applies, which provides that a claim involving "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" must be brought

---

[6] The parties do not dispute that the relevant end date for purposes of the statute of limitations is, at the latest, when plaintiffs sought leave to file this action. *See Edalatdju* v. *Lazer*, 439 F. App'x 551, 553 (7th Cir. 2011) ("[F]or purposes of the statute of limitations, [plaintiff's] complaint . . . was filed when he sought leave to file it and submitted a proposed complaint; any delay attributable solely to the district court's rulings will not affect his complaint's timeliness.").

7

within two years of discovery or five years from the violation. 28 U.S.C. § 1658(b). They assert that the earliest they could have discovered that third quarter 2009 statements would not be sent is forty-five days after the close of the quarter, November 14, 2009. Thus, they argue that their filing was timely because they served a demand that Weiss cause the filing of the derivative claim asserted here on October 4, 2011 and sought leave to file this action on November 10, 2011. Which limitation provision applies is thus determinative of whether plaintiffs can proceed on their IAA claim.

The Sarbanes-Oxley limitations provision applies to "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658(b). By its plain terms, this provision applies only to fraud-based claims and "does not apply to claims under the securities laws that do not require any showing of fraudulent intent as an element of the cause of action." *In re Alstom SA*, 406 F. Supp. 2d 402, 412–13 & n.5 (S.D.N.Y. 2005) (collecting cases); *see also Lawrence E. Jaffe Pension Plan* v. *Household Int'l, Inc.*, No. 02 C 5893, 2004 WL 574665, at *13–14 (N.D. Ill. Mar. 22, 2004) (considering statutory language of § 1658(b) and determining that it did not apply to plaintiff's strict liability claims under §§ 11, 12(a)(2), and 15 of the 1933 Act); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 197 (S.D.N.Y. 2003) (Sarbanes-Oxley limitations provision does not apply to all claims under the securities laws but only those requiring a showing of fraudulent intent). Although the court need not look beyond the plain language of the statute, the conclusion that Sarbanes-Oxley's limitations provision only reaches claims requiring a showing of fraudulent intent is bolstered by the legislative history. *See Lawrence E. Jaffe Pension Plan*, 2004 WL 574665, at *12–14 (citing

*In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 444 (S.D.N.Y. 2003), *vacated on other grounds*, 496 F.3d 245 (2d Cir. 2007)).

Despite Sarbanes-Oxley's plain language, courts across the country have divided as to whether the Sarbanes-Oxley limitations period applies to actions under the IAA, such as this one, that do not require a finding of fraudulent intent. *See Dommert* v. *Raymond James Fin. Servs., Inc.*, 2009 WL 275440, at *6–7 (E.D. Tex. Feb. 3, 2009) (noting split in whether Sarbanes-Oxley's extended limitations period applies to IAA claims but refusing to decide the issue as the claims would be untimely regardless of which limitations period applied). Some courts have not considered the potential conflict between the two periods, either applying the one-year/three-year limitations period recognized in *Kahn* or the two-year/five-year period enacted by Sarbanes-Oxley, without discussing the other. *Compare Padilla* v. *Winger*, No. 2:11CV897DAK, 2012 WL 1379228, at *2–3 (D. Utah Apr. 20, 2012) (applying Sarbanes-Oxley limitations period to fraud claims under IAA, including claim for violation of § 206(4)); *and Flood* v. *Makowski*, No. Civ. A. 3:CV-03-1803, 2004 WL 1908221, at *32 (M.D. Pa. Aug. 24, 2004) (Sarbanes-Oxley created statute of limitations applicable to the IAA), *with Malone* v. *Clark Nuber, P.S.*, No. C07-2046RSL, 2008 WL 2545069, at *6 (W.D. Wash. June 23, 2008) (applying *Kahn* limitations period to IAA claim without considering Sarbanes-Oxley limitations period). In *Thomas* v. *Metropolitan Life Insurance Co.*, the court applied the Sarbanes-Oxley limitations period "despite the fact that plaintiffs' IAA claims do not depend on proof of fraud," noting that "fraudulent conduct is repeatedly alleged in this action in support of plaintiffs' breach of fiduciary theory of liability." No. CIV-07-0121-F, 2008 WL 4619822, at *3–4 (W.D. Okla. Oct.

16, 2008).  But in *Hsu* v. *UBS Financial Services, Inc.*, the court recognized that Sarbanes-Oxley extended the limitations period only for fraud-based claims, applying the *Kahn* limitations period to non-fraud-based IAA claims and the Sarbanes-Oxley limitations period to fraud-based IAA claims.  No. C 11-02076 WHA, 2011 WL 3443942, at *3–5 (N.D. Cal. Aug. 5, 2011);[7] *see also Kleinman* v. *Oak Assocs., Ltd.*, No. 5:07CV0698, 2007 WL 2071968, at *2–3 (N.D. Ohio July 16, 2007) (noting that *Kahn* was decided ten years before Sarbanes-Oxley was enacted but following it regardless, as the Sixth Circuit had not decided whether to apply Sarbanes-Oxley and Second Circuit cases "emphatically state" that Sarbanes-Oxley applies only to claims requiring fraudulent intent); *Phoenix Four, Inc.* v. *Strategic Resources Corp.*, No. 05 CIV. 4837 (HB), 2006 WL 399396, at *7 (S.D.N.Y. Feb. 21, 2006) (declining to apply Sarbanes-Oxley limitations period to IAA claim that did not require showing of fraudulent intent).

The court agrees with those cases holding that the Sarbanes-Oxley extended limitations period applies only to a subset of claims under the securities laws, those requiring fraudulent intent.  "If Congress had intended to extend the statute of limitations for every private securities law claim, it could have done so."  *Cohen* v. *Northwestern Growth Corp.*, 385 F. Supp. 2d 935, 942 (D.S.D. 2005) (quoting *Worldcom*, 294 F. Supp. 2d at 444).  It is not the court's role to rewrite the statutory provision or ignore its limiting language.  *See Lawrence E. Jaffe Pension Plan*, 2004 WL 574665, at *13 ("Plaintiff's contention that Sarbanes-Oxley pertains to all sections of the Securities Act of 1933 and the Securities Exchange Act of 1934 because

---

[7] On appeal, the Ninth Circuit declined to address the limitations question, affirming the district court's decision on other grounds.  *Hsu* v. *UBS Fin. Servs., Inc.*, 507 F. App'x 716, 717 (9th Cir. 2013).

Congress failed to explicitly exclude any sections of either invites the Court to step into the role of legislator, which is inappropriate."). As plaintiffs' IAA claim does not require a finding of fraudulent intent, the one-year from discovery period applies. Plaintiffs filed their claim outside of that one-year period, and thus it is time-barred.

## II. State Law Claims

Dismissal of the IAA claim means that the only remaining counts are state law claims. The court declines to exercise supplemental jurisdiction over these remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [#11] is granted. Count I of plaintiffs' complaint is dismissed with prejudice. Plaintiffs' state law claims (counts II-XXI) are dismissed without prejudice to refiling in state court. This case is terminated.

Dated: July 22, 2013                              ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge