# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL ALONSO, et al.,       )
                                        )
      Plaintiffs,         )
                                         )      Case No. 12 C 7373
      v.                  )
                                       )      Judge Joan H. Lefkow
LESLIE J. WEISS, et al.,        )
                                       )
      Defendants.      )

## AMENDED OPINION AND ORDER[1]

On September 14, 2012, a group of limited partners in one or more investment funds (collectively, "the Funds")[2] managed by The Nutmeg Group, LLC ("Nutmeg"), filed this individual and shareholder derivative action on behalf of the Funds against Leslie J. Weiss, the court-appointed receiver for Nutmeg and the Funds; Barnes & Thornburg, LLP ("Barnes & Thornburg"), the law firm retained by the receiver to perform legal services;[3] Nutmeg; and the Funds. (Dkt. 1.) The case arises from a receivership in which Nutmeg was placed as a result of a lawsuit filed in this district by the Securities and Exchange Commission ("SEC") against Nutmeg, Randall Goulding (Nutmeg's managing member), and others in 2009. *See SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775. Leslie Weiss was appointed and remains receiver, and attorneys from her law firm, Barnes & Thornburg, have rendered legal counsel to her during the receivership. Plaintiffs claim that Weiss, during her receivership, has breached her fiduciary duties to the Funds and that the defendant attorneys have committed legal malpractice. (Dkt. 1.)

---

[1] This opinion supersedes the earlier opinion of this court entered at docket no. 47.

[2] The Funds are Mercury Fund, Tropical Fund, Fortuna Fund, MiniFund, MiniFund II, Nanobac Fund, Patriot Fund, October 2005 Fund, Michael Fund, Adzone Fund, Startech II, Lightning Fund I, and Image Global Fund. (Dkt. 22 at 1 n.1)

[3] Weiss is also a partner at Barnes & Thornburg. (Dkt. 1 ¶ 97.)

In addition to their state-law claims for breach of fiduciary duty and legal malpractice, plaintiffs brought a federal claim under § 206(a)(4) of the Investment Advisors Act of 1940 and SEC Rule 206(4)-2. (*Id.*) On July 22, 2013, this court dismissed plaintiffs' federal claim with prejudice because the claim fell outside of the applicable statute of limitations. (Dkt. 35 at 11.) The court then dismissed the remaining state-law claims without prejudice to refiling in state court. (*Id.* at 12.) Subsequently, on August 19, 2013, plaintiffs moved to amend the judgment to permit plaintiffs to file an amended complaint. (Dkt. 37.) In their motion, plaintiffs raised a new theory of subject matter jurisdiction: that the court had jurisdiction over the proposed amended complaint (dkt. 45 ("Compl.")) because it is brought against a receiver appointed by the district court. *See* 28 U.S.C. § 754; *Robinson* v. *Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 586 (6th Cir. 1990) (citing C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2985 at 45; *Diners Club, Inc.* v. *Bumb*, 421 F.2d 396, 398–401 (9th Cir.1970)).[4] The court granted the motion on September 23, 2013, reinstated defendants' motion to dismiss, and deemed the motion to be directed at counts II through XXI of the amended complaint. (Dkt. 42.) That motion is again before the court for decision. The court assumes familiarity with the factual background contained in the court's opinion and order previously dismissing this suit.[5] *Alonso* v. *Weiss*, 958 F. Supp. 2d 922, 923–25 (N.D. Ill. 2013); (dkt. 35 at 2–5.)

---

[4] Except for the allegations relating to subject matter jurisdiction, the amended complaint is nearly identical to the original complaint. (*See* dkt. 45.)

[5] *SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775, is still ongoing. The court takes judicial notice of the filings in the SEC action. *Ennenga* v. *Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." (citation omitted)). Citations to the docket in the SEC action are designated "SEC dkt." Given that the parties to this case have appended many of the filings in the SEC action to their briefs, the court cites to its own docket when possible.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, --- L. Ed. 2d --- (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

### I. Immunity From Suit

In their motion to dismiss, defendants contend that the amended complaint fails to state a claim because Weiss, Nutmeg, and Barnes & Thornburg are entitled to various immunities. The court addresses each of defendants' arguments in turn.

**A.      Immunity Under the Appointment Order**

**1.      Weiss and Barnes & Thornburg**

Defendants first argue that the claims against Weiss and Barnes & Thornburg are absolutely barred because the order appointing Weiss receiver provides that Weiss and Barnes & Thornburg cannot be liable for actions taken in the course of their official duties. Thus, according to defendants, because plaintiffs have not alleged that Weiss or Barnes & Thornburg acted outside the scope of their responsibilities under the appointment order, Weiss and Barnes & Thornburg are absolutely immune from suit.

The appointment order provides, "In no event shall the Receiver or Retained Personnel be liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or Retained Personnel, or (2) for any actions taken or omitted by them, *except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties*." (Dkt. 13-1 Exh. A ¶ G (emphasis added).) Defendants suggest that the modifying clause beginning "except upon a finding by this Court" applies only to provision (2), thus exempting Weiss and Barnes & Thornburg from any liability whatsoever for actions taken in the course of their duties. But that interpretation is grammatically incorrect and does not comport with common sense. *See To-Am Equip. Co.* v. *Mitsubishi Caterpillar Forklift Am.*, 913 F. Supp. 1148, 1153 (N.D. Ill. 1995) (noting that pursuant to the last antecedent doctrine, modifying words or clauses apply to the immediately preceding phrase alone *unless* the modifier is preceded by a comma). Because the plain language of the appointment order allows for the imposition of liability on Weiss and Barnes & Thornburg for actions taken during the performance of their duties under certain, albeit narrow,

circumstances, defendants' argument that Weiss and Barnes & Thornburg are absolutely immune under the appointment order fails.

### 2. Nutmeg

Defendants also assert that the appointment order bars any claims against Nutmeg because plaintiffs did not follow the applicable claims process or otherwise obtain leave of court before filing suit. Plaintiffs do not respond to this argument. The appointment order provides,

> "Except by leave of this Court, during pendency of the receivership ordered herein, all investors, limited partners, creditors, and other persons . . . are stayed from: . . . (4) Asserting any claim against Nutmeg's or the Funds' property other than in the manner for making claims established by the Receiver."

(Dkt. 13-1 Exh. A ¶ M.) Under the procedure established by Weiss, the opportunity to submit claims against Nutmeg closed on March 9, 2011. (SEC dkt. 269.) Plaintiffs filed this lawsuit well after that date. (*See* dkt. 1.) Moreover, plaintiffs did not obtain leave of court before filing this suit. Although plaintiffs sought leave in the SEC action to file their original complaint (SEC dkt. 406), the court determined that seeking leave was unnecessary because the Northern District of Illinois constitutes a single court for purposes of the *Barton* Doctrine.[6] *SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775, 2012 WL 3307406, at *2 (N.D. Ill. Aug. 13, 2012); (SEC dkt. 533 at 3.) In fact, the court expressly declined to reach the issue of whether leave was granted to file the complaint. *Id.* Therefore, because plaintiffs failed either to follow the claims process established by Weiss or to obtain leave of court prior to filing suit, plaintiffs' claims against Nutmeg are dismissed.

---

[6] The *Barton* Doctrine bars suits against court-appointed receivers for their actions in the course of their receivership in courts other than the appointing court. *Barton* v. *Barbour*, 104 U.S. 126, 127, 26 L. Ed. 672 (1881). Thus, a party seeking to sue a receiver must first obtain leave from the appointing court. *See SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *2 (N.D. Ill. Oct. 19, 2011) (citation omitted).

## B. Quasi-Judicial Immunity

Defendants next assert that they are entitled to absolute immunity for those counts of the amended complaint that are based on acts performed by defendants pursuant to court order. This analysis begins with the "fundamental principle that judges are entitled to absolute immunity from damages for their judicial conduct." *Richman* v. *Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (citing *Mireles* v. *Waco*, 502 U.S. 9, 11–12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Forrester* v. *White*, 484 U.S. 219, 225–29, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)). Although originally confined to members of the judiciary, judicial immunity has been extended to "quasi-judicial conduct" of "[n]on-judicial officials whose official duties have an integral relationship with the judicial process." *Henry* v. *Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) (citation omitted). Parties, including receivers, who execute judicial orders are entitled to absolute immunity. *Coleman* v. *Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012); *In re Berry Pub. Servs., Inc.*, 231 B.R. 676, 681 (Bankr. N.D. Ill. 1999). "But only the ends of the order—not the means used to execute the order—are protected." *Coleman*, 695 F.3d at 653–54 (citation omitted).

### 1. Count II[7]

Plaintiffs bring count II of the amended complaint against Weiss for breach of fiduciary duty and violation of the Illinois and Minnesota partnership statutes.[8] Illinois and Minnesota

---

[7] Defendants also assert that count XVIII is barred on grounds of quasi-judicial immunity but do not explain why. Nor can the court discern a reason. Thus, the court will not dismiss count XVIII on this basis.

[8] Illinois or Minnesota law applies because each of the Funds is either an Illinois or Minnesota limited partnership. (Compl. ¶ 1.) The amended complaint is unclear as to whether plaintiffs intend to bring two separate claims in count II—one for breach of fiduciary duty and the other for violation of the state partnership statutes—or simply one claim for breach of fiduciary duty based on Weiss's alleged failure to comply with state partnership law. In any event, resolution of this issue is unnecessary as the court determines that Weiss is entitled to quasi-judicial immunity on this count.

partnership law provide that a general partner is dissociated from a limited partnership when the general partner seeks, consents to, or acquiesces in the appointment of a receiver. 805 Ill. Comp. Stat. 215/603(6)(c); Minn. Stat. 321.0603(6)(c). If, after the dissociation of the general partner, the limited partnership does not have a remaining general partner, the limited partnership will be dissolved unless, within ninety days of the general partner's dissociation, the limited partners owning a majority of the rights to receive distributions "consent to . . . admit at least one general partner" and "at least one person is admitted as a general partner." 805 Ill. Comp. Stat. 215/801(3)(B)(i)(ii); Minn. Stat. 321.0801(3)(B)(i)(ii). Further, whenever a limited partner is entitled to give consent, the limited partnership must provide the limited partner with all information material to the limited partner's decision. 805 Ill. Comp. Stat. 215/304(i); Minn. Stat. 321.0304(i).

Plaintiffs assert that pursuant to these provisions, Nutmeg, as general partner of the Funds, was dissociated from the Funds when it was put into receivership. Thus, plaintiffs allege, the limited partners had the right to replace Nutmeg as general partner, and Weiss, as receiver, was required to notify the limited partners of this right. Plaintiffs contend that Weiss intentionally violated the rights of the limited partners by failing to provide them with this information, instead retaining the responsibilities of general partner for herself. Defendants respond that Weiss is absolutely immune for not facilitating the election of a new general partner because the appointment order expressly required Weiss to serve as general partner. The court agrees.

The appointment order provides that, as receiver, Weiss "shall oversee all aspects of Nutmeg's operations and business which include, but are not limited to, serving as general partner and investment advisor" to the Funds. (Dkt. 13-1 Exh. A ¶ B.1.) Thus, the court-

7

mandated end of the appointment order is that Weiss assume and retain the position of general partner.  As an initial matter, therefore, it is unclear whether the limited partners had a right to elect a new general partner, because that right is triggered under Illinois and Minnesota partnership law *only when* the limited partnership is left without a general partner, and here, Weiss assumed that position.  805 Ill. Comp. Stat. 215/801(3)(B)(i)(ii); Minn. Stat. 321.0801(3)(B)(i)(ii).  But even assuming that the limited partners had the right to elect a general partner, Weiss complied with the appointment order in serving in that capacity, and therefore cannot be held liable for failing to give notice.

Plaintiffs parse words in their response and suggest that the appointment order merely requires Weiss to *oversee* Nutmeg's role as general partner, not to *serve* as general partner herself.  Contrary to plaintiffs' assertions, however, the appointment order required Weiss to *serve* as general partner.  Indeed, the SEC's motion to appoint Weiss as receiver provided that Weiss's duties would "include serving as general partner and investment adviser to" the Funds. (Dkt. 30-1 Exh. A at 1.)  Moreover, the motion provides that as receiver, "Weiss would step into the shoes of Nutmeg."  (*Id.* at 6.)  The court in the SEC action granted that motion in the appointment order.  (*See* dkt. 13-1 Exh. A.)  If the court in the SEC action had intended Weiss's role to be different from that described in the SEC's motion, it would have said so in the appointment order.  The court did not, and the appointment order explicitly required Weiss to serve as general partner.

Plaintiffs also assert that, in assuming the position of general partner, Weiss violated the provision of the appointment order permitting her to employ, "as needed, . . . substitute advisers or general partners for the Funds."  (*Id.* ¶ B.9.)  But that provision merely gives Weiss the authority to retain additional professionals to assist her in her duties as receiver.   It certainly

does not require Weiss to replace herself as general partner, even if one assumes that result is required by state partnership law. In fact, facilitating the election of a new general partner would have contravened the intent of the appointment order. Accordingly, because the appointment order required Weiss to serve as general partner, she is absolutely immune from liability for serving in that capacity and not facilitating the election of a replacement. Count II is dismissed.[9]

Dismissal of count II means that the legal malpractice claims against Weiss and Barnes & Thornburg in count XXI are also deficient. Those claims are entirely based on Weiss's and Barnes & Thornburg's failure to notify the limited partners of their right to elect a general partner. But because the appointment order required Weiss to serve as general partner, Weiss and Barnes & Thornburg cannot be liable on this basis. Thus, the malpractice claims contained in count XXI are dismissed.

### 2. Count III

In count III, plaintiffs allege that Weiss breached her fiduciary duties in failing to hire a qualified investment advisor. According to plaintiffs, Weiss had no experience with "PIPE" transactions specifically, or as an investment advisor more generally, and should have hired a trained investment advisor with the appropriate background and training. Defendants contend that Weiss is entitled to absolute immunity because the appointment order expressly designated Weiss as investment advisor to the Funds. As with Count II, the court finds that Weiss is absolutely immune from liability.

The appointment order provides that Weiss must "oversee all aspects of Nutmeg's operations and business" including "serving as general partner and investment advisor to" the

---

[9] Defendants assert in their reply brief that if the court dismisses count II, it should strike the paragraphs of the amended complaint alleging that Weiss and/or Barnes & Thornburg violated state partnership law. (Dkt. 30 at 9 n.4.) Striking these paragraphs is unnecessary and the court declines to do so. Count II has been dismissed and allegations that defendants violated state partnership law are no longer appropriate in this case.

Funds.  (*Id.* ¶ B.1.)  Therefore, the court appointed Weiss investment advisor to the Funds, and she is absolutely immune from liability for serving in that capacity.  And while the appointment order authorized Weiss to "engage and employ . . . as needed . . . possible substitute advisers" (*id.* ¶ B.9), it did not require her to do so.  Although plaintiffs maintain that Weiss lacked the experience necessary to serve as investment advisor, Weiss's qualifications were explained to the court in the SEC action (*see* dkt. 30-1 ¶ 7), and the court nevertheless decided to appoint her investment advisor of the Funds.  Accordingly, Weiss is immune from suit for serving in that position.  Count III is dismissed.

### 3.  Count IV

Plaintiffs allege in count IV that Weiss breached her fiduciary duties in paying Crowe Horwath, LLP ("Crowe"), the court-appointed accountant for Nutmeg and the Funds, fees in excess of the $150,000 fee cap set by the court in the SEC action.[10]  Defendants assert that Weiss is immune from liability because her payments to Crowe were disclosed to, and approved by, the court.  The proceedings and filings in the SEC action, however, indicate that Weiss did not act pursuant to court order in making payments to Crowe in excess of the fee cap.  At a hearing in the SEC action on December 12, 2009, the court asked Weiss to provide "an updated estimate as to the time needed to complete the functions of Crowe and as to any additional cost associated with the completion of those funds, so that we do have some ballpark to know how long it's going to take and how much it's going to cost."  (Dkt. 21-2 at 12–13.)  Although Weiss later filed an estimate on the court's docket (*see* SEC dkt. 162), the court never entered an order approving the additional fees.  Instead, Weiss asserts that she did not need court approval to exceed the fee cap.  Quasi-judicial immunity, however, requires that the party seeking immunity

---

[10] The court in the SEC action set the cap on April 28, 2009.  (SEC dkt. 38.)

act pursuant to court order.  *See Coleman*, 695 F.3d at 653–54.  Because there was no court order to pay Crowe fees over the $150,000 cap, Weiss is not entitled to immunity.

### 4.    Count IX

Count IX alleges that Weiss breached her fiduciary duties by terminating a transaction with INverso Corp. that was advantageous to some of the Funds.  Defendants assert that Weiss is absolutely immune from liability for terminating the transaction because the court in the SEC action approved Weiss's decision.  Plaintiffs do not dispute that the court approved Weiss's decision, and instead argue that the court did so after, rather than before, Weiss terminated the transaction, thus precluding a finding of quasi-judicial immunity.

In the SEC's motion to appoint a receiver, the SEC flagged the INverso transaction and asserted that a receiver was "needed to review the transaction and determine whether it actually benefits Nutmeg" and the Funds.  (SEC dkt. 48 ¶ 5.C.)[11]  The order appointing the receiver required the receiver to "[t]ake such action as necessary and appropriate to prevent the dissipation or concealment of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets."  (SEC dkt. 66 ¶ 10.)  That the court intended Weiss to examine the INverso transaction is clear both from the presentation on the motion and the court's later statement (on January 19) that it considered it Weiss's (not Goulding's) decision as to whether the INverso transaction should take place.  (Dkt. 13-2 Exh. G at 3.)

Subsequently, the SEC filed a motion for a rule to show cause against Goulding for violating the court's preliminary injunction order (SEC dkt. 68), which prohibited Goulding from transferring or otherwise disposing of Nutmeg's and the Funds' assets.  According to the SEC, Goulding had assisted third parties in seizing control of INverso in order to sell INverso shares

---

[11] According to the motion to appoint a receiver, Nutmeg and other defendant Funds owned 94% of INverso's outstanding stock.  The Funds do not seem to dispute that INverso was part of the receivership estate.

over Weiss's objections.  (SEC dkt. 129.)  According to the Funds, "[w]hen the transaction was nearly complete, Weiss announced her opposition to it, causing Hartman and Felder to repudiate."  (Dkt. 22 at 11.)  Under these descriptions, it is not entirely clear that Weiss's announcement of her opposition was a termination of the transaction as much as information the participants used to decide not to go forward.  Moreover, the parties do not address how, in these circumstances, the "termination" could have been approved by the court beforehand.

In any event, at a hearing on the show cause motion on January 19, 2010, the judge stated, "After the Court had a hearing, was advised by the receiver that that was not prudent action in the receiver's mind, the Court approved the receiver's decision for that acquisition not to take place."  (Dkt. 13-2 Exh. G at 3.)  Weiss relies on this statement and the court's further statement that Goulding's actions were intended "to make an end run around the receiver's objection and the Court's acquiescence in the receiver's decision" in order to "complete this transaction which the Court had quite specifically indicated should not take place based upon the receiver's suggestion."  (*Id.*)

These statements indicate that the court in the SEC case approved Weiss's decision to halt the transaction, but Weiss has not provided the court with the transcript of this prior hearing such that the court can verify that it occurred before she acted.  If the allegation that she acted before approval is accepted as true, and if it is assumed (as the Funds allege and Weiss does not appear to deny) that her action was subject to court approval, the action would have been outside her authority under the receivership order.  Although it is difficult to imagine that these circumstances could ever be demonstrated to be a breach of fiduciary duty, Weiss has not established that she is entitled to qualified judicial immunity on Count IX.

### 5. Count XX

In count XX, plaintiffs allege that Weiss breached her fiduciary duty and usurped an opportunity available to the Funds by seeking to convert debentures owned by Nutmeg into stock in Gold Coast Mining Corp. ("Gold Coast"), while simultaneously declining to convert debentures held by the Funds. Defendants assert that Weiss is immune from liability because on June 1, 2012, the court in the SEC action granted Weiss's motion to employ counsel on a contingency basis to pursue collection against Gold Coast on behalf of Nutmeg. (*See* dkt. 13-2.) Defendants do not dispute, however, that Weiss issued a notice of conversion to Gold Coast on behalf of Nutmeg in February 2012, well before the court granted Weiss's motion. It is this notice of conversion that plaintiffs challenge. Therefore, because Weiss did not act pursuant to a court order in issuing the notice of conversion, she is not entitled to quasi-judicial immunity for her conduct in this instance. *See Coleman*, 695 F.3d at 653–54.

### C. Willful and Deliberate Breach of Fiduciary Duty

Defendants assert that the remaining counts must be dismissed because plaintiffs have not alleged that Weiss and Barnes & Thornburg willfully and deliberately breached their fiduciary duties. A receiver "may be held personally liable only for a willful and deliberate violation of his fiduciary duties."[12] *In re Chi. Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985) (citations omitted); *see also Maxwell* v. *KPMG LLP*, No. 07-2819, 2008 WL 6140730, at *4 (7th Cir. Aug. 19, 2008) (citations omitted); *Nutmeg Grp., LLC*, 2011 WL 5042092, at *4 (noting that "receivers are personally liable only for acts outside the scope of their authority or willful and

---

[12] There is no dispute that this standard also applies to Barnes & Thornburg, court-approved counsel for the receiver. *See In re McKenzie*, 716 F.3d 404, 411 (6th Cir. 2013) ("[A]s a matter of law, counsel for trustee . . . are the functional equivalent of a trustee, [when] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." (first and third alterations in original) (citations omitted) (internal quotation marks omitted)); *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr. N.D. Ill. 2000) (applying willful and deliberate standard to trustee's counsel).

deliberate violations of fiduciary duties" (citations omitted)).  The parties devote substantial

portions of their briefs to arguing over the precise meaning of "willful and deliberate."

Defendants contend that willful and deliberate entails specific intent to breach a fiduciary duty.

Plaintiffs argue that only general intent to perform an act that leads to injury is required to hold a

receiver personally liable.  The court first clarifies the meaning of the standard before turning to

whether plaintiffs have satisfied it.

### 1.       The Willful and Deliberate Standard

The willful and deliberate standard finds its origin in the Supreme Court's decision in

*Mosser* v. *Darrow*, 341 U.S. 267, 71 S. Ct. 680, 95 L. Ed. 927 (1951).  There, the Court

considered the personal liability of a reorganization trustee who "permitted key employees to

profit from trading in securities of the debtors' subsidiaries."  *Id.* at 268.  In finding the trustee

personally liable, the Court explained,

> We see no room for the operation of the principles of negligence in
> a case in which conduct has been knowingly authorized.  This is
> not the case of a trustee betrayed by those he had grounds to
> believe were trustworthy, for these employees did exactly what it
> was agreed by the trustee that they should do. . . . The liability
> here is not created by a failure to detect defalcations . . . but is a
> case of a willful and deliberate setting up of an interest in
> employees adverse to that of the trust.

*Id.* at 272.  Following *Mosser*, a circuit split developed on the question of the proper standard of

care to which a trustee or receiver should be held.  *Compare Ford Motor Credit Corp.* v.

*Weaver*, 680 F.2d 451, 462 (6th Cir. 1982) (willful and deliberate), *and Sherr* v. *Winkler*, 552

F.2d 1367, 1375 (10th Cir. 1977) (same), *with In re Smyth*, 207 F.3d 758, 762 (5th Cir. 2000)

(gross negligence), *and In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir. 1983)

(negligence).  As noted above, the Seventh Circuit has adopted the willful and deliberate

standard; thus, in this circuit, a trustee or receiver "may be held personally liable only for a

willful and deliberate violation of his fiduciary duties." *In re Chi. Pac. Corp.*, 773 F.2d at 915 (citations omitted). For the reasons stated below, the court interprets this standard to mean that a receiver must intend to breach her fiduciary duties for personal liability to attach.

First, the words "willful and deliberate" modify the word "violation" in the standard. In *Kawaauhau* v. *Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), the Supreme Court interpreted the phrase "willful and malicious injury" found in section 523(a)(6) of the Bankruptcy Code, which precludes discharge of a debt "for willful and malicious injury by the debtor to another." *Id.* at 59 (citation omitted). The Court explained that the word "willful" modified the word "injury," thus "indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61 (emphasis in original). Had Congress intended "to exempt debts resulting from unintentionally inflicted injuries," the Court reasoned, "it might have described instead 'willful acts that cause injury.'" *Id.* Similarly here, the phrase "willful and deliberate" modifies "violation," indicating that personal liability requires a willful and deliberate *violation* of a receiver's duties, rather than a willful and deliberate *act* that results in harm.

Second, interpreting "willful and deliberate violation" in this manner complies with other courts' characterization of the Seventh Circuit's standard as "intentional." *See, e.g.¸ In re Smyth*, 207 F.3d at 761 ("A number of Circuit Courts of Appeals have adopted the *intentional* and deliberate standard." (emphasis added) (citations omitted)); *In re Cochise*, 703 F.2d at 1357 n.26 (We reject the approach . . . that a bankruptcy or reorganization trustee may be held personally liable for damages only for injuries arising from *intentional*—as opposed to negligent— conduct." (emphasis added) (citations omitted)); *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr. N.D. Ill. 2000) (noting that injured parties can "recover from the trustee *when the*

*trustee intentionally acts in clear contravention of duty*" (emphasis added)); *see also In re San Juan Hotel Corp.*, 847 F.2d 931, 937 n.5 (1st Cir. 1988) (declining to "reach the issue of whether negligent acts also give rise to personal liability" because "the district court . . . found that [the trustee] acted *intentionally*" (emphasis added)).  Further, in *In re Smyth*, the Fifth Circuit rejected the willful and deliberate standard and adopted a gross negligence approach, which it defined as "[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences." *In re Smyth*, 207 F. 3d at 762 (citation omitted) (internal quotation marks omitted).  Had the Fifth Circuit interpreted this circuit's standard as only requiring an intentional act, it is unlikely that it would have rejected the "willful and deliberate" approach and adopted a substantially similar standard.

Finally, interpreting "willful and deliberate" to require an intentional violation of a receiver's fiduciary duties is consistent with the purpose behind the immunity standard. Receivers, like bankruptcy trustees, provide valuable work for the court that appointed them.  If a receiver "is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded," and it may be harder "to find competent people to appoint" as receivers.  *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). "Thus, the use of a stringent standard, the willful and deliberate breach requirement, strikes an appropriate balance limiting the occasions in which a trustee may be personally liable, but allowing injured parties to recover from the trustee when the trustee intentionally acts in clear contravention of duty."  *In re Kids Creek*, 248 B.R. at 560.

### 2. Legal Malpractice Claims Against Weiss and Barnes & Thornburg

The amended complaint brings ten claims against Weiss and eleven claims against Barnes & Thornburg for legal malpractice.[13] These claims must be dismissed because they do not satisfy the willful and deliberate standard. Legal malpractice claims are negligence actions. *See Goldfine* v. *Barack, Ferrazzano, Kirschbaum & Perlman*, 18 N.E.3d 884, 891, 2014 IL 116362, 385 Ill. Dec. 339 (2014) ("The basis of the legal malpractice claim is that the plaintiff would have been compensated for an injury caused by a third party, absent negligence on the part of the plaintiff's attorney." (citations omitted)). As such, plaintiffs' legal malpractice claims, by their very nature, cannot constitute claims for willful and deliberate breach of fiduciary duty. *Cf. Dahlin* v. *Jenner & Block, L.L.C.*, No. 01 C 1725, 2001 WL 855419, at *8 (N.D. Ill. July 26, 2001) ("In general, malpractice is a negligence theory of recovery, and after an exhaustive search of Illinois law this court could find no cases involving a cause of action for intentional legal malpractice."). The court, therefore, will dismiss all legal malpractice claims against Weiss and Barnes & Thornburg.[14]

### 3. Breach of Fiduciary Duty Claims Against Weiss and Barnes & Thornburg

#### i. Count IV

As noted above, plaintiffs assert in Count IV that Weiss breached her fiduciary duties in paying Crowe fees in excess of the court-approved fee cap without prior approval. Defendants

---

[13] Although count IX raises a claim for malpractice against Barnes & Thornburg, it does not appear to plead a claim for malpractice against Weiss. As discussed above, the legal malpractice claims against both Weiss and Barnes & Thornburg in count XXI have already been dismissed.

[14] The legal malpractice claims against Weiss also fail because plaintiffs have failed to show that an attorney-client relationship existed between Weiss and the Funds. (*See* dkt. 13-1 Exh. A ¶ A ("The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.")). Further, because the legal malpractice claims are dismissed, defendants' request to strike plaintiffs' prayer for punitive damages in connection with their malpractice claims is denied as moot.

assert that even if one assumes that Weiss was not authorized to make payments to Crowe in excess of the fee cap, such conduct could not have been willful and deliberate because Weiss disclosed all payments to the court in the SEC action and held a good faith belief that the court's approval was unnecessary. Determining whether Weiss held this good faith belief, however, is inappropriate at this stage of the litigation. And while Weiss's willingness to file a fee estimate on the court's docket is some evidence that Weiss did not intentionally exceed the fee cap without court approval, such circumstantial evidence does not defeat plaintiffs' claim on a motion to dismiss. Taking the facts in the amended complaint as true, Weiss intentionally violated the court-imposed cap in making additional payments to Crowe.

### ii. Counts V–IX, XI, XII, XIII, XV, XVI, and XVII

In counts V–IX, XI, XII, XIII, XV, XVI, and XVII, plaintiffs allege that Weiss breached her fiduciary duties in failing to pursue opportunities beneficial to the Funds, despite the fact that Goulding had explicitly notified Weiss of these profitable possibilities. For example, with regard to Count V, Goulding allegedly notified Weiss that two of the Funds held enforceable judgments against RMD Entertainment. Despite this express notification, plaintiffs allege that Weiss willfully and deliberately breached her duties by declining to collect on the judgment or otherwise settle the case. Similarly, with regard to Count VII, plaintiffs allege that Weiss breached her fiduciary duties in failing to pursue a Fund's claims against Sanswire Corp. Goulding allegedly notified Weiss of this opportunity in a letter. Counts VI, VIII, IX, XI, XII, XIII, XV, XVI and XVII contain similar allegations.

Taking the facts in the amended complaint as true and drawing all inferences in plaintiffs' favor, plaintiffs have adequately alleged that Weiss intentionally breached her fiduciary duties with respect to these counts. Indeed, plaintiffs' allegations indicate that Weiss intentionally

declined to pursue advantageous opportunities. While it may be that plaintiffs will be unable to prove that Weiss's rejection of Goulding's suggestions was anything more than a good faith exercise of her business judgment, the court cannot say at this stage that plaintiffs' allegations fail to state a claim.

### iii.    Counts X, XIV, and XVIII

Plaintiffs allege in counts X, XIV, and XVIII that Weiss breached her fiduciary duties in failing to pursue certain litigation and in filing a time-barred lawsuit. Defendants maintain that Weiss's conduct was not willful and deliberate because she was entitled to exercise her business judgment in deciding which lawsuits to pursue. Plaintiffs' allegations plausibly suggest, however, that Weiss intentionally breached her fiduciary duties to the Funds. With regard to counts X and XIV, the facts contained in the amended complaint indicate that while Weiss knew that pursuing certain claims was in the best interest of the Funds, she intentionally declined to do so. Similarly, with regard to count XVIII, plaintiffs adequately allege that Weiss knowingly decided to pursue a frivolous lawsuit that was barred by the applicable statute of limitations. The facts alleged in the amended complaint are sufficient to state a claim at this stage.

### iv.    Count XIX

Count XIX alleges that Weiss and Barnes & Thornburg violated their fiduciary duties and wasted the Funds' assets by filing a rule to show cause against Goulding to force him to provide certain documents that Weiss already had in her possession. Defendants point to the court's February 12, 2013 order in the SEC action and assert that plaintiffs' allegations support, at most, a claim for negligence. In that order, the court denied Goulding's motion for sanctions against Weiss and found that while Weiss had been in possession of the documents she sought from Goulding, there was "no evidence of an intentional fraud, concealment or conspiracy here."

(Dkt. 30-1 at 2.)  That order, however, resolved a motion for sanctions and is in no way determinative of this court's resolution of defendants' motion to dismiss.  Indeed, the issue at this stage of the litigation is not whether Weiss and Barnes & Thornburg in fact knew that Weiss had possession of the documents in question but, instead, is whether plaintiffs have adequately alleged that this is the case.  Taking the facts alleged in the amended complaint as true and drawing all inferences in plaintiffs' favor, plaintiffs have plausibly alleged that Weiss and Barnes & Thornburg intentionally violated their fiduciary duties.

### v. Count XX

Count XX alleges that Weiss breached her duties by converting debentures owned by Nutmeg while declining to convert debentures owned by the Funds.  Defendants argue that plaintiffs merely disagree with Weiss's business decision, but at this stage, plaintiffs have adequately alleged that Weiss intentionally usurped an advantageous opportunity available to the Funds in violation of her fiduciary duties.

## II. Additional Arguments

### A. Causation and Damages as to Counts XV and XX

Counts XV and XX bring claims for breach of fiduciary duty against Weiss.[15]  To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) that the breach proximately caused the injury of which the plaintiff complains.  *Neade* v. *Portes*, 739 N.E. 2d 496, 502, 193 Ill. 2d 433, 250 Ill. Dec. 733 (2000) (citations omitted).  Defendants assert that plaintiffs have failed to adequately plead causation and damages with respect to counts XV and XX.

---

[15] Count XV also brings a claim for breach of fiduciary duty against Nutmeg, but all claims against Nutmeg have been dismissed.

Count XV alleges that Weiss breached her fiduciary duties when she failed to respond to an objection by the SEC to a reorganization plan proposed by Nutmeg and other creditors of Tropical Beverage, Inc. (subsequently renamed Vivicells). Defendants assert that plaintiffs have not pleaded causation and support their argument by pointing to plaintiffs' allegation that had Weiss responded to the SEC, "[I]t is likely that a plan of reorganization that benefitted Mercury and Tropical would have been achieved." (Compl. ¶ 256; dkt. 13 at 16.) According to defendants, "likely" is not enough. But defendants ignore plaintiffs' additional allegations regarding causation. Plaintiffs allege that "a compromise and satisfaction of the SEC objection would have been achieved" if Weiss had responded to the SEC's objection and that "a reorganization beneficial to Mercury Fund and Michael Fund would have" occurred if Weiss had "actively pursued a plan of reorganization in the Vivicells bankruptcy." (Compl. ¶¶ 428–29.) Moreover, plaintiffs explain that Weiss could have addressed the SEC's concerns because (1) the SEC had tentatively approved the plan of reorganization, (2) the SEC's original concerns already had been addressed, and (3) Nutmeg could have agreed to receive fewer shares to improve the terms of the plan. (*Id.* ¶ 254.) Plaintiffs' allegations move their theory of causation "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570; *see also Flint* v. *Belvidere*, No. 11 C 50255, 2012 WL 470113, at *4 (N.D. Ill. Feb. 13, 2012).

With respect to count XX, defendants contend that plaintiffs have not alleged that Nutmeg realized any benefit from Weiss's attempt to convert Gold Coast stock. Defendants, however, misinterpret plaintiffs' causation allegations, which are not based on any benefit derived by Nutmeg. Instead, plaintiffs' theory of causation is that Weiss's decision to convert Nutmeg's debentures into Gold Coast stock prevented the Funds from doing the same, thus causing an injury to the Funds. Plaintiffs explain that because the Funds and Nutmeg are

affiliated entities, legal and regulatory restrictions limit the amount of Gold Coast stock the Funds and Nutmeg can hold at one time. (Compl. ¶ 281.) Therefore, Weiss's decision to convert Nutmeg's debentures caused a detriment to the Funds because the Funds could not convert their debentures into Gold Coast stock. And while Gold Coast ultimately did not honor Nutmeg's conversion notice, Weiss still deprived the Funds of the right to obtain a potentially enforceable conversion notice for a certain amount of stock. As with count XV, plaintiffs' causation theory is plausible and is sufficiently pled. *See Twombly*, 550 U.S. at 570.

### B. Barnes & Thornburg's Liability Under *Respondeat Superior* and for Aiding and Abetting Weiss's Breaches of Fiduciary Duty

In count XXI, plaintiffs allege that Barnes & Thornburg is vicariously liable for Weiss's breaches of fiduciary duty under the doctrine of *respondeat superior*[16] and that Barnes & Thornburg aided and abetted Weiss's breaches of duty.

#### 1. *Respondeat Superior*

Under the doctrine of *respondeat superior*, "an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment," and an employer's vicarious liability under the doctrine extends "to the negligent, willful, malicious or even criminal acts of its employees." *Adames* v. *Sheahan*, 909 N.E.2d 742, 733, 233 Ill. 2d 276, 330 Ill. Dec. 720 (2009) (citation omitted). Defendants assert that Barnes & Thornburg cannot be vicariously liable for Weiss's conduct because Weiss's role as receiver meant that she was not acting as a Barnes & Thornburg employee. The court agrees. The appointment order provides, "The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order." (Dkt. 13-1 ¶ A.) Thus, when acting as receiver, Weiss acted solely as an agent of the court and therefore necessarily outside the scope of her employment with

---

[16] Plaintiffs also allege that Barnes & Thornburg is vicariously liable for Weiss's legal malpractice, but, as discussed above, plaintiffs' legal malpractice claims against Weiss are dismissed.

Barnes & Thornburg.  Accordingly, Barnes & Thornburg cannot be held vicariously liable under *respondeat superior* for Weiss's conduct.[17]

## 2.    Aiding and Abetting

To state a claim for aiding and abetting liability under Illinois law, a plaintiff must allege that "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation."  *Heffernan* v. *Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citing *Thorwood, Inc.* v. *Jenner & Block*, 799 N.E.2d 756, 767, 344 Ill. App. 3d 15, 278 Ill. Dec. 891 (2003)).  Defendants argue that Barnes & Thornburg cannot be liable for aiding and abetting Weiss's breaches of fiduciary duty because, as a matter of Illinois law, an attorney cannot aid and abet her client.  Plaintiffs do not address this argument in their response brief. Plaintiffs' failure to offer any opposition constitutes waiver, and the claims against Barnes & Thornburg for aiding and abetting liability are dismissed.[18]  *See Wojtas* v. *Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Hare* v. *Cnty. of Kane*, No. 14 C 1851, 2014 WL 7213198, at *4 (N.D. Ill. Dec. 15, 2014).[19]

---

[17] Plaintiffs make a fleeting argument in their response brief that Barnes & Thornburg is also vicariously liable for Weiss's conduct because Weiss is a principal of the firm.  (Dkt. 22 at 25–26.)  But as the case plaintiffs cite indicates, Barnes & Thornburg cannot be vicariously liable on this basis because Weiss was acting as receiver and not in the course of the firm's business.  *See Davis* v. *Loftus*, 778 N.E.2d 1144, 1151, 334 Ill. App. 3d 761, 268 Ill. Dec. 522 (2002) ("Section 13 of the Uniform Partnership Act . . . provides that a partnership is liable for any wrongful act of any partner acting in the course of partnership business.").

[18] Even if plaintiffs had addressed this argument in their response, it is unlikely that their allegations would state a claim.  The Illinois Supreme Court has not addressed whether an attorney can aid and abet her client, but given the Illinois Supreme Court's determination that there can be no conspiracy between an agent and its principal, *Buckner* v. *Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571, 182 Ill. 2d 12, 230 Ill. Dec. 596 (1998), and the longstanding rule that an attorney is a client's agent, *Doyle* v. *Shlensky*, 458 N.E.2d 1120, 1131, 120 Ill. App. 3d 807, 76 Ill. Dec. 466 (1983), it seems likely that the Illinois Supreme Court would construe Illinois law as precluding the imposition of aiding and abetting liability on an attorney for assisting her client in the commission of unlawful conduct.

## CONLCUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss the amended complaint (dkt. 11) is granted in part and denied in part.  Counts II, III, and XXI are dismissed with prejudice. All claims against Nutmeg are dismissed without prejudice, and all legal malpractice claims against Weiss and Barnes & Thornburg are dismissed with prejudice.  All claims against Barnes & Thornburg for aiding and abetting or vicarious liability are also dismissed with prejudice. Defendants' request to strike plaintiffs' claims for punitive damages is denied as moot.  The remaining claims in this suit are the breach of fiduciary duty claims against Weiss contained in counts IV–XX and the breach of fiduciary duty claim against Barnes & Thornburg contained in count XIX.

Date:   June 10, 2015

_____

U.S. District Judge Joan H. Lefkow

---

[19] The portions of all other claims alleging aiding and abetting or vicarious liability against Barnes & Thornburg are also dismissed.