IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ALONSO et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12 C 7373 |
| LESLIE J. WEISS et al., ) | |
| _____ ) | |
| ) | |
| RANDALL S. GOULDING, ) | Judge Joan H. Lefkow |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LESLIE J. WEISS, BARNES & ) | |
| THORNBURG, LLP et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiffs, limited partners in one or more investment funds (collectively, the Funds), filed suit individually and derivatively against (1) the Funds; (2) the Nutmeg Group, LLC (Nutmeg), the manager of the Funds; (3) Leslie J. Weiss, the court-appointed receiver for Nutmeg and the Funds; and (4) Barnes & Thornburg, LLP, the law firm retained by the receiver to perform legal services. In a twenty-one count amended complaint, plaintiffs allege, among other things, that Weiss, Barnes & Thornburg, and Nutmeg breached their fiduciary duties and committed legal malpractice. Discovery has closed. Before the court is plaintiffs' motion for summary judgment with respect to defendants' fourth, fifth, and sixth affirmative defenses.[1] For

---

[1] The motion is filed on behalf of the *Alonso* plaintiffs but not on behalf of Randall Goulding. (Dkt. 100 at n. 1.) Goulding is the pro se plaintiff in a related action, *Goulding* v. *Weiss, et al.*, No. 15 C 4693, which has been consolidated with this case. (*See* dkt. 60.)

1

the following reasons, their motion (dkt. 99) is granted in part and denied in part.

## BACKGROUND[2]

On August 6, 2009, the court appointed Leslie J. Weiss to be the equity receiver for Nutmeg in *SEC* v. *The Nutmeg Group, LLC, et al.*, No. 09 C 1775. (Dkt. 124-2 at 5–14.) In doing so, the court ordered, "The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order." (*Id.* at 5.) The order set out the receiver's numerous powers and duties. (*Id.* at 5–10.) Of importance here, the order directed Weiss to file with the court, in regular intervals, reports of her acts and transactions in her capacity as receiver. (*Id.* at 10.)

During the course of her receivership, Weiss filed numerous reports with the court explaining to some extent what she had done, what she was doing, what she was planning to do, and her reasons for doing so. (*See* dkts. 124-2–124-11.) A copy of each of these reports was sent to and received by plaintiffs. (Dkt. 124-11 at 31–37.) The first indication of any qualms plaintiffs may have had regarding Weiss's actions appeared on December 9, 2009, when Goulding's former administrative assistant, herself an investor in Nutmeg, appeared at a hearing to express concern about the receivership. (Dkt. 124-12 at 41.) At that time, Judge Hibbler[3] in open court explained to the investor that "if there are materials that you believe it is important that the Court both hear and consider, there are certain alternatives available to you." (*Id.*) The investor was

---

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

[3] The case was originally assigned to Judge William J. Hibbler, who died in March 2012, after which the case was reassigned to the undersigned judge.

advised to either retain counsel or visit the pro se desk at the courthouse to inquire about filing a motion in order to intervene in some fashion. (*Id.*) Although the investor indicated that she intended to do so, neither she nor any other investor ever followed the court's suggestion as to how they could be heard pertaining to the receivership. (Dkt. 124-13 at 55–169.)

On September 14, 2012, plaintiffs filed their original complaint and on September 26, 2013 an amended complaint. (*Id.* ¶ 11.) On June 10, 2015, the court granted in part and denied in part defendants' motion to dismiss. (Dkt. 55.) The court held that only claims alleging breach of fiduciary duty against Weiss were sufficiently pleaded and explained that only "willful and deliberate" breaches of fiduciary duty by a receiver are actionable. (*Id.* at 13.)

Weiss filed an answer on August 14, 2015, in which she asserted numerous affirmative defenses. (Dkt. 70.) The affirmative defenses at issue here are the fourth, fifth, and sixth. The fourth affirmative defense alleges:

> The Amended Complaint is barred, in whole or in part, by the doctrines of waiver, ratification, and/or acquiescence. Among other things, Ms. Weiss disclosed all the decisions that are now being challenged in one or more of her reports to the court in connection with her role as Receiver, and none of the Plaintiffs objected.

(*Id.* at 154.) The fifth affirmative defense alleges:

> The Amended Complaint is barred, in whole or in part, by the doctrine of laches. Among other things, Ms. Weiss disclosed all the decisions that are now being challenged in one or more of her reports to the court in connection with her role as Receiver, and none of the Plaintiffs objected. Defendants have been prejudiced by Plaintiffs' failure to act due to, among other things, the passage of time and the death of Judge Hibbler.

(*Id.* at 154–55.) The sixth affirmative defense alleges:

> The Amended Complaint is barred in whole or in part by the doctrines of contributory negligence and assumption of risk. Among other things, Plaintiffs knew or should have known that Mr. Goulding was a convicted felon at the time they invested with him, that many of Mr. Goulding's investments were illegitimate, and that Mr. Goulding vastly overvalued their investments. Yet, they failed to take any action to protect themselves.

(*Id.* at 155.)

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

**I.     The Sixth Affirmative Defense Alleging Contributory Negligence**

Plaintiffs argue that, since the surviving claims in this case involve "willful and deliberate" breaches of a fiduciary duty, any contributory negligence on their part is irrelevant as

a matter of law. (Dkt. 100 at 4.) Plaintiffs cite *Brewer* v. *United States*, 864 F. Supp. 741, 746 (N.D. Ill. 1994), where the court found that contributory negligence is not a defense to willful conduct. Because the court agrees and defendant has failed to respond to plaintiffs' motion as it relates to defendant's sixth affirmative defense, plaintiffs are entitled to summary judgment. Accordingly, the defendant's sixth affirmative defense is dismissed.

## II. The Fifth Affirmative Defense Alleging Laches

"Laches is an equitable doctrine that precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party." *Mo.* v. *Hergan*, 2012 IL App (1st) 113179 ¶ 35. Unlike statutes of limitations, which are based on the passage of time, laches is based "upon changes of conditions or relationships." *Miller* v. *City of Indianapolis*, 281 F. 3d 648, 653 (7th Cir. 2002). Thus, there must be both a lack of diligence by the plaintiffs and prejudice to the defendants. *Id.* "The plaintiffs bear the burden of explaining their delay in bringing suit." *Id.*

Plaintiffs contend that Weiss's laches defense is legally deficient because (1) laches is not a defense to a legal claim, (2) the delay was too short for laches to apply, and (3) Weiss failed to plead prejudice. (Dkt. 100 at 5–6.)

### A. Whether Laches Is An Applicable Defense

Plaintiffs' remaining claims (counts IV–XX) seek only monetary relief. Plaintiffs contend that because breach of fiduciary duty is a legal claim, rather than an equitable claim, Weiss cannot assert laches as a defense. (Dkt. 100 at 5 (citing *Jefferson Nat'l Bank of Miami Beach* v. *Cent. Nat'l Bank of Chi.*, 700 F. 2d 1143 (7th Cir. 1983)).) Although traditionally, in Illinois, laches applied to purely equitable claims and statutes of limitations to legal claims, "such 'mechanical' applications are no longer followed." *Bill* v. *Bd. of Educ. of Cicero Sch. Dist. 99*,

812 N.E.2d 604, 612, 351 Ill. App. 3d 47, 285 Ill. Dec. 784 (2004). Further, plaintiffs' citation to *Jefferson* is outdated, as Illinois courts and the Seventh Circuit have since recognized breach of fiduciary duty as an equitable action. *See Wolinksy* v. *Kadison*, 2013 IL App (1st) 111186 ¶ 109 (citing *Bank One, N.A.* v. *Borse*, 812 N.E. 2d 1021, 1026–27, 351 Ill. App. 3d 482, 286 Ill. Dec. 6 (2004) (citing cases)); *Tr. of Operative Plasterers' & Cement Masons' Local Union Officers & Emps. Pension Fund* v. *Journeymen Plasterers' Protective & Benev. Soc., Local Union No. 5.*, 794 F. 2d 1217, 1220 (7th Cir. 1986) (finding that because a common law claim for breach of fiduciary duty is equitable in nature, it is subject to the doctrine of laches); s*ee also Szymanski* v. *Glen of South Barrington Property Owners Association*, 689 N.E. 2d 272, 274, 293 Ill. App. 3d 911, 228 Ill. Dec. 400 (1st Dist. 1997) (affirming the trial court's application of the doctrine of laches to a claim for damages based on breach of fiduciary duty); *Conservancy* v. *Wilder Corp. of Delaware*, 2009 WL 1492177 at *11 (noting that *Szymanski*, which applied the doctrine of laches, involved quasi-equitable claims of breach of fiduciary duty). Additionally, plaintiffs' citations to cases that involve breach of contract claims, *Maksym* v. *Loesch*, 937 F.2d 1237, 1239 (7th Cir. 1991); *Nature Conservancy* v. *Wilder Corp. of Delaware*, 656 F.3d 646, 647 (7th Cir. 2011); *Primus Fin. Servs.* v. *Walters*, 2015 IL App 151054 ¶¶ 1, 3, are inapposite to the breach of fiduciary duty claims alleged here.

Therefore, plaintiffs' argument that laches cannot be applied where only monetary relief is sought is rejected.

**B.    Laches Applied**

Plaintiffs alternatively argue that, even if the doctrine applies, Weiss cannot establish laches where (1) a delay of twenty-five months has never before triggered the application of laches and (2) Weiss was not prejudiced by this delay. (Dkt. 100 at 9–10.)  The defense of laches

requires a showing of (1) "lack of due diligence by the party asserting the claim," resulting in an unreasonable delay and (2) "prejudice to the opposing party." *W. Bend Mut. Ins. Co.* v. *Procaccio Painting & Drywall Co.*, 794 F.3d 666, 678 (7th Cir. 2015) (quoting *Van Milligan* v. *Bd. of Fire & Police Comm'rs*, 630 N.E. 2d 830, 833, 158 Ill. 2d 85, 196 Ill. Dec. 665 (1994)). To demonstrate an unreasonable delay, the facts must establish that plaintiff failed to seek redress promptly after having knowledge upon which the claim is based. *Lozman* v. *Putnam*, 884 N.E. 2d 756, 770, 379 Ill. App. 3d 807, 318 Ill. Dec. 788 (2008). "There are no mechanical rules to determine if the length of delay was unreasonable. Rather, the reasonableness of any delay depends upon the circumstances of each case." *Id.* Under this approach, if the plaintiff fails to justify any delay in bringing the action, "the defendant must show that he was somehow harmed or prejudiced by the plaintiff's delay." *Noles* v. *Bramanti*, No. 95 C 6327, 1996 WL 526787, at *3 (N.D. Ill. Sept. 12, 1996).

Here, plaintiffs contend that they are entitled to summary judgment on the laches defense as a matter of law because no Illinois court has upheld laches based on a twenty-five-month delay. (Dkt. 100 at 6.) Weiss has identified at least one case in which a court found a six-month delay to be an unreasonable delay under the laches analysis. (Dkt. 123 (citing *Bill*, 812 N.E. 2d at 610–11).) Accordingly, the court rejects plaintiffs' argument that a two-year delay can never be an unreasonable delay under laches.[4]

With regard to prejudice, plaintiffs argue that Weiss has not pleaded prejudice stemming from plaintiffs' failure to object to her conduct. Although a motion for summary judgment is not a time to attack pleadings, Weiss did in fact plead that "Defendants have been prejudiced by

---

[4] Plaintiffs separately address whether they had the requisite knowledge of their right to object in order to start the clock on the due diligence requirement under the first element of laches. (*See* dkt. 100 at 9–15.) Because plaintiffs conflate their discussion of adequate notice (knowledge) for the fourth and fifth affirmative defenses, the court too will separately address the notice requirement in section IV *infra*.

7

Plaintiffs' failure to act due to, among other things, the passage of time and the death of Judge Hibbler." (Dkt. 70 at 155.) As stated above, had plaintiffs filed their suit earlier, or at minimum objected to Weiss's proposed actions in her regular reports to the court, Weiss would have been in a position to address the objections and possibly change her proposed plan to avoid any damages claims by plaintiffs. Similar to the facts in *Szymanski*, where delay in filing suit barred a claim for damages resulting from continued construction of a home alleged to be in breach of a restrictive covenant, Weiss has sufficiently pleaded that plaintiffs' failure to take action, by objecting to her proposed actions earlier, has prejudiced her.

Accordingly, summary judgment on the defense of laches is denied.

### III. The Fourth Affirmative Defense Alleging Waiver and Ratification

Plaintiffs argue that the fourth affirmative defense, alleging that the amended complaint is barred by the doctrines of waiver, ratification, and/or acquiescence, must be dismissed as a matter of law. (Dkt. 100 at 6.)

#### A. Waiver

Waiver is defined by Illinois law as "the intentional relinquishment of a known right." *Ryder* v. *Bank of Hickory Hills*, 585 N.E.2d 46, 49, 146 Ill.2d 98, 165 Ill. Dec. 650 (1991). A waiver may be express or it may be "implied from the conduct of the party who is alleged to have waived a right." *Id.* Here, Weiss argues that plaintiffs implicitly waived their claims because they failed to object to Weiss's court-ordered filings disclosing her decisions with regard to the funds she planned to pursue in the *Nutmeg* litigation.

An implied waiver must be proved by "a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* The implied waiver inquiry is factual. *Corbett* v. *DRH Cambridge Homes, Inc.*, No. 04 C 3344, 2005 WL 1838456, at *2 (N.D. Ill. July 26, 2005).

8

If there is no dispute as to the material facts which underlie a claim of waiver, then the determination of what facts constitute a waiver is a question of law. *Holson Inv. Co.* v. *Villelli*, No. 97 C 988, 1998 WL 312107, at *7 (N.D. Ill. June 3, 1998) (citing Illinois court cases). The essential question is whether, based on the circumstances, "a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *F.D.I.C., ex rel. Ravenswood Bank* v. *Republic Title Co.*, No. 10 C 6242, 2011 WL 1526817, at *2 (N.D. Ill. Apr. 20, 2011) (quoting *Ryder*, 585 N.E.2d at 49). Inaction alone will not suffice. *Id.*

Plaintiffs argue that they could not have waived their claims because Weiss's reports filed with the court, which were forwarded to plaintiffs, never set forth any deadline for plaintiffs' objections, or stated when Weiss intended to take action.[5] Weiss responds that the plaintiffs had implied deadlines to raise objections because she "generally disclosed what she intended to do and when she intended to do it." (Dkt. 123 at 8.) She argues that in order for plaintiffs' objections to be timely and not waived they had to raise them before she acted. (*Id.*) Weiss's reports used broad language, such as "I am investigating" or "trying to negotiate" without indicating that if nothing results within a certain time frame, she will no longer pursue certain funds or she will settle rather than take other actions, or other consequences that will result on or around a certain date. At other times, the reports merely indicate what she has already done, even though there was no disclosure prior to her action.

Being reports to the court, Weiss was not in a position to set deadlines for objections and certainly plaintiffs had notice and could have advised the court of their objections but did not. At

---

[5] Plaintiffs, in a separate section of their brief, alternatively argue that neither Weiss's reports to the court in the *Nutmeg* litigation nor the letters which forward those reports to the plaintiffs establish that Weiss has satisfied the disclosure requirement because she did not provide "full and fair disclosure[s]" as required. The court, however, need not reach the issue since the defense is dismissed on other grounds.

9

the same time, the court cannot infer intentional waiver of plaintiff's known rights based on receipt of the reports. *See F.D.I.C.*, 2011 WL 1526817, at *3 (holding that the passage of time shorter than the statute of limitations alone is not sufficient evidence of waiver). Therefore, the court grants plaintiffs motion for summary judgment on the fourth affirmative defense to the extent it argues the doctrine of waiver.

B.  **Ratification and Acquiescence**

Plaintiffs move for summary judgment with respect to Weiss's affirmative defense of ratification and acquiescence arguing that Weiss cannot establish ratification because (1) she was not prejudiced; (2) implied ratification can only be inferred from long term acquiescence; and (3) breaches of fiduciary duty may only be ratified where full disclosure exists. (Dkt. 100 at 7–8.) Weiss responds to each argument and generally argues that plaintiffs ratified Weiss's actions by remaining silent after she "disclosed all the decisions that are now being challenged in one or more of her reports to the court in connection with her role as Receiver." (Dkt. 123 at 9–10.)

Under Illinois law, only a principal can ratify her agent's actions. *Amcore Bank, N.A.* v. *Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 185–86, 326 Ill. App. 3d 126, 259 Ill. Dec. 694 (2001). As is undisputed here, the receiver is solely the agent of the court. (*See* Dkt. 124 at 14 ¶ 1; dkt. 124-2, Order Appointing Receiver, at 6 ("Leslie J. Weiss of Chicago, Illinois is appointed the receiver ('Receiver') for Nutmeg. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order.").) In any event, a receiver is not an agent of the entity in receivership. *See* 16 Fletcher Cyc. Corp. § 7810 ("Although a receiver represents the interests of the corporation, a receiver is not considered an agent or representative." (citing sources)); *cf.* 27A Ill. Law and Prac. Mortgages § 218 (noting that a receiver is not an agent or representative of any party in a mortgage foreclosure proceeding).

Therefore, the court, as principal, was the only one who could ratify Weiss's actions.

Accordingly, plaintiffs are entitled to summary judgment on Weiss's affirmative defense of ratification and acquiescence.

## IV. Factual Support to Establish the Notice Requirements Under the Fourth and Fifth Affirmative Defenses

Plaintiffs next argue (as the court understands them) that the fourth and fifth affirmative defenses cannot survive as to counts IV, IX, XI, XV, XVII, and XX of their complaint because, in fact, Weiss failed to make a number of disclosures essential to making those claims. (*See* dkt. 100 at 9–10.) Since only the Fifth Defense survives, the court addresses the argument as to laches. Unlike waiver, and ratification and acquiescence, which require proof of full knowledge of the facts on which a claim relies,[6] for laches, the plaintiffs must have failed to seek prompt redress after they knew or should have known of those facts. *JPMorgan Chase Bank, N.A.* v. *Am. Nat. Bank & Trust Co. of Chi.*, 2011 IL App (2d) 100793-U, ¶ 27 (citing *Lozman*, 884 N.E.2d at 770).[7] A plaintiff "need not have actual knowledge of the specific facts upon which his claim is based if he fails to ascertain the truth through readily available channels and the circumstances are such that a reasonable person would make inquiry concerning these facts." *Lozman*, 884 N.E.2d at 770 (citing *Eckberg* v. *Benso*, 537 N.E. 2d 967, 182 Ill. App. 3d at 132, 130 Ill.

---

[6] For waiver or ratification and acquiescence to apply the plaintiffs must have had full knowledge of all material facts. *Home Indem. Co. of N.Y.* v. *Allen*, 190 F.2d 490, 491 (7th Cir. 1951) (stating that "before there can be a waiver of a right there must be *full knowledge* of the facts by the person against whom the waiver is sought and some act clearly indicating the intention to relinquish the right" (emphasis added)); *Evanston Bank* v. *Contincommodity Servs., Inc.*, 623 F. Supp. 1014, 1034 (N.D. Ill. 1985) (Under Illinois law, "ratification from silence, or 'ratification by estoppel,' will be found only when a principal, with *full knowledge* of all material facts, conducts himself in a manner inconsistent with repudiation of his agent's transaction, and a third party relies on that conduct to his detriment." (emphasis added)).

[7] As stated above, laches has two elements: (1) lack of due diligence by plaintiffs in bringing suit and (2) plaintiffs' delay prejudiced the defendant. *W. Bend Mut. Ins. Co.*, 794 F.3d at 678–79. The second element has already been addressed, *see* section II.B.

Dec. 638 (1989)). Thus, the issue is whether Weiss failed to proffer evidence that plaintiffs did in fact acquire sufficient knowledge of the underlying facts that would have supported their claims so as to trigger the start of the laches clock. [8]

**Count IV**: Plaintiffs argue that Weiss failed to disclose the $150,000 cap on the fees payable to Crowe Horwath. Weiss, however, points out that the fee cap was a matter of public record (*see* dkt. 124-12 at 96) and occurred prior to her appointment as receiver. The plaintiffs "can fairly be charged with notice and knowledge of the matters on public record." *Quasar Co., a Div. of Matsushita Elec. Corp. of Am.* v. *Atchison, Topeka and Santa Fe Ry. Co.*, 632 F. Supp. 1106, 1114 (N.D. Ill. 1986); *see also Alexander* v. *O'Neil*, No. 06 C 6045, 2007 WL 2792145, at *3 (N.D. Ill. Sept. 25, 2007) (stating that "matters of public record not only are properly considered by the court, but fall within the category of common knowledge"). A court filing is a matter of public record. *See Wiggins* v. *Ill. Bell Tele. Co.*, No. 15 C 2769, 2015 WL 6408122, at *5 n.4 (N.D. Ill. Oct. 22, 2015). Therefore, plaintiffs' motion for summary judgment as to the defense of laches as it relates to this count is denied.

**Count IX**: Plaintiffs argue that there was no disclosure whatsoever that Weiss had terminated the Inverso transaction. Weiss points out numerous references in her reports addressing the Inverso transaction and its termination. (Dkt. 124 ¶¶ 43–46.) Although her reports do not specifically identify the Inverso transaction, the Third Interim Report referenced motions by Randall Goulding, which related to the Inverso transaction and indicate that the court ruled in Weiss's favor and that the offering was abandoned. (Dkt. 124-6 at 6.) This is sufficient evidence to withstand summary judgment. In other words, a reasonable fact-finder could conclude that a

---

[8] To be clear, the plaintiffs only argue that Weiss has not proffered any evidence that plaintiffs were on sufficient notice to trigger the clock to determine whether the plaintiffs failed to act with due diligence. The plaintiffs do not argue that upon receiving notice they acted diligently. Therefore, the court focuses solely on whether Weiss has put forth evidence that plaintiffs knew or should have known of the facts on which their claims are based.

12

reasonably diligent investor, unsure of what the report was referencing, would have checked the court filings to see what Randall Goulding's motion was about, read the court's resolution of the motion, or reached out to the receiver, through the communication channels disclosed in the report, to ask for clarification. Thus, at minimum, plaintiffs were on notice of Weiss's decision to terminate the Inverso transaction by the filing of the Third Interim Report filed on February 5, 2010, but could be charged with notice as soon as the first court filing in the *Nutmeg* litigation indicating that Weiss opposed the transaction—the SEC's December 11, 2009 motion for rule to show cause (dkt. 129)—particularly where the plaintiffs are investors of the entities involved in that suit.

Because there is evidence of notice in either late 2009 or early 2010, plaintiffs' motion for summary judgment as to the defense of laches as it relates to this count is denied.

**Count XI**: Plaintiffs argue that there was no disclosure of the decision not to pursue Mercury Fund's claim against North Bay. The record reveals otherwise. In her First Interim Report, on October 8, 2009, Weiss disclosed the defaulted North Bay Resources note in the list of Nutmeg Mercury Fund LLLP's assets. (Dkt. 124-3 at 21.) In her Second Interim Report, on December 7, 2009, she disclosed, among other things, that "[a] substantial portion of the notes are in default and the majority of the issuers do not appear to be financially stable companies" (dkt. 124-5 at 9–10), and she was "attempting to determine whether the pursuit of such claims is economically justified by determining whether the persons against whom Nutmeg and the Funds have claims are sufficiently liquid and whether Nutmeg and the Funds are likely to prevail with respect to such claims." (*Id.* at 4.) In the Fourth and Fifth Interim Reports she made further disclosures of her attempts to determine whether the pursuit of claims was economically justified. (Dkt. 124-7 at 4; dkt. 124-8 at 4.) In the Eighth Interim Report, filed on January 6,

13

2011, she disclosed that "[she] believes that the cost of pursuing claims with respect to the remaining assets, other than the notes issued to certain funds by AccessKey IP and PlanGraphics, is likely to be greater than that recovery. Accordingly, the Receiver plans to focus her efforts on setting a bar date and receiving final claims from the investors." (Dkt. 124-11 at 6.) Lastly, in the Ninth Interim Report, she disclosed her pursuit of assets in litigation against AccessKey IP and PlanGraphics and that she "does not at this time intend to file additional claims." (*Id.* at 25.)

A reasonable person, upon reading the Eighth Interim Report, could have concluded that Weiss had decided not to pursue any remaining claims other than the claims against AccessKey IP and PlanGraphics, or at minimum been prompted to inquire whether Weiss was not going to pursue the claims against North Bay. Because there is evidence of notice in early 2011, plaintiffs' motion for summary judgment as to the defense of laches as it relates to this count is denied.

**Count XV**: Plaintiffs argue that there was no disclosure that Weiss had declined to reconsider the SEC's belated decision to object to the Vivicells/Tropical bankruptcy plan which it had previously approved. Weiss does not argue to the contrary. That said, plaintiffs obviously at some point became aware of the facts underlying count XV, since the claim is now before this court. Because the plaintiffs have failed to prove or even allege the dates of their discovery, the court cannot determine at this time when the clock began to run on the laches defense to this claim. Accordingly, the court will not dismiss the laches defense as to this count. *See Lozman*, 884 N.E. 2d at 770 (explaining that "[s]ince plaintiffs have failed to even allege—let alone prove—the dates of their discovery, facts uniquely within their possession, plaintiffs have failed to explain how the trial court abused its discretion in computing the time when laches should have begun to run).

**Count XVII**: Plaintiffs argue that there was no disclosure of Weiss's failure to convert any portion of the debt owed by Mike the Pike. As stated under Count XI, a reasonable person, upon reading the Eighth Interim Report, could have concluded that Weiss had decided not to pursue any remaining claims other than the claims against AccessKey IP and PlanGraphics, or at minimum could have been prompted to inquire whether Weiss was going to convert the Mike the Pike debt. Therefore, because there is evidence of notice in early 2011, plaintiffs' motion for summary judgment as to the defense of laches as it relates to this count is denied.

**Count XX**: Plaintiffs argue that there was no disclosure of the decision to convert the Gold Coast notes held by Nutmeg, rather than those held by the Funds. Weiss responds that her motion to employ contingent counsel, filed on March 2012, she clearly indicated that the purpose was to pursue the collection against Gold Coast on behalf of Nutmeg. (Dkt. 124-12 at 179–185.) In his opposition to the motion, Goulding argues that the Receiver's conversion notice is deficient because "[it] should have covered the Funds' interest and thus the investors' interest and not just Nutmeg's interest." (Dkt. 124-13 at 2.) Moreover, plaintiffs' counsel emailed the receiver and informed her that she was authorized to say that the plaintiffs fully supported her motion. (*Id*. at 42, 49.) Therefore, because there is evidence of notice in March of 2012, plaintiffs' motion for summary judgment as to the defense of laches as it relates to this count is denied.

Next, plaintiffs argue that Weiss's disclosure as to counts V, VI, VII, VIII, X, XII, XIII, XIV, XVI, XVIII and XIX were misleading or incomplete. Such arguments appear to be directed solely at the ratification defense. (See dkt. 100 at 10 (arguing with respect to these counts that "a breach of fiduciary duty can only be ratified where there is full and fair disclosure").) Because the court has already dismissed the ratification defense, these alternative arguments are moot.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment (dkt. 99) is granted as to the fourth (waiver, ratification and acquiescence) and sixth (contributory negligence) affirmative defenses. The motion is denied as to the fifth (laches) affirmative defense. The parties are ordered to appear at a status hearing set for October 18, 2016 at 11:00 a.m., at which time they should be prepared to discuss bringing this matter to resolution with all deliberate speed.

Date: September 30, 2016

_____
U.S. District Judge Joan H. Lefkow