# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ALONSO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 12 C 7373 (consolidated |
| | ) | with Case No. 15 C 4693) |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| LESLIE J. WEISS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| RANDALL S. GOULDING, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 15 C 4693 |
| | ) | |
| v. | ) | |
| | ) | |
| LESLIE J. WEISS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This case began in 2012, when a group of limited partners in one or more investment

funds (collectively, the "Funds")[1] managed by The Nutmeg Group, LLC ("Nutmeg"), filed an

individual and shareholder derivative action on behalf of the Funds against Leslie J. Weiss, the

court-appointed receiver for Nutmeg and the Funds;[2] Barnes & Thornburg LLP ("Barnes"), the

_____

[1] The Funds include Mercury Fund, Tropical Fund, Fortuna Fund, MiniFund, MiniFund II, Nanobac Fund, Patriot Fund, October 2005 Fund, Michael Fund, Adzone Fund, Startech II, Lightening Fund I, and Image Global. (Dkt. 1 ¶ 1.)

[2] Weiss was appointed receiver because of a 2009 lawsuit filed in this district by the United States Securities and Exchange Commission ("SEC") against Nutmeg; Randall Goulding, Nutmeg's managing member; and others. *See SEC* v. *Nutmeg Grp.*, LLC, No. 09 C 1775 (N.D. Ill. Mar. 23, 2009). This court takes judicial notice of the filings in the SEC action. See *Menominee Indian Tribe of Wisconsin* v. *Thompson*, 161 F.3d 449 (7th Cir. 1998) ("Judicial notice of . . . documents contained in the public record . . . is proper."). Citations to the docket in the SEC action are designated "SEC dkt." Given that the parties

law firm retained by Weiss to perform legal services;[3] Nutmeg; and the Funds. (Dkt. 1.)[4] After significant briefing on a motion to dismiss,[5] this court dismissed Count I—plaintiffs' federal claim under § 206(4) of the Investment Advisors Act of 1940 ("IAA"), 15 U.S.C. § 80b-6, and SEC Rule 206(4)-2 because it fell outside the applicable statute of limitations (dkt. 35 at 11)—as well as breach of fiduciary duty counts II and III, finding that Weiss was absolutely immune from liability on the theory that receivers who execute judicial orders are entitled to such immunity. (Dkt. 55 at 9–10.) This court also dismissed all claims against Nutmeg without prejudice, all legal malpractice claims against Weiss and Barnes with prejudice, and all claims against Barnes for aiding and abetting or vicarious liability with prejudice. (*Id.* at 24.) Defendants now move for summary judgment on all remaining counts, which include breach of fiduciary duty claims against Weiss contained in counts IV–XX and a breach of fiduciary duty claim against Barnes contained in count XIX. (Dkt. 180.)[6] For the reasons stated below, the motion is granted.

---

to this case have appended filings in the SEC action to their briefs, the court cites to its own docket when possible.

[3] Weiss is a partner at Barnes & Thornburg. (Dkt. 1 ¶ 97.)

[4] Goulding also filed a complaint against Weiss, Bares, Nutmeg, and the Funds, *see Goulding* v. *Weiss*, No. 15 C 4693 (N.D. Ill. May 28, 2015), which has been consolidated herewith (*see* dkt. 61) and is nearly identical to the complaint in the present case.

[5] Upon dismissal of plaintiffs' federal claim, this court initially dismissed the remaining state-law claims without prejudice to allow for refiling in state court. (Dkt. 35 at 12.) Plaintiffs subsequently moved to amend the judgment to allow plaintiffs to file an amended complaint, asserting a new theory of jurisdiction—that this court had jurisdiction because the proposed amended complaint (dkt. 45) was brought against a receiver appointed by the district court. (Dkt. 37.) Except for allegations relating to subject matter jurisdiction, the amended complaint is nearly identical to the original complaint. (*See* dkt. 45.) The court granted the motion and reinstated defendants' motion to dismiss for counts II–XXI of the amended complaint. (Dkt. 42.) On June 10, 2015, this court then dismissed additional claims as discussed in the body of this opinion. (Dkt. 55.)

[6] The court's jurisdiction rests on 28 U.S.C. §§ 754 and 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391(b).

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In response, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Day* v. *N. Ind. Pub. Serv. Co.*, 987 F. Supp. 1105, 1109 (N.D. Ind. 1997); *see also Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## LOCAL RULE 56.1

Unless otherwise noted, the facts set out below are taken from the parties' Local Rule 56.1 statements, and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment

stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in its opinion only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

Preparation of this opinion has been made particularly difficult by plaintiffs' counsel's failure to comply with Local Rule 56.1 in preparing and responding to statements of material facts. This court's standing order directs counsel to read *Malec* v. *Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000), and *Buttron* v. *Sheehan*, 2003 WL 21801222 (N.D. Ill. Aug. 4, 2003), which detail the oft-occurring pitfalls encountered when preparing summary judgment filings. Plaintiffs' counsel has apparently not recently reviewed *Malec* or *Buttron*, since their submissions run afoul of the helpful guidance in those cases: (1) a response to a movant's statement of facts is neither the place for argument nor additional facts that do not actually dispute the factual statement; (2) "a general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial";[7] (3) the paragraphs in a statement of facts should be short and not argumentative or conclusory; (4) paragraphs also must contain specific references that support the factual allegation, and the specific references provided should not be so voluminous that they send the court on a wild goose chase nor should they rely on inadmissible material such as hearsay; and (5) "supporting documents submitted with a motion that are not referred to in the statement of facts will be ignored." *See Malec*, 191 F.R.D. at 583–87; *Buttron*, 2003 WL 20801222, at *1–6. The motion

---

[7] The responding party cannot, for example, attempt to deny a statement of fact by claiming it does not have enough information to admit or deny the statement or that the statement is unintelligible. *See Buttron*, 2003 WL 21801222, at *6.

could likely have been granted by simply rejecting plaintiffs' Local Rule 56.1 submissions. The court has done its best, however, to winnow the facts to those supported by the record to resolve the case on the merits.

## BACKGROUND

Nutmeg—a registered investment advisor formerly managed by Randall Goulding—was the sole general partner of the Funds, which are limited partnerships under either Illinois or Minnesota law in which plaintiffs are investors. (Dkt. 201, Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Material Facts ("Pl. Resp.") ¶¶ 1, 4, 15–16.) Among other things, the Funds entered into private-investment-in-public-equity ("PIPE") transactions, providing funding to companies, some of which traded on the sub-penny market at prices less than $0.01 per share, in exchange for convertible debentures that could be converted to stock in that company. (Pl. Resp. ¶¶ 17–21.)

On March 23, 2009, the Securities and Exchange Commission ("SEC") filed suit against Nutmeg, Goulding, and others. *See SEC* v. *Nutmeg, LLC*, No. 09 C 1775 (N.D. Ill. Mar. 23, 2009). The SEC subsequently filed a motion requesting the appointment of a receiver for Nutmeg who would "review and exercise independent judgment on pending and future transactions involving the Funds' assets." (Pl. Resp. ¶ 26; Dkt. 183, Def. Ex. 22; SEC dkt. 48 ¶ 4.) The court granted the motion and entered an order appointing Weiss as receiver in August 2009 ("Appointment Order"). (Pl. Resp. ¶¶ 27–28; Dkt. 183, Def. Ex. 23; SEC dkt. 66.) The Appointment Order specified that Weiss would be "the agent of this Court and solely the agent of this Court in acting as Receiver" and would "oversee all aspects of Nutmeg's operations and business which include, but are not limited to, serving as general partner and investment advisor to" the Funds. (Dkt. 183, Def. Ex. 23 §§ II.A, II.B.1.) The Appointment Order also vested Weiss

with authority to, among other things:

- "[S]ell or liquidate any assets, property, holdings, or positions of Nutmeg and the Funds" and "monitor and approve transactions, disbursements or receipt of funds, or any other disposition relating to such funds, assets or property, and with full power to take such steps as she deems necessary to secure such premises, funds and property." (*Id.* § II.B.3.)

- "Continue and conduct the business of Nutmeg in such manner, to such extent, and for such duration as the Receiver may in the exercise of her business judgment and in good faith deem to be necessary or appropriate." (*Id.* § II.B.4.)

- "Engage and employ [Barnes], as well as other professionals ("Retained Personnel") to assist in carrying out her duties." (*Id.* § II.B.9.)

- "Take such action as necessary and appropriate to prevent the dissipation or concealment of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets." (*Id.* § II.B.10.)

- "[B]ring, defend, continue, or compromise such legal actions based on law or equity in any state, federal, or foreign court as she deems necessary or appropriate in discharging her duties as Receiver." (*Id.* § II.B.12.)

The court ordered Crowe Horwath LLP ("Crowe") to continue as the court-appointed accountant for Nutmeg and the Funds, required Weiss to file periodic reports detailing her acts and transactions in her capacity as receiver, and determined that the receiver and retained personnel were entitled to reasonable compensation and expense reimbursement from Nutmeg and the Funds' assets. (*Id.* §§ II.B.7, II.D, II.E.) Weiss and any retained personnel also received the following protection:

The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Receiver or Retained Personnel be liable to anyone (1) with respect to the performance of their duties and responsibilities as Receiver or Retained Personnel, or (2) for any actions taken or omitted by them, except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

(*Id.* § II.G.)

After being appointed receiver, Weiss began filing periodic reports with the court as required by the Appointment Order.[8] (Pl. Resp. ¶ 30.) These reports revealed that the principal assets of the estate when Weiss was appointed receiver included, among other things, convertible notes; lawsuits or judgments against borrowers who had defaulted on their notes or refused to convert notes to stocks, or both; and shells of failed borrower companies that Nutmeg or the Funds had recovered when the companies defaulted on their debt. (Pl. Resp. ¶ 32.) Weiss also found that at least some of the notes held by Nutmeg and the Funds were in default and that at least some of the issuers of the notes were not financially stable companies. (Pl. Resp. ¶ 37.) Although the parties dispute the condition of the estate's books and records, in the SEC case, the court entered partial summary judgment in the SEC's favor with respect to Nutmeg's failure to maintain proper books and records and held that Nutmeg's financial records, which consisted of a set of Excel spreadsheets and a tax return, were insufficient to meet the bookkeeping requirements of the IAA. (Pl. Resp. ¶¶ 34–35; Dkt. 183, Def. Ex. 18; SEC dkt. 795 at 21–25.)

As authorized by the Appointment Order, Weiss also retained professionals including investment advisors and lawyers to assist her in carrying out her duties. These included, among others, William Schur to act as Weiss's counsel in proposed litigation and McClendon, Morrison & Partners, LLC ("MMP"), with whom Weiss consulted frequently. (Pl. Resp. ¶ 41–42.) In general, Weiss pursued certain opportunities and declined to pursue others throughout the course of the receivership. The details of these opportunities and Weiss's decision-making process are detailed below.

---

[8] Weiss filed periodic reports with the court in the SEC case on: September 8, 2009 (dkt. 183, Def. Ex. 7); October 8, 2009 (*id.*, Def. Ex. 8); December 7, 2009 (*id.*, Def Ex. 9); February 5, 2010 (*id.*, Def. Ex. 10); April 8, 2010 (*id.*, Def. Ex. 11); June 8, 2010 (*id.*, Def. Ex. 12); August 9, 2010 (*id.*, Def. Ex. 13); October 14, 2010 (*id.*, Def. Ex. 14); January 6, 2011 (*id.*, Def. Ex. 15); and March 9, 2011 (*id.*, Def Ex. 16). (Pl. Resp. ¶ 30.)

**ANALYSIS**

I.      **Breach of Fiduciary Duty**

        A.      **Personal Liability of Receivers**

All remaining claims arise under a breach of fiduciary duty theory of liability. Under

Illinois law, recovery for breach of fiduciary duty requires proof of three elements: (1) a

fiduciary duty existed, (2) that duty was breached, and (3) the breach proximately caused

damages. *Gross* v. *Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). The parties apparently

dispute the standard to which Weiss should be held when determining whether she breached her

fiduciary duties.[9] Defendants assert that a receiver is personally liable only if she willfully and

deliberately violated her fiduciary duties. Plaintiffs seem to agree that receivers are liable for

willful and deliberate breaches of the duty of care but contend that Weiss can also be liable for

gross negligence and/or reckless disregard of her duties pursuant to Illinois and Minnesota

partnership statutes or the Appointment Order.

Because Weiss was acting in her capacity as receiver when she engaged in the conduct at

issue, state partnership statutes are inapplicable. The Appointment Order makes clear that Weiss

"shall be the agent of this Court and solely the agent of this Court in acting as Receiver." (Dkt.

183, Def. Ex. 23 § II.A.) Thus, although the Appointment Order indicates that Weiss "shall

oversee all aspects of Nutmeg's operation and business," including "serving as general partner,"

when acting as receiver (*id.* § II.B.1), Weiss could not have been an agent of Nutmeg bound by

---

[9] Defendants also contend that there is insufficient evidence to prove causation and damages, and while summary judgment could likely be granted for many of the counts on a causation/damages theory alone, the court need not reach this issue to resolve the motion for summary judgment.

state law as if she were a general partner.[10] *See SEC* v. *American Principals Holding, Inc.*, 962

F.2d 1402, 1408–09 (9th Cir. 1992) (rejecting argument that because receiver "essentially

replaced and acted as the general partner . . . the receiver is bound by state law as if he were the

general partner," and holding that receiver "was not an agent of [corporation]; he was an officer

of the court who managed the property under the authority of the court"); *accord Sahni* v.

*American Diversified Partners*, 83 F.3d 1054, 1059–60 (9th Cir. 1996) (holding that California

Corporation Code did not apply because "when the FDIC sold the [] partnerships, the FDIC was

not acting as a general partner, but rather in its capacity as receiver").[11]

Further, the court considered Section G of the Appointment Order at the motion to

dismiss stage when resolving the contours of the willful and deliberate standard. (Dkt. 55.)[12]

There, the court noted that although there is a circuit split on the question of the proper standard

of care to which a trustee or receiver should be held, in the Seventh Circuit, a receiver "may be

held personally liable only for a willful and deliberate violation of his fiduciary duties." *In re*

*Chi. Pac. Corp.*, 773 F.2d 909, 915 (7th Cir. 1985); *see also Maxwell* v. *KPMG, LLP*, No. 07-

2819, 2008 WL 6140730, at *4 (7th Cir. Aug. 19, 2008)). The court "interpret[ed] this standard

to mean that a receiver must intend to breach her fiduciary duties for personal liability to attach,"

---

[10] Weiss was made general partner as part of the court's order appointing her as receiver. (Dkt.
83, Def. Ex. 23 § II.B.I.) Thus, even if Weiss did perform acts as general partner, such acts would
logically fall under the umbrella of her receivership duties, rather than any independent general partner
duties.

[11] In a single sentence, plaintiffs seem to argue that Weiss is claiming federal instrumentality
status and immunity from state law, and that this court should therefore evaluate whether holding Weiss
to state law would tend to burden, impede, conflict with, or frustrate her lawful operation. There is no
indication Weiss claims such status and the court thus need not reach the issue.

[12] Plaintiffs do not cite any authority for the proposition that the Appointment Order should
supersede Seventh Circuit precedent, and instead rely on *Ferrell* v. *Pierce*, No. 73 C 334, 1985 WL 1334,
at *6 (N.D. Ill. May 14, 1985), a case involving a consent decree, not an appointment order.

and clarified that "personal liability requires a willful and deliberate *violation* of a receiver's duties, rather than a willful and deliberate *act* that results in harm." (Dkt. 55 at 15) (emphasis in original.) This remains the governing standard.[13] From a policy perspective, if a receiver "is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). Consequently, an injured party can only "recover from the [receiver] when the [receiver] intentionally acts in clear contravention of duty," and the receiver will not be held liable for "exercise of poor judgment." *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560–561 (Bankr. N.D. Ill. 2000).

## B.    Weiss's Intent Generally

At the outset, the parties attempt to create a framework for Weiss's intent. Defendants contend there is no reason Weiss would have intentionally breached her fiduciary duties because any fees Weiss could recover for the estate would enhance her professional reputation, potentially lead to more receivership work, and help ensure the estate had sufficient assets to cover fees awarded pursuant to her fee petitions. Plaintiffs counter that (a) Weiss's malice toward Goulding caused her to breach her fiduciary duties toward the Nutmeg investors and (b) Weiss wanted to ingratiate herself with the SEC to obtain more receivership work in the future. (Dkt. 212, Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of Material Facts) ("Def. Resp.") ¶¶ 1–18.) Neither of plaintiffs' manufactured motives finds support in the record.

---

[13] There is no dispute that this standard also applies to Barnes as court-appointed counsel for the receiver. *See In re McKenzie*, 716 F.3d 404, 411 (6th Cir. 2013) ("[A]s a matter of law, counsel of trustee . . . are the functional equivalent of a trustee, [when] they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."); *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr. N.D. Ill. 2000) (applying willful and deliberate standard to trustee's counsel).

For example, plaintiffs attempt to show Weiss's malice toward Goulding by pointing to the fact that Weiss disseminated to investors a Schedule K-1 (Form 1065) tax form, which incorrectly stated that Goulding "had been taken into custody" in connection with the SEC's case against him. (Def. Resp. ¶ 17; Dkt. 201, Pl. Ex. 1.) But plaintiffs fail to mention that Weiss relied, in good faith, on an accountant when preparing the statement and promptly sent investors an amended Schedule K-1. (Dkt. 214, Def. Ex. 136.) Further, in the SEC case, the court found that with regard to the K-1 issue, "nothing . . . indicates that the Receiver acted other than in good faith in the discharge of her fiduciary duties." *SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *4 (N.D. Ill. Oct. 19, 2011).[14] Even if plaintiffs could establish that Weiss harbored malice toward Goulding, it does not automatically follow that Weiss would intentionally breach her fiduciary duties toward the estate as a result of this alleged malice.

Plaintiffs also cite a number of general sources to support the proposition that Weiss's conduct was aimed at assisting the SEC in its dispute with Goulding. *See, e.g.*, *SEC Receivers and the Presumption of Innocence: the Problem with Parallel Proceedings in Securities Cases and the Ever Increasing Powers of the Receivers*, 11 Houst. Bus. & Tax L. J. 204, 216–17 (2011) (cited for the proposition that SEC receivers and their law firms have obtained large dollar sums in fees); Jeffrey G. Hamilton, *Clawback Claims Against Innocent Receivers: The SEC vs. the Stanford Receiver*, 28 Am. Bankr. Inst. J., October 2009, at 3 (noting that "[r]eceivers take over the task from the SEC of recovering assets for investors who have been defrauded and returning

_____

[14] In this opinion, the court also noted, "To say that Goulding has been uncooperative with the Receiver is to understate his recalcitrance. . . . Goulding's obstinacy in the underlying litigation demonstrates an animosity towards the Receiver and provides further pause to be wary of any purported claim he might raise against the Receiver, particularly in the absence of even a scintilla of evidence that the Receiver acted in bad faith." *SEC* v. *Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *4 (N.D. Ill. Oct. 19, 2011).

those assets to the investors, allowing the SEC to move on to the next case"). These sources do not relate to Weiss's intent but, rather, are a criticism of receivers in general. As to any evidence plaintiffs present that is specific to the present case, as discussed below, it fares no better.

## II. Claims Involving Weiss's Decisions to Pursue or Not Pursue Certain Opportunities (Counts V, VII, X, XI, XII, XIII, XIV, XVI, XVIII, XX)

In counts V, VII, X, XI, XII, XIII, XIV, XVI, XVIII, and XX, plaintiffs allege that Weiss breached her fiduciary duties by either failing to pursue or actively pursuing certain opportunities to the detriment of the estate. Even viewed in the light most favorable to plaintiffs, no reasonable jury could find that Weiss intentionally breached her fiduciary duties with regard to these claims; a receiver cannot be held liable for "exercise of poor judgment," *In re Kids Creek*, 248 B.R. at 559–561, and the record is devoid of evidence demonstrating that Weiss intentionally harmed the estate by choosing to pursue or not to pursue certain litigation, judgments, and claims.

### A. Litigation

Counts X and XIV allege that Weiss breached her fiduciary duties by not pursuing litigation against Nanobac Pharmaceutical, Inc. ("Nanobac") and Asia American Petroleum Corp. ("Asia American") and its principals, respectively, which was pending when she became receiver. In Nanobac, Weiss disclosed to the court in her periodic reports that she had obtained copies of the pleadings from the court files to evaluate the efficacy of the claims and at some point thereafter made a decision not to pursue them because she believed they were unlikely to be collectable and that the cost of litigation was not worth pursuing on an hourly basis. Plaintiffs' bald assertion that Weiss failed to conduct any examination before deciding not to pursue the litigation is belied by Weiss's sworn declarations and periodic reports to the court. Similarly, in Asia American, Weiss disclosed to the court that she would not pursue certain litigation given issues such as the cost of litigation, defenses raised, and the apparent financial condition of the

defendants. Here, Goulding admits that Asia American lacked sufficient assets to pay all judgments against it. Although the parties disagree about the validity of Weiss's reasons for not pursuing these claims, no reasonable jury could find that her decision was motivated by an intent to harm the estate.[15]

Count XVIII alleges that Weiss breached her fiduciary duties by pursuing litigation against Harvey Alholtz and two affiliated partnerships for the return of finders' fees Alholtz collected from Nutmeg for allegedly finding prospective investors. Plaintiffs contend that this action was untimely, meritless, and a waste of attorneys' fees. In support, they point to an email Alholtz's attorney sent Weiss explaining his view that her contemplated arguments to counter the applicable statute of limitations would not succeed. (Dkt. 201, Pl. Ex. 62.) They also claim that Weiss's "likely motive" was to ingratiate herself with the SEC, "as evidenced by the fact that the claims she filed against Alholtz are typically pursued by the SEC, rather than private plaintiffs." (Dkt. 198 at 44.) As plaintiff's counsel is surely aware, attorneys often present opposing views of legal theories and the merits of a case—that is the nature of the craft. Choosing to pursue a case despite being aware of contrary arguments could amount to "poor judgment," *In re Kids Creek*, 248 B.R. at 559–561, but does not amount to intent to harm. Neither does a "likely motive" that appears to be pure speculation without any citation to relevant record evidence.

---

[15] Plaintiffs contend that defendants have not produced litigation files for the cases associated with counts X, XIII, XIV, and XVI, and argue that this absence of production "compels the conclusion that Weiss and Barnes never took any steps to obtain these files in the first place, establishes a complete lack of diligence, and precludes Weiss obtaining summary judgment on these claims." (Dkt. 198 at 48.) Plaintiffs cite to no case law or record evidence to support this proposition. *See Buttron*, 2003 WL 20801222, at *3 ("respondents must adequately cite to the appropriate part of the record that supports their position"). Further, defendants note that pursuant to Defendants Leslie Weiss and Barnes & Thornburg LLP's Responses to the Alonso Plaintiffs' First Request for the Production of Documents, defendants agreed to "make all responsive, non-privileged hard-copy documents . . . available to Plaintiffs' counsel for inspection," but plaintiffs apparently never asked to inspect such documents. (*See* dkt. 201, Pl. Ex. 71 at 2; Dkt. 214, Def. Ex. 154 ¶¶ 3–4.) Not only does plaintiffs' contention lack support, but it is belied by the record evidence and thus does not create a genuine issue of fact.

Count XX alleges that Weiss breached her fiduciary duties by attempting to convert debt that Gold Coast Mining Corp. ("Gold Coast") owed to Nutmeg rather than converting debt Gold Coast owed to the Funds. Plaintiffs concede they were not injured by Weiss's conduct because Gold Coast dishonored Nutmeg's conversion notice but now attempt to raise a new argument at summary judgment—that Weiss did not pursue a lawsuit against Gold Coast based on the failure to convert after obtaining a court order allowing contingency counsel to bring suit. This is an impermissible attempt to constructively amend the complaint and therefore need not be considered at summary judgment. *See Abuelyaman* v. *Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011) ("It is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion."). Even if the court were to consider this argument, there is no evidence that Weiss intended to breach her fiduciary duties by not filing suit. Plaintiffs assert that her willful nature is evidenced by the fact that after deciding not to bring a claim, Weiss never reported that fact to the court. To the contrary, in a status report filed on December 2, 2013, Weiss disclosed that contingency counsel spent considerable time investigating the matter but ultimately decided it would not be prudent to pursue the claim. (Dkt. 214, Def. Ex. 153 at 3.)

Finally, Count XII alleges that Weiss breached her fiduciary duties by failing to enforce $36,000 of a $56,000 settlement related to a state-court case one of the Funds brought against individual Jack Freedman and allowing the relevant state-court lawsuit to be dismissed before Freedman paid the full settlement amount. Defendants assert that after sending a handful of emails to Freedman's counsel in an attempt to collect the funds owed and receiving no response, Weiss decided not to pursue the $36,000 because attorneys' fees and costs could have eclipsed the amount at issue. Plaintiffs counter that Weiss knew she could have enforced the settlement agreement by a summary proceeding, which could have been turned over to contingency

counsel. Even if Weiss's belief about the cost of enforcement was incorrect, "the exercise of poor judgment is not akin to a breach of fiduciary duties." *In re Kids Creek*, 248 B.R. at 559–561. Plaintiffs also rely on an email in which Weiss states that filing a summary proceeding "sounds like a good idea" but that she wanted to "look at the whole thing." (Dkt. 201, Pl. Ex. 77.) This does demonstrate that Weiss knew she had the power to enforce the agreement by summary proceeding but in no way raises a triable issue of fact with regard to Weiss's intent when she decided not to pursue that course. Indeed, the email at most demonstrates that Weiss considered various options before making her decision.

## B.    Judgments

Count V alleges that Weiss breached her fiduciary duties by failing to enforce a $2.9 million judgment against RMD Entertainment Group, Inc. ("RMD"), despite Goulding's urging her to do so. Defendants contend that after conducting research and receiving independent advice, Weiss concluded that the RMD judgment was not worth pursuing. Plaintiffs counter that Weiss did not enforce the RMD judgment because her animosity toward Goulding caused her to automatically reject his suggestions and because she was working with the SEC on its case against Goulding. Plaintiffs cite no relevant evidence in support of this contention. To the contrary, the evidence shows that RMD told Weiss it had no assets in the United States and that the validity of the judgment was defective. (Dkt. 201, Pl. Ex. 61.) Weiss did not simply accept this assertion[16] but disclosed to the court that she had been investigating the collectability of the

---

[16] Defendants also assert that Weiss consulted with counsel for the estate and a collection agency (among others), both of whom advised that the judgment was not collectible. (Pl. Resp. ¶¶ 61–62.) Given the apparent agreement between the parties that Weiss would not rely on an advice of counsel defense (which she claims she does not) in consideration for plaintiffs not pursuing a motion arguing that Weiss waived attorney-client privilege with respect to certain communications, the court has not considered this evidence. (*See* Def. Resp. ¶ 86.) It need not do so to resolve count V.

judgment over the course of several months, and had contacted various third parties to inquire about their interest in purchasing the judgment, to no apparent avail.[17] Not only does the record make clear that Weiss took steps to investigate the collectability of the RMD judgment but, more importantly, the record is devoid of any evidence that Weiss automatically rejected Goulding's suggestion, that she was working with the SEC on its case against Goulding, or that Weiss's decision not to pursue the judgment was motivated by animosity toward Goulding or an intent to harm the estate. Plaintiffs' assertion that Weiss willfully refused to pursue a likely recovery because she allegedly "knew" various facts about RMD and the law generally fares no better. (*See* dkt. 198 at 41–42.) No reasonable jury could find that Weiss intentionally breached her fiduciary duties based on the record evidence for this claim.

Counts XIII and XVI allege that Weiss breached her fiduciary duties by failing to enforce judgments against Solar Night Industries ("Solar Night") and Robert Talbot, respectively. In both cases, defendants assert that Weiss investigated the judgment to determine whether it was collectible and determined that pursuing the judgment was not economically feasible and disclosed this to the court. With respect to Solar Night, defendants cite to a March 10, 2010 letter Weiss wrote to Goulding asking him to provide any evidence or information that would suggest Solar Night had assets from which a judgment could be recovered. (Dkt. 183, Def. Ex. 48.) Plaintiffs contend that the assertions in the letter indicate that Weiss had not investigated whether Solar Night had assets to pursue. But the plain language of Weiss's request to Goulding indicates that she was attempting to determine whether Solar Night had asserts to pursue, not that she was merely sitting on her hands. With respect to Robert Talbot, plaintiffs argue that Weiss did not

---

[17] Plaintiffs are correct that one third party responded to Weiss's inquiry, indicating that he was interested in RMD but noted that he would like to contact RMD to ensure it agreed with the information provided. (*See* dkt. 201, Pl. Ex. 78.) There is no evidence that this third party continued to express interest in the RMD judgment after it presumably reached out to RMD.

conduct an investigation but cite no evidence apart from the allegation that Weiss never obtained a litigation file for this case, which is belied by the record evidence as discussed in footnote fifteen. In short, the record contains no evidence that Weiss's decision not to enforce the Solar Night and Talbot judgments was motivated by an intent to harm the estate.

C. **Promissory Notes**

Count VII alleges that Weiss breached her fiduciary duties by not pursuing a $120,000 claim against Sanswire for its alleged default under a note. Defendants assert that Weiss's decision not to pursue a claim was based on, among other things, a Sanswire representative stating that the note had been "converted out in full" and that there was "nothing owing to Nutmeg," as well as a lack of documentation to verify the estate's claim. (Pl. Resp. ¶¶ 74, 76; Dkt. 183, Def. Exs. 35, 36.) Further, because Weiss could not verify evidence of a pay-off, she threatened litigation and sent Sanswire a settlement demand. (Pl. Resp. ¶ 75; Dkt. 183, Def. Exs. 38, 39.) Plaintiffs agree that Sanswire personnel made the representation but contend that Weiss knew it to be an incorrect and self-serving statement. In support, plaintiffs point to a spreadsheet that Goulding allegedly sent to Weiss, which allegedly established that part of the debt remained. (Dkt. 201, Pl. Ex. 70.) Even if Goulding did send Weiss a spreadsheet that established part of the debt remained, this fact adds nothing to the discussion. Weiss recognized that there may be outstanding debt and thus continued to pursue the matter when she threatened litigation and sent the settlement demand. Accordingly, plaintiffs contention is not only incorrect, but certainly does not create a genuine issue of fact with respect to Weiss's intent, as required here.

Count XI alleges Weiss breached her fiduciary duties by failing to follow Goulding's advice with respect to the course of action pursued after North Bay Resources, Inc. ("NBR") defaulted on a convertible note. Goulding recommended that Weiss negotiate new terms or

obtain NBR stock. Weiss's duty as receiver does not include an obligation to heed Goulding's advice or pursue a course of action recommended by him. Indeed, the SEC's motion to appoint Weiss receiver contemplated that she would "review and exercise *independent judgment* on pending and future transactions involving the Funds' assets." (Pl. Resp. ¶ 26; Dkt. 183, Def. Ex. 22; SEC dkt. 48 ¶ 4) (emphasis added.) To that end, Weiss and MMP contacted NBR and were informed that there was nothing due on the note because the shares issued to Nutmeg fully satisfied the note. Weiss later discovered that the note had not been paid off in its entirety and sent a conversion notice to NBR for the remaining balance. Given these circumstances, no reasonable jury could find that Weiss breached her fiduciary duties under the intent standard so imposed in this case.

Accordingly, defendants are entitled to judgment as a matter of law on counts V, VII, X, XI, XII, XIII, XIV, XVI, XVIII, and XX.

## III. Failure to Convert Claims (Counts VI, VIII, XVII)

In counts VI, VIII, and XVII, plaintiffs allege that Weiss breached her fiduciary duties by failing to convert certain debt owed to Nutmeg or the Funds into stock to be sold on the open market. Weiss asserts that she exercised her business judgment after seeking professional investment advice and conducting a cost-benefit analysis. She contends that this analysis led her to determine that the conversion and sale process was too risky given Nutmeg's financial condition, the poor documentation reflecting the Funds' investments, and the lack of organization of the companies owing the debt. Plaintiffs counter that Weiss's professed belief is pure pretext and they provide a lengthy explanation of the way in which such debts are typically converted and of the risks associated with non-conversion/sale. Even when viewed in the light most favorable to plaintiffs, facts related to what is "typically" done or those indicating that

someone else "might" have considered a different course of action are speculative and, while possibly relevant to a negligence theory, do not create a triable issue of fact as to Weiss's intent to breach her fiduciary duties. *See Barrios* v. *Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 734 (N.D. Ill. 2017) (granting summary judgment and asserting that "speculation without evidence . . . is not sufficient in a summary judgment proceeding"). As discussed below, plaintiffs also set forth additional facts specific to each of the failure-to-convert claims, but such facts do not change the court's view that there is no genuine issue of material fact as to these claims.

### A.    Count VI – GoIP Global, Inc.

Count VI alleges that Weiss intentionally breached her fiduciary duties by settling rather than converting into stock $40,000 of a $50,000 debt owed by GoIP Global, Inc. ("GoIP"). To convert debt to stock, Weiss would initially need to send a conversion notice to the company owing the debt. After issuing a notice, Weiss could either wait to receive the stock certificates before selling the stock or sell the stock before receiving physical stock certificates. Defendants assert that Weiss believed it would be risky to sell stock without holding stock certificates because had she done so and the company failed to timely deliver certificates, the estate could have been required to purchase enough additional stock to provide certificates to the purchaser. Weiss did not want to take this risk because she believed Nutmeg did not have sufficient liquidity to effectuate such purchases. She therefore decided to settle the GoIP debt. Plaintiffs argue that because Weiss owned some GoIP stock, she would not have needed to purchase in the market (at a potentially higher price) to cover in the event of a dishonored conversion notice, and thus the risk Weiss perceived was unfounded. Plaintiffs also contend that Weiss breached her fiduciary duties because, among other things, Goulding had advised Weiss to convert and sell in

a gradual fashion, and Weiss could have taken advantage of SEC rules that allow a holder of stock to convert immediately after sending a conversion notice to the issuer.

In contrast to *In re Consupak, Inc.*, 87 B.R. 529, 544 (Bankr. N.D. Ill. 1988), on which plaintiffs rely, where the trustee "lost a valuable opportunity to increase the amount ultimately distributed to unsecured creditors," and admitted that this was "a deliberate omission," Weiss has not admitted nor does there appear to be evidence to demonstrate that she intended to harm the estate by settling the GoIP debt rather than converting it into stock and selling the resulting stock. To the contrary, Weiss sought the advice of MMP, who advised her that "converting to stock, even at a 30% discount, may not be worth the risk."[18] (Dkt. 183, Def. Exs. 54–55.) True, Weiss could have taken Goulding's advice and she could have pursued a different course of action, including converting the debt into stock and selling it on the open market. Even assuming, however, that a different course of action was the more prudent choice, a receiver is not liable for "exercise of poor judgment." *In re Kids Creek*, 248 B.R. at 559–561. Further, it is not clear that stock sales would have resulted in additional funds for the estate, nor is it clear that Weiss held enough GoIP shares to cover in the event GoIP dishonored a conversion notice.

Plaintiffs also claim that Weiss breached her fiduciary duties by placing a GoIP stock certificate in a vault for four months instead of immediately sending the certificate to a broker so the GoIP debt could be converted into stock. This argument is a red herring. The stock certificate

---

[18] Plaintiffs argue that Weiss's reliance on MMP's advice is tainted because MMP was conflicted given that it would receive commission if Weiss sold or settled the underlying note, but would receive nothing if she converted and sold the resulting stock. (Pl. Resp. ¶ 181.) Even assuming MMP was conflicted for this reason, which is not clear from the record, this does not create an issue of fact with regard to Weiss's intent. Plaintiffs point to no evidence that MMP gave bad advice as a result of the alleged conflict, nor do they indicate that Weiss relied on MMP's advice in contravention of her fiduciary duties. Instead, plaintiffs erroneously rely on *In re Nuveen Fund Litigation*, No. 94 C 360, 1996 WL 328003, at *7 (N.D. Ill. June 11, 1996). *Nuveen* relates to state law claims against corporate directors and was decided on a motion to dismiss under a gross negligence standard. The present case asserts claims against a receiver and must be decided under the applicable intent standard.

and alleged delay relates to the $10,000 that Weiss did convert and sell at a profit, not the

remaining $40,000 at issue in this case. Even assuming Weiss did intentionally place the stock

certificate in a vault for four months, which is not clear from the record, this would at most

establish that Weiss committed a willful act, rather than a willful and deliberate violation of her

duties as is required for personal liability to attach. (*See* dkt. 55 at 15.) Further, it is not clear that

this act would have resulted in harm given that, as plaintiffs contend, Weiss could have sold the

stock without the underlying certificate.[19]

## B. Count VIII – Secured Financial

Count VIII alleges that Weiss breached her fiduciary duties by (a) failing to timely sell

certain Secured Financial stock, which harmed the estate given the declining stock value during

the delay, and (b) selling rather than converting a Secured Financial note. With regard to the

alleged failure to sell, defendants assert that any delay in selling the stock resulted from incorrect

information provided by Secured Financial and/or the Funds' broker. In support, defendants

point to a December 2009 letter in which Secured Financial's CEO indicated that the shares were

restricted and thus not tradable on public markets. (Dkt. 183, Def. Exs. 56–57.) They also rely on

a March 2010 email, in which Weiss told the Funds' broker that although they initially identified

the stock as restricted, she had learned this was not the case and questioned why she was still

unable to sell the stock. (Dkt. 183, Def. Ex. 58.) Weiss later sold the stock in April 2010.

Plaintiffs contend that the delay could have been avoided because Weiss was an experienced

securities lawyer and knew that she simply needed to send a Rule 144 letter to the Funds' broker

---

[19] To the extent plaintiffs rely on this argument to disprove defendants' theory that converting GoIP stock would likely take an extended period of time, this theory finds some merit. Whether the certificate was placed in a vault as plaintiffs contend or shopped around to different brokers as defendants contend, there was likely some delay that would not necessarily result in every attempt to convert GoIP stock. Nonetheless, even if Weiss could have converted the stock without delay, her decision to pursue a different course of action—in part due to MMP's advice—does not amount to an intent to harm the estate.

to remove the restriction. Plaintiffs fail to cite a shred of relevant evidence in support of this contention. Instead, plaintiffs rely on *Stoughton Lumber Co.* v. *Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015), for the proposition that Weiss consciously disregarded the fact that she could have removed the restriction by sending a Rule 144 letter. As the court notes in *Stoughton*, conscious disregard falls under a recklessness standard, not the intent standard applicable to the present case. *Id.*

With respect to the alleged failure to convert, plaintiffs argue (as they did of count VI) that because Weiss held Secured Financial stock, any risk Weiss perceived from having to cover the stock in a rising market if Secured Financial dishonored a conversion notice was feigned naiveté and that she should have converted and sold sequentially. This argument is addressed in Section III(A) above and is no more successful at creating an issue of fact here than it was in the case of GoIP. Defendants also note that MMP negotiated settlement of the Secured Financial debt and never advised Weiss against selling the note rather than converting it. Plaintiffs respond that Weiss's reliance on MMP is insufficient to sustain a business judgment defense. In support, plaintiffs mistakenly rely on *Hanson Tr. PLC* v. *ML SCM Acquisition, Inc.*, 781 F.2d 264, 274 (2d Cir. 1986), which applied a reasonable diligence standard to the question of whether directors breached their fiduciary duties by failing to scrutinize certain information they received. This distracts from the standard applied to receivers such as Weiss and the evidence does not raise a genuine issue of material fact with regard to Weiss's intent in her dealings with Secured Financial.

### C.      Count XVII – Mike the Pike

Count XVII alleges that Weiss breached her fiduciary duties by not converting debt held by the Funds and owed by Mike the Pike, Inc. ("MTP") into stock and selling the resulting stock.

Like Counts VI and VIII, plaintiffs similarly assert that Weiss's perceived risk of the estate's being unable to cover should a conversion notice be dishonored was baseless, and that she should have converted and sold MTP stock in a gradual fashion, as Goulding advised. Plaintiffs, however, do not allege that Weiss held MTP stock that could be used to cover, but instead assert that if a notice was dishonored, Weiss could have threatened suit to put the company on notice that if it did not deliver promptly, the mix of public information would soon indicate that the company had defaulted.

In addition to the risk Weiss perceived, defendants also assert that Weiss decided not to collect the MTP debt given that, among other reasons, Weiss offered the debt to various purchasers (including Goulding) and none was willing to buy it. Plaintiffs counter that Weiss should have taken some steps to obtain the MTP shares, citing to *In re San Juan Hotel Corp.*, in which the court found a trustee had willfully violated his fiduciary duties by, among other things, failing to follow the debtor's comptroller's recommendations to collect or attempt to collect all assets of the estate. 71 B.R. 413, 426–27 (Bankr. D.P.R. 1987), *aff'd in part, rev'd in part*, 847 F.2d 931 (1st Cir. 1988). In stark contrast to the present case, the trustee in *San Juan Hotel Corp.* essentially treated the estate as his own—he prolonged the economic agony of the debtor to continue to draw fees and expense accounts, made use of cars to which the debtor had access, used the presidential suite in the hotel of the debtor for personal activities, consumed meals, held his daughter's wedding at the hotel, and more. *Id.* at 425. Further, the comptroller in that case was not removed and replaced by the trustee as Goulding was here. Weiss was not required to follow Goulding's advice but, rather, was tasked with "oversee[ing] all aspects of Nutmeg's operations and business." (Dkt. 183, Def. Ex. 23 § II.B.1.) Although Weiss could have pursued a different course, her decision not to convert and sell does not raise a triable issue of fact.

## IV.    Other Claims (Counts IV, IX, XV, XIX)

Of the remaining claims, IV, IX, XV, and XIX, the parties agree that summary judgment should be entered on count XV, and the court finds that summary judgment is appropriate for the remaining three claims; as discussed below, there are no genuine issues of material fact that require trial.

### A.    Count IV – Crowe

Count IV alleges that Weiss breached her fiduciary duties by paying Crowe fees in excess of a $150,000 cap ordered by the court in the SEC case. Defendants admit that Weiss paid Crowe in excess of the initial fee cap but assert that she did so because she believed she had court approval. In support, defendants point to (1) Crowe's fee estimate indicating that it would need an additional $168,631.50 in fees, which was filed at the court's request on January 29, 2010, after $126,857.73 had already been incurred (Dkt. 183, Def. Ex. 99); (2) a court hearing held in the SEC case on February 24, 2010, in which Crowe's additional work and costs were discussed, and the court concluded the hearing by saying that "it appears that we are talking about maybe continuing the case for about 60 days, by which time we should be able to get some additional input from the Crowe work, and hopefully continue to make some progress towards seeing the end of the rainbow here someplace" (Dkt. 183, Def. Ex. 81 at 16:19–23); and (3) Weiss's periodic reports filed with the court, in which she disclosed that Crowe's work was ongoing and provided the amounts she was paying Crowe. (*See* Pl. Resp. ¶ 236.)

Plaintiffs admit that the court's comments at the February 24, 2010 hearing indicate a willingness to allow Crowe some additional fees but contend that these comments do not reflect a decision to allow payment of the entire $168,631.50 without further review and approval by the court. They argue that Crowe's fee estimate expanded Crowe's duties such that the firm effectively assumed the role of the SEC's accounting experts in its case against Goulding.

Plaintiffs also contend that, pursuant to the SEC's Billing Instructions for Receiver's in Civil Actions, Weiss should have submitted separate fee applications for court approval for Crowe's fees, apart from her periodic reports, and that she allegedly knew these rules applied to Crowe's fees because she requested a second copy of the rules in October 2009. Finally, plaintiffs argue that because Barnes had a close relationship with Crowe, having employed the firm as its own accountant, Weiss's decision to pay Crowe the additional fees without court authorization is not protected by the business judgment rule.

Although there is some ambiguity as to whether the court intended to approve the entire $168,631.50, no reasonable jury could find that Weiss intentionally breached her fiduciary duties by paying Crowe the additional fees. Weiss believed the court had approved Crowe's additional fees and proceeded accordingly. Plaintiffs' bald assertion that Weiss paid Crowe to assume the role of the SEC's experts in an attempt to curry favor with the SEC has no support in the record. To the contrary, the SEC hired its own accountant who prepared expert reports. Nor does the evidence support plaintiffs' contention that Weiss expanded Crowe's duties to assist the SEC with its case against Goulding. As Crowe explained in its fee estimate, "Because of the nature and extent of co-mingling of investors' funds in Nutmeg's bank account and the transactions involving Nutmeg . . . the scope of work cannot be limited to analyses of the Funds' activities." (Dkt. 183, Def. Ex. 99 at 1.) Plaintiffs' argument related to the SEC's billing guidelines is another red herring. Even if Weiss knew about the guidelines and failed to follow them, there is no evidence that she did so intending to harm the estate. Indeed, Weiss disclosed to the court the amounts she was paying Crowe in her periodic reports. Finally, the court appointed Crowe before Weiss became receiver and ordered her to continue using Crowe. There is no evidence that Barnes's prior relationship with Crowe has any bearing on the present case.

**B. Count IX – INverso**

Count IX alleges that Weiss breached her fiduciary duties by terminating a transaction that would have enabled INverso Corp. ("INverso"), a corporate shell owned by several of the Funds, to be used as a vehicle for an initial public offering ("IPO") and thereby lost millions of dollars. In the SEC's motion to appoint a receiver, the SEC flagged the INverso transaction and asserted that a receiver was "needed to review the transaction and determine whether it actually benefits Nutmeg" and the Funds. (Dkt. 183, Def. Ex. 22 ¶ 5.C.) The court made clear that it was Weiss's responsibility, not Goulding's, to determine whether the transaction should move forward. (Dkt. 183, Def. Ex. 85 at 4:18–25.) The SEC's motion also stated that "Goulding would turn over INverso to new management." (Dkt. 183, Def. Ex. 22 ¶ 5.C.) Goulding resigned on September 9, 2009 and new directors were appointed; Weiss did not oppose Goulding's resignation.

At some point, Weiss evaluated the transaction by reviewing the business plan for the new company that would be formed through the INverso transaction. Weiss believed the plan had no chance of success and suspected that the new company was trying to implement a pump-and-dump scheme. Despite this conclusion, the SEC subsequently determined that Goulding had assisted third parties in seizing control of INverso in order to sell INverso shares over Weiss's objections. The SEC filed a motion for rule to show cause against Goulding for violating the court's preliminary injunction order, which prohibited Goulding from transferring or otherwise disposing of Nutmeg's and the Funds' assets. (Dkt. 183, Def. Ex. 84.)

Plaintiffs now claim that because Weiss was anxious to assist the SEC with its case against Goulding and because of a desire to harm Goulding, Weiss and her lawyer sent Goulding a letter (cited by the SEC in its motion for rule to show cause) which falsely asserted that Weiss opposed Goulding's resignation and appointment of new directors. This unsupported argument is

simply a nonstarter. The letter reads, in relevant part:

> Prior to September 9, 2009, various funds controlled by Nutmeg (the 'Funds') had voting control over INverso. You were the sole officer and director. The Receiver had discussions with you about the Transaction prior to its consummation. The Receiver asked you the basis for completing the Transaction and you responded that you had done business with Mr. Hartman previously. You offered no objective method of determining that fair value was being given for control of the INverso shell. There was no due diligence performed or report or valuation from an independent third party, of the proposed business on which to make a rational investment decision. *Accordingly, the Receiver, acting in the interests of the Funds and its investors, told you that she was opposed to the Transaction as structured* and that the Funds should receive cash for the sale of control of INverso. The Receiver voiced her objections to the Transaction to . . . the attorney for INverso as well.

(Dkt. 183, Def. Ex. 86) (emphasis added.) Plaintiffs conflate Goulding's resignation and appointment of new directors with Weiss's opposition to the transaction. The letter does not assert that Weiss opposed Goulding's resignation or appointment of new directors; rather, it points to Weiss's opposition to the INverso transaction as structured. There is no evidence that Weiss initially approved the transaction and later opposed it to help the SEC or harm Goulding.

Plaintiffs' other arguments are similarly unavailing. They seem to argue, among other things, that Weiss would have protested the transfer of control to new directors if she truly opposed the transaction, that she could have done additional research outside the business plan or recommended changes to the business plan, and that she misread the business plan. What Weiss would have or could have done might support a negligence theory but does not demonstrate that the path she chose was meant to intentionally harm the estate. Further, even if Weiss misread the business plan (which is not clear from the record) this too might support a negligence theory but does not create a fact issue with regard to Weiss's intent.

**C.     XIX – Rule to Show Cause against Goulding**

Count XIX alleges that Weiss and Barnes breached their fiduciary duties by filing a rule to show cause motion against Goulding to compel him to produce certain documents that she had

in her possession. Defendants assert that at the time Weiss filed the motion for rule to show cause against Goulding (April 9, 2010), Weiss did not believe that she or Barnes had the relevant documents; there were allegedly tens of thousands of disarrayed documents collected from Nutmeg. Defendants also point to the court's February 6, 2013 order in the SEC action, noting that when denying Goulding's motion for sanctions against Weiss (which he brought in response to Weiss's show cause motion), the court found "no evidence of an intentional fraud, concealment or conspiracy here," despite the fact that Weiss had possession of the documents she sought from Goulding. (Dkt. 183, Def. Ex. 119.) Plaintiffs counter that Goulding told Weiss the documents were in her possession and later discovered the documents himself while reviewing documents at Barnes's office. They also contend that Weiss made no effort to locate the documents before filing the motion and that she filed the motion simply to prove she could help the SEC. Although Goulding told Weiss that she either had the relevant file or abandoned it at Nutmeg's office, there is no evidence that Weiss was actually able to locate the documents prior to filing the motion. She was not required to simply rest on Goulding's word. Plaintiffs' reliance on an email dated six months after the motion was filed is also inapposite. In the email dated October 14, 2010, Weiss writes, "Please repeat for Randall that we are not looking for the docs – he is." (Dkt. 201, Pl. Ex. 63.) Relevant here is whether Weiss knew she had possession of the documents *before* filing the motion, not who was looking for the relevant documents months after the motion was filed. Finally, Goulding's speculative testimony that Weiss filed the motion "to prove to the SEC that she could . . . help the SEC," has no support in the record. Dkt. 183, Def. Ex. 4 at 82:19–20.) Because there is no evidence that Weiss or Barnes definitively knew they had the documents at the time the motion was filed, there is no genuine issue of material fact with respect to Weiss's or Barnes's intent.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion for summary judgment (dkt. 180) is

granted, and the case is dismissed in its entirety.

Date: March 14, 2018

_____
U.S. District Judge Joan H. Lefkow